Kenneth L. Covell
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska  99701
(907) 452-4377 telephone
(907) 451-7802 fax
e-mail:  kcovell@gci.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGG CONITZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| TECK COMINCO ALASKA, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) Case No. 4:06-CV-00015 RRB |

### **OPPOSITION TO NANA'S MOTION TO INTERVENE**

NANA Regional Corporation seeks to intervene in this action, both as of right and permissively.  Plaintiff opposes the motion as follows:

### **FACTS**

Plaintiff, Gregg Conitz, has filed a lawsuit against his employer, Teck Cominco Alaska, Inc. ("Teck"), claiming

that Defendant discriminated against him based on his race and/or national origin. Teck's employment policy is to grant employment preference to Native Americans from the Northwest region of Alaska. Purportedly this policy is required by its contract to mine the ground where Conitz is employed.

Conitz claims that Teck has, on at least two occasions, deprived Conitz of advancement by hiring less qualified Native Americans following Conitz's application for advancement.

In February, 2006 Conitz filed a Complaint for Racial and National Origin Discrimination with the U.S. Equal Employment Opportunity Commission, and also with the Alaska State Commission for Human Rights. Teck retaliated by deliberately relieving Conitz of his duties as Relief Supervisor, and opening private letter mail that was forwarded to the worksite, including communication from counsel. (See Complaint)

Conitz's lawsuit seeks to enjoin Teck from using discriminatory criteria, based on race and/or national origin, when considering his application for advancement. Conitz is also suing Teck for violation of federal and state civil right statutes, for retaliation, and for

invasion of privacy. Conitz asks that Defendant be ordered to advance him to the position to which he is entitled, and for an award of compensatory damages and injunctive relief.

NANA Regional Corporation, Inc., ("NANA") is a state chartered regional corporation organized under the Alaska Native Claims Settlement Act. (ANCSA). NANA stands for "Northwest Arctic <u>Native</u> Association". NANA owns the land where Teck employed Conitz.

NANA now seeks to intervene in this lawsuit, claiming that an agreement exists between it and Teck, whereby Teck is obligated to offer employment in the first instance to qualified NANA stockholders whose stock carries voting rights, and the descendants and spouses of such stockholders, and secondarily, to residents of the NANA Region. Only if qualified Natives of the NANA Region are unavailable can Teck entertain applications from, in a strict order of priority, 1.) individuals who have been residents of the NANA Region for at least two years; 2.) individuals who have been residents of Northwest Alaska for at least two years; 3.) individuals who have been residents of Alaska for at least two years; and 4.) any other job applicant (Nana's Motion at p.4).

**ARGUMENT**

A party seeking to intervene as of right must meet four requirements: (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest[1] relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), *citing, Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

Each of these four requirements must be satisfied to support a right to intervene. *Arakaki*, *Id., citing, League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997), *see also, United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002), and *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002).

NANA's motion to intervene fails to meet three of the four requirements of the test. Assuming that NANA's motion

---

[1] Interest has been interpreted to mean 'significantly protectable interest'. *Donaldson v. United States,* 97 1971 400 US 517 27th Lawyers Edition 580, 91 S.Ct. 534. 73 ALR F.448 § 2A. The interest must be direct, substantial, and legally protectable. *Am. Jur.2nd Parties and Practice §138.* The interest asserted must relate to the property or transaction involved in the action.

*Conitz v. Teck Cominco Alaska, Inc.*, Case No. 4:06-CV-00015 RRB
Opposition to Motion To Intervene                                  Page 4 of 19

is timely, NANA fails to show that it 1) has a significantly protectable interest relating to the transaction; 2) that disposition of the action may impair or impede NANA's ability to protect its interest, and/or 3) that NANA's interests are not adequately represented by Teck.

### NANA DOES NOT HAVE A SIGNIFICANTLY PROTECTABLE INTEREST RELATING TO THE PROPERTY OR TRANSACTION THAT IS THE SUBJECT OF THE ACTION.

NANA identifies its interest in this litigation as both "a contractual right to Teck's performance of certain hiring practices," (NANA's Brief at p. 9) and "a claim to benefit from a policy or practice of favorable treatment for a Native group," (NANA's Brief at p. 8)

The Ninth Circuit employs a two-prong test to establish an intervenor's protectable interest in an action:

> An applicant has a "significant protectable interest" in an action if (1) it asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally protected interest and the plaintiff's claims.

