KENNETH L. COVELL
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska 99701
Phone:   907.452.4377
Fax: 907.451.7802
kcovell@gci.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGG CONITZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| TECK COMINCO ALASKA, INC., ) | |
| ) | |
| Defendant ) | Case No. 4:06-CV-00015 RRB |

### AFFIDAVIT OF GREGG CONITZ IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO COMPEL

| | |
|---|---|
| STATE OF ALASKA ) | |
| : ss. | |
| FOURTH JUDICIAL DISTRICT ) | |

I, Gregg Conitz, being first duly sworn, upon oath depose and state as follows:

1. I am the Plaintiff in the above captioned matter.

2. After my initial employment with Cominco Alaska, Inc. (now known as Teck Cominco Alaska, Inc.) in 1990 in the Mill Maintenance Department, I attempted to obtain a transfer to the Mine Operations Department. As per company policy, I was eligible to apply for a position transfer after one (1) year of employment.

3. Over the next four (4) years I applied for several posted position openings in the Mine Operations Department. I was denied the transfer on each occasion and was told by Ted Zigarlick, then Mine Operations Foreman and by Ron McLean, then Human Resources Superintendent, that I was not an eligible candidate due to Cominco Alaska's NANA shareholder hiring preference.

4. On several occasions both Mr. Zigarlick and Mr. McLean cited the contract agreement between Cominco Alaska and NANA as the reason for this exclusion.

5. On May 12, 1993 I asked Mr. McLean to provide me with a copy of the contract. He told me that it was a secret agreement and he was not able to give me a copy. I then asked him if I could review the contract, Mr. McLean said that I could and we later made arrangements to do so.

6. On August 2, 1993 I met with Mr. McLean in his office to review the contract. Mr. McLean permitted me to sit in his office and read the contract under his observation.

7. It has been several years since I read portions of the contract and I do not remember verbatim all that I read, but in addition to the portion of the contract that has been provided to us by Mr. Halloran, there were a number of provisions which encourage racial discrimination. These may include but not be limited to the following contractual conditions:

1. Any non Native employees of Red Dog Mine would be discouraged from moving to, or residing within the NANA region;

2. All non Native employees of Red Dog Mine would be flown directly from Anchorage to the mine and return without landing within the region;

3. General statements indicating that Cominco Alaska (now known as TeckCominco Alaska) was to discourage or at least not encourage association of non Native employees with NANA shareholders in the NANA region as a whole exclusive of the Red Dog property, so as to maintain the integrity of Native culture within the region;

4. No one working at Red Dog Mine would be allowed to live on NANA owned land other than the living facility provided by Cominco;

5. General provisions to allow NANA to oversee or enforce these provisions as well as the provisions in the sections of the contract provided to us by Mr. Halloran. These may include the provisions for oversight committees such as the Employment and Training Committee and possible enforcement by NANA if there is non-compliance with the agreement.

8. I believe these provisions of the contract that have not been supplied by Mr. Halloran are pertinent as they are evidence of Cominco and NANA's agreement to categorically discriminate against persons other than NANA shareholders.

9. On November 27, 2004 I had a meeting with John Kells and Ted Zigarlick regarding my dispute resolution complaint I filed after being turned down for the Mine Operations Supervisor position. During that meeting, Ted stated that the shareholder hiring preference was a factor in selecting Larry Hanna for the position over myself, despite the fact that John Kells stated that he had selected me as the best candidate. I told Mr. Zigarlick that I had read the NANA/Teck Cominco Agreement and that although it states a shareholder hiring preference, I did not remember that it stated that the preference would be exercised in the case of two current TCAK employees applying for a promotion. Mr. Zigarlick stated that the contract did provide for this occasion. I asked Mr. Zigarlick to show me the contract and where that was stated. I went to his office the next day and he showed me the portion of the contract that Mr. Halloran provided us which states the hiring preference. I was in no way convinced that this supported Ted's argument of the preference being applicable in this situation. If there is some other portion of the contract that supports his statements, it should be provided to us. Also, during this meeting, Mr.

Zigarlick stated that the shareholder hiring preference provided for by the NANA/Teck Agreement had been previously challenged and that it held up in court. Yet he provided no evidence to support this statement.

FURTHER AFFIANT SAYETH NOT.

DATED this 1st day of August, 2007, at Fairbanks, Alaska.

_____
Gregg Conitz

SUBSCRIBED AND SWORN to, before me, this 3rd day of August, 2007.



_____
Notary Public in and for the State
Of Alaska
My Commission Expires: 06/02/2011

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been
Served electronically, via ECF to the following attorney(s):
Sean Halloran

Dated: 8/7/07
By: _____
Emily S. Ervin for Kenneth L. Covell