*Donnelly v. Glickman*, 159 F.3d 405, 409, (9th Cir. 1998), *citing Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 837 (9th Cir. 1996).

### NANA's Alleged Interest In A Contractual Right To Teck's Performance Of "Certain Hiring Practices"

NANA claims an interest in "a contractual right to Teck's performance of certain hiring practices." (NANA's Brief, p. 9). NANA claims this is a protectable interest for intervenor purposes, citing, *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) NANA's right to contract with another party to operate a mine located on NANA's land does not automatically encompass a right to require Teck's performance of "certain hiring practices." NANA confuses the legally protected right to contract with a right to require from the party with which it contracts to any and all actions and practices.  NANA thus fails the first prong of the "protectable interest test" and cannot intervene.

Even if NANA has a protectable interest in contracting with Teck to operate the mine located on NANA's land, this right is not related to Conitz's claimed violation of his legal rights by Teck. Conitz claims that Teck, as his employer, has engaged in illegal discrimination, retaliation, and invasion of Conitz's privacy. Conitz's discrimination claim is unrelated to NANA's right or ability to contract with Teck.

The elements and evidence relating to Teck's acts of retaliation, including invasion of Plaintiff's privacy and the opening of Plaintiff's mail, sound in tort and are unrelated to any contract rights between NANA and Teck. NANA fails to prove the second prong of the "protectable interest" test and cannot intervene.

**NANA's Alleged Interest In A Claim To Benefit From A Policy Or Practice Of Favorable Treatment For A Native Group**

NANA also identifies an interest in "a claim to benefit from a policy or practice of favorable treatment for a native group," citing *Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003). NANA, the Northwest Arctic Native Association, says that "Neither NANA nor Teck Cominco grants a race-based employment preference to Native Americans," (NANA's Brief, p.2). Obviously the two proceeding statements cannot be reconciled. Either there is favorable treatment for natives or there is no race-based preference. There cannot be both. In a transparent attempt to resolve the irreconcilable difference between the two propositions, NANA attempts to characterize its practice as a "shareholder hiring" practice. This is simply not the case. One does not get to be a shareholder without being a native. See *Malabad v. North Slope*

*Borough,* 42 F.2d 297 (Alaska 1999), *Malabad v. North Slope Borough,* 335 F.3d 864 (9th Cir. 2003), and *Malabad v. North Slope Borough,* 70 P.3d 416 (Alaska 2003).  Not only has the native hire preference been ruled to be illegal, but also the regional preference asserted by NANA in their Motion, has already been ruled to be illegal.  The second ruling of illegality arose out of the very environment we currently discuss, in the case of *State v. Ensearch,* 787 P.2d 624 (Alaska 1989).  The Alaska Supreme Court found a state statute which preferred "minority residents" of the "NANA region" to be entitled to a preference in hiring of the building of the port road from the Mine to the port, were in violation of the equal protection clause of the Alaska Constitution.[2]  NANA includes a lengthy discussion of "favorable treatment for a native group" in its protectable interest argument.  The "shareholder hiring" practice is founded upon race and is racially motivated.

The intervenors in *Arakaki* were individual native Hawaiians who had an interest in the lease of Hawaiian homestead lands pursuant to the provision of benefits by the Office of Hawaiian Affairs, the Department of Hawaiian Home Lands, and the Hawaiian Homes Commission. The

---

[2] Plaintiff further notes that NANA was a party to the Ensearch litigation.

intervenors there sought to intervene in a lawsuit challenging the constitutionality of the benefits provision. The court found that the intervenors, (Hoohuli, *et al*), had a protectable interest in the continued **receipt of benefits** as native Hawaiians, but denied intervention on other grounds. In other words, Hoohuli got something from the program, e.g. money, reduced rent, or the like.

Hoohuli's interest in the continued receipt of benefits, as native Hawaiians, is fundamentally different from NANA's claimed interest in a policy or practice of favorable treatment for a native group. The Native Hawaiian intervenors were individuals whose ability to protect their interest in the continued receipt of benefits as native Hawaiians would be impaired by a successful equal protection challenge, *to wit,* they would no longer receive those benefits. *Arakaki,* 324 F.3d at 1086. NANA is not an individual who claims to benefit from a hiring scheme favoring native Americans. NANA is a corporation seeking to require in a contract that an employer hire native Americans preferentially. If Conitz prevails, NANA will not be the entity deprived of a receipt of benefits. NANA is not an entity with a "protectable interest" in "a claim to benefit from a policy or practice of favorable treatment

for a native group" within the meaning of *Arakaki* and cannot intervene.[3]

## THE DISPOSITION OF THE ACTION WILL NOT IMPAIR OR IMPEDE NANA'S ABILITY TO PROTECT ITS INTERESTS.

Assuming, *arguendo*, that NANA has some protectable interest, NANA must still show the interest will be impaired or impeded by disposition of this action. NANA has not.

NANA relies on *City of Los Angeles*, *supra* to support its position. There, the United States sued the Los Angeles Police Department for civil rights violations. The parties entered into a consent decree that would resolve the suit the same day that the suit was filed. The Los Angeles Police Protective League, as the LAPD's collective bargaining unit, sought to intervene. The Police League claimed that the consent decree would conflict with a Memorandum of Understanding governing the terms under which members of the Police League were employed by the City. The Ninth Circuit reversed the District Court's refusal to permit intervention.

---

[3] Importantly, again, Hoohuli actually got something from the program, e.g. money, free rent, food stamps, property. NANA does not.

*Conitz v. Teck Cominco Alaska, Inc.*, Case No. 4:06-CV-00015 RRB
Opposition to Motion To Intervene                           Page 10 of 19

NANA's position can be distinguished from that of the Police League in *City of Los Angeles*. A disposition in that case would have resulted in a consent decree that altered the terms of the Police League's Memorandum of Understanding with the City of Los Angeles. A disposition of this case, adverse to Teck, will not impair or impede NANA's ability to contract with Teck. Conitz is not asking the court to fashion a new contract between NANA and Teck. (NANA will still be free to contract with Teck to implement legal, non-discriminatory hiring practices. The existing contract specifically relieves Teck of responsibility where the contract conflicts with then or now existing law.[4] The *Malabad* and *Ensearch* cases clearly illuminate the illegality of the purported hiring preferences.)

Examining NANA's interest in "a claim to benefit from a policy or practice of favorable treatment for a native group," NANA itself says that "Neither NANA nor Teck grants a race-based employment preference to Native Americans."(NANA's Brief, p.2) Conitz claims that Teck has discriminated against him based on his racial background. If, as NANA claims, its hiring practices are not racial,

---

[4] Section 10.5 of the 1982 Agreement provides, "nothing in this Agreement shall require NANA or Cominco, or any contractors, or subcontractors, to violate Title VII of the Civil Rights Act of 1964, as amended, Executive Order 11246 as amended, the National Labor Relations Act, ANCSA, or any other law or regulations related to employment."

then NANA's interest will not be impaired or impeded by a disposition of a claim regarding race based illegal discrimination.

NANA has no protectable interest in an illegal hiring policy.

### NANA'S INTERESTS ARE ADEQUATELY PROTECTED BY TECK

NANA must prove that its interests will not be adequately represented by the existing parties even if it can show it has a protectable interest; and prove that its interest may be impaired or impeded by disposition of the action. NANA has failed to prove that Teck will not adequately represent its interests, whatever those interests may be, and cannot intervene.

"When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki*, 324 F.3d at 1086. Consequently, NANA must overcome this presumption. NANA cannot.

Both Teck's and NANA's ultimate objective is proving that Conitz's legal rights were not violated by the contractual hiring and advancement scheme. In fact, Teck and NANA appear to be working in concert. NANA filed its Motion to Intervene on June 22nd. Interestingly the parties

had been attempting to resolve the discovery issue over the 1982 initial agreement between Teck's predecessor, Cominco, and NANA for operation of the Mine. At the very time of the breakdown of this attempted resolution, the Motion to Intervene was filed, see Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Compel Discovery and Exhibits thereto, including letters between Plaintiff Conitz and Defendant Teck on June 20th and 21st.

The test for determining adequacy of representation is three pronged:

> This Court considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F. 3d AT 1086, *citing*, *California v. Tahoe Reg'l Planning Agency,* 792 F.2d 775, 778 (9th Cir. 1986).

### Teck'S Interests Demand That It Make All Of NANA's Arguments

Teck's interest in the litigation ensures that it will make all NANA's proposed arguments. Teck faces potentially severe liability, including actual, compensatory and

punitive damages, full fees and costs and a decision establishing violations of various statutes, regulations and rules which may trigger government action against it. Conitz's success will expose Teck to other potential claimants in a position similar to Conitz's, and encourage such claimants to bring suit.

Teck has ample incentive to make all possible arguments, including any arguments NANA might desire to advance, to support a determination that the hiring scheme is valid, legal and enforceable. What benefits NANA benefits Teck. Both Teck and NANA have the identical objective of proving that Conitz's legal rights were not violated by the hiring and advancement scheme.

Teck's self interest insures that all of NANA's vaguely expressed arguments will be vigorously presented by Teck and cannot intervene.

**Teck Is Capable And Willing To Make NANA's Arguments.**

Teck is "capable and willing" to make all of NANA's arguments. Teck is a corporate entity with the resources and representation necessary to advance a vigorous defense to this action, and Teck has already shown itself willing

to do so[5]. Teck's self-interest is discussed immediately above. NANA's involvement is unnecessary. NANA cannot intervene.

### NANA Has Failed To Show That It Would Offer Any Necessary Elements To The Proceeding That Teck Would Neglect

None of NANA's arguments in favor of intervention suggest that it would offer anything that Teck would neglect. NANA indicates its focus is the contractual relationship between itself and Teck. Elements of the contractual relationship are irrelevant to the dispute between Conitz and his employer, Teck. NANA fails to demonstrate that it has anything to add to those issues material to this dispute. For this reason, too, intervention is inappropriate and unavailable.

NANA's participation as intervenor will needlessly complicate the proceeding, placing an unfair burden on Plaintiff and waste the resources of the court (and the plaintiff).

### Intervention By Right – Summary

The law of intervention by right is a series of issues defined by multiple determinations. Failure to prove each

---

[5] Teck's counsel, Sean Halloran, has significant experience in and around the Northwest Borough and the Teck Cominco Mine. A list of the mention of his name in appeals is attached.

*Conitz v. Teck Cominco Alaska, Inc.*, Case No. 4:06-CV-00015 RRB
Opposition to Motion To Intervene                              Page 15 of 19

issue, or to fail to prove one of the elements necessary to establish the issue results in non-intervention.

At issue here are the requirement of "protectable interest," impairment of the ability to protect the interest, if any, and whether Teck will adequately protect NANA's interest, if any.

The protectable interest issue has two prongs. Failure to prove either results in non-intervention.

Even with a protectable interest, this lawsuit will not impair the right or interest that NANA advances to support its application and intervention must be denied.

Finally, even if we assume the first two issues, a three prong test for adequacy of representation applies and failure to prove any prong results in non-intervention.

NANA cannot intervene because its facts do not support its application that all three required issues are proven. In other words, this tactical ploy need not be permitted.

Conitz sued Teck for violations of his rights as an employee, and NANA's contract with Teck does not authorize Teck to break the law.

## NANA SHOULD NOT BE PERMITTED TO INTERVENE BASED ON FRCP 24(b), PERMISSIVE INTERVENTION

NANA also claims that it should be permitted to intervene based on FRCP 24(b), which authorizes permissive intervention when 1.) there is an independent ground for jurisdiction; 2.) the motion is timely; and 3.) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. The decision to deny permissive intervention is "directed to the sound discretion of the district court." *San Jose Mercury News v. U.S. District Court*, 187 F.3d 1096, 1100 (9th Cir. 1999).

"…An order denying a Motion for Permissive Intervention is assumed to 'hav[e] no adverse effect on the applicant,' and such order is not appealable absent abuse of discrection" *Traiman v. Baltimore Ohio R. Co.*, 331 US 519, 524, 67 S.Ct., 1389 91 Lawyers Edition 1646 (1947) cited in *Stringfello v. Concerned Neighbors in Action,* 480 US 370, 107 S.Ct. 1177 (1987).

This court must consider the effect on the present parties when deciding whether to grant permissive intervention. Conitz will be forced to litigate against

two aligned parties, both with considerable resources if permissive intervention is allowed.[6]

"[A] permissive intervenor typically becomes a party only to ward off the potential effects of *stare decisis*." *Local Number 93, International Asso. of Firefighters, etc. v. Cleveland*, 478 U.S. 501, 539 (1986).

Because NANA's intervention would complicate the litigation and burden the plaintiff unnecessarily, the court should not authorize permissive intervention.

FRCP 24(b)'s requirement that the court look to the burden that intervention will place upon the plaintiff and the courts.

NANA does not have a significant protectable interest in this action. NANA is unable to articulate one, and when it does articulate one, it speaks inconsistently claiming both that it does not discriminate on the basis of race and that yet it has an interest in doing so.

As discussed in "Intervention as a Matter of Right", there has been no demonstration that Teck will not vigorously litigate this matter. Those arguments are not repeated here, but incorporated by reference. Defendant

---

[6] The claim of prejudice can be waived if not raised in opposition. *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989)

Teck has not stated, nor taken any action to indicate that it will not vigorously defend the case.

## CONCLUSION

For the foregoing reason, NANA's Motion To Intervene must be denied both as of right and permissively.

DATED this 20th day of July, 2007 at Fairbanks, Alaska

LAW OFFICES OF KENNETH L. COVELL
Attorney for the Plaintiff, Gregg Conitz

s/Kenneth L. Covell
712 8th Ave.
Fairbanks, AK 99701
Phone: 907.452.4377
Fax: 907.451.7802
E-mail: kcovell@gci.net
Attorney Bar #: 8611103

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been
Served electronically, via ECF to the following attorney(s):
Sean Halloran
Thomas M. Daniel – TDaniel@perkinscoie.com

Dated: 07/20/2007
By:      /s/ Emily S. Ervin
         Emily S. Ervin for Kenneth L. Covell

Search Result Citations List - FED9-ALL,AK-CS    "sean halloran"

1. Kivalina Relocation Planning Committee v. Teck Cominco Alaska Inc., 141 Fed.Appx. 650, 2005 WL 1939873, , C.A.9 (Alaska), August 15, 2005(No. 04-35206.)
2. In re Rogstad, 126 F.3d 1224, 1997 WL 618265, 38 Fed.R.Serv.3d 1403, 97 Cal. Daily Op. Serv. 7906, 97 Daily Journal D.A.R. 12,742, , C.A.9, October 08, 1997(No. 96-35875.)
3. Kivalina Relocation Planning Committee v. Teck Cominco Alaska, Inc., 227 F.R.D. 523, 2004 WL 3362164, , D.Alaska, January 20, 2004(No. A02-231 CV (JWS).)
4. Pyramid Printing Co. v. Alaska State Com'n for Human Rights, 153 P.3d 994, 2007 WL 778969, , Alaska, March 16, 2007(No. S-12046.)
5. Olson v. Teck Cominco Alaska, Inc., 144 P.3d 459, 2006 WL 2789349, , Alaska, September 29, 2006(No. S-11755.)
6. Laidlaw Transit, Inc. v. Anchorage School Dist., 118 P.3d 1018, 2005 WL 1926244, 201 Ed. Law Rep. 714, , Alaska, August 12, 2005(No. S-10796.)
7. Halloran v. State, Div. of Elections, 115 P.3d 547, 2005 WL 1491749, , Alaska, June 24, 2005(No. S-11358.)
8. Baskurt v. Beal, 101 P.3d 1041, 2004 WL 2680930, , Alaska, November 26, 2004(No. S-11060.)
9. Goossen v. Still, Not Reported in P.3d, 2002 WL 31716561, , Alaska, November 27, 2002(No. S-10285.)
10. Reich v. Cominco Alaska, Inc., 56 P.3d 18, 2002 WL 31207520, , Alaska, October 04, 2002(No. S-9717.)
11. Van Deusen v. Seavey, 53 P.3d 596, 2002 WL 1943508, , Alaska, August 23, 2002(Nos. S-9978, S-10057.)
12. Goossen v. Still, Not Reported in P.3d, 2000 WL 34545644, , Alaska, February 02, 2000(No. S-8866.)
13. Trails North, Inc. v. Seavey, Not Reported in P.3d, 1999 WL 33958785, , Alaska, December 01, 1999(Nos. S-8425, S-8505.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.