KENNETH L. COVELL
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska 99701
Phone:    907.452.4377
Fax: 907.451.7802
kcovell@gci.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

GREGG CONITZ,                          )
                                       )
                Plaintiff,             )
                                       )
        vs.                            )
                                       )
TECK COMINCO ALASKA, INC.,             )
                                       )
                Defendant,             )
                                       )
and KANA Corporation,                  )
                                       )
                Intervenor.            )
_____)    Case No. 4:06-CV-00015 RRB


## POINTS AND AUTHORITIES SUPPORTING
## CONITZ' MOTION FOR ORDER OF RULE OF LAW OF THE CASE

COMES NOW, Gregg Conitz, by and through undersigned
counsel, The Law Office of Kenneth L Covell, and hereby Moves
this Court For An Order Of Rule Of Law Of The Case.

### Summary Of Motion And Argument

Conitz was and is being subjected to an illegal
employment preference by his employer based upon race. Conitz

seeks a determination that the employment preference is racial discrimination.

Conitz is employed by Teck Cominco Alaska, Inc. (Teck) Teck has an employment preference in favor of NANA shareholders. This is a preference that gives NANA shareholders a benefit over non NANA shareholders in employment. NANA shares are not freely alienable. The only way to get them is to be a Native by Birth, Ancestry, Adoption, or Marriage. The stated goal of Teck Cominco is to have a 100% NANA "shareholder" workforce. NANA shareholders might be defined as native Alaskans of the NANA region. Almost all, if not all, NANA shareholders are Alaska Natives.

The shareholder preference is part of the agreement between Teck and NANA. When the composition of the class of persons of NANA shareholders is examined, the racial character of the preference is obvious.

Once this court determines the racial character of the preference, its illegality follows. Teck is prohibited from discriminating because of race, by the laws of the United States and the State of Alaska.

Conitz requests a determination that the NANA "shareholder preference" at Teck, is illegal under such laws.

The shareholder preference is a proxy, euphemism or surrogate for race. Once determined, this becomes the law of the case.

Under the controlling authority of *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297 (9th Cir. 1982) the court should find that even if Defendant Teck's shareholder preference plan, is neutral on its face, that the plan has a discriminatory impact on the company's non Native(minority) employees.

## General Discussion

Defendant Teck Cominco Alaska, Inc. (Teck) has a "shareholder preference" in the workplace. Teck Cominco gives a preference in employment. Teck Cominco Alaska operates a mine in Northwest Alaska. Teck leases the ground that the mine is on, from NANA Regional Corporation. NANA Regional Corporation is a ANCSA corporation, stock in ANCSA is not freely alienable. In exchange for Native land claims Congress created regional corporations in Alaska and granted shares of stock in these corporations to the Native people of Alaska.

---

[1] The extent of the preference (rather than the existence of the preference) may be a matter that is in dispute. The defendants in depositions admits that all other things being equal, a shareholder will be preferred. This limited preference is belied by written materials of both Teck and NANA. The extent of the preference is immaterial to this motion, this motion requests the court to find

With limited exceptions stock can only be obtained by being "born into it."

A 1982 contract between Teck and NANA requires Teck to give a preference to NANA shareholders in employment, to the extent permissible by law. Teck is a private company. Conitz works for Teck, not for NANA. Conitz is white and not a NANA shareholder. Conitz has applied for various positions and those positions were awarded to Native Alaskan NANA Shareholders.

Conitz asks the court for an order holding that any preference based on NANA shareholder status is a violation of the laws of the United States and the State of Alaska.

### Racially Based Employment Preferences Are Illegal

Time and again discrimination based upon race in the employment setting have been found to violate the law applying both the United States and Alaskan laws and cases.

42 USC §1981 has been discussed thus:

> Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is

that any NANA shareholder preference given by Teck, to Teck employees, is illegal.

racial discrimination that Congress intended § 1981
to forbid, whether or not it would be classified as
racial in terms of modern scientific theory.

*St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987)

Alaskan statutes forbid the use of racial hiring preference.

AS 18.80.220 (a)(1):

> AS 18.80.220(a)It is unlawful for (1) an employer
> to refuse employment to a person, or to bar a
> person, from employment, or to discriminate against
> a person in compensation or in a term, condition, or
> privilege of employment because of the person's
> race, religion, color, or national origin, or
> because of the person's age, physical or mental
> disability, sex, marital status, changes in marital
> status, pregnancy, or parenthood when the reasonable
> demands of the position do not require distinction
> on the basis of age, physical or mental disability,
> sex, marital status, changes in marital status,
> pregnancy or parenthood;

NANA and Teck are not strangers to seeing preference
schemes declared illegal.  In *State v. Ensearch*, 787 P.2d 624
(Alaska 1989) a statute that in part parallels the NANA/Teck
agreement giving regional hiring preference, was invalidated
as discriminatory(Exhibit 7, p8).

Teck's use of the term "NANA shareholder" is a basis for
favoritism for hiring and advancement and is a preference
based upon  race -- *i.e.*, a criterion so closely related to
race that it ceases to be race-neutral and becomes "a

surrogate for impermissible racial biases." *United States v. Bishop*, 959 F.2d 820, 826 (9th Cir. 1992).

Tech's shareholder preference is impermissible racial discrimination. It takes no imagination to identify the preference as being intended to benefit ancestral native Alaskans, predominately or wholly Iñupiaq Eskimo.

Defendant Teck's, classification of certain persons, by reason of the person's status as a shareholder in NANA Regional Corporation, is a "proxy for race;" because that shareholder status is predicated entirely upon race.[2]

In the grand scheme of this case, an early determination that the "shareholder" preference is a "racial" preference will simplify the case, and requires no more evidence than is now available.

---

[2] Only an insignificant number of persons who would be eligible for employment under the "shareholder" preference are not racially and/or ancestrally native Alaskans. This small subset of shareholders originates in a blood relationship or its equivalent, *to wit*, as a direct result of marriage, adoption or inheritance from one who was racially and ancestrally a native Alaskan. NANA's published literature confirms that, "NANA is owned by more than 11,400 Alaska Native shareholders of Iñupiat Eskimo descent." (Exhibit 9, p2 at Bates 270) "More than 90% of the region's residents are Iñupiat Eskimo, descendants of ancestors who settled the land over 10,000 years ago. (Exhibit 9, p2 at Bates 270)

## NANA AND TECK AGREE THIS IS THE DECISIVE ISSUE IN THE CASE
## AND NEEDS TO BE DECIDED

NANA desired to intervene precisely because of this issue. "[The] argument assumes that the contract's stockholder-hiring provision is illegal. But that is precisely the issue that may be addressed in this case."(Exhibit 1, p2).

Teck and NANA then admit there is a preference, and then say that NANA Shareholders are not the same as Native Alaskans. "...Teck Cominco Alaska has no hiring preference beyond its policy of preferring NANA Shareholders." . . . (Exhibit 2, p2) "Neither NANA nor Teck Cominco grants a race-based employment preference to Native Americans. . . . Teck Cominco is obligated to offer employment to qualified NANA shareholders . . ." (Exhibit 3, p2)

Resolving this significant legal issue now will advance the litigation, advance judicial economy and encourage settlement.[3]

---

[3] The Judicially Mandated Burden Shifting Scheme:

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792(1973) established a burden shifting scheme to analyze employment discrimination. Conitz must establish a *prima facie* case of racial discrimination. *McDonnell Douglas,* 411 U.S. at 802. The *prima facia* case requires Conitz to show that: (1) he belongs to a protected class, (2) he was qualified for the position he

### Indisputable Facts

Defendant admits that it has an employment preference in favor of NANA shareholders.

The 1982 Agreement between NANA and Cominco American Incorporated (a predecessor or lateral entity with present ownership) at §1.17 defines a Native of the NANA Region as a stockholder of NANA etc.)

> 1.17 "Natives of the NANA Region" means the stockholders of NANA whose stock carries voting rights and the decedents and spouses of such stockholders.

(Exhibit 7, p5)

The 1982 Agreement, at Article X says:

10.1 Employment Goals and Policy.

> 10.1.1.  Beginning in. . . 1982,as many as possible of the employees required by Operator…shall be Natives of the NANA Region, . . .It is the goal of NANA and Cominco that by not later than twelve years after commencement of production from the first Mine

---

sought, (3) he was subjected to an adverse employment action, and (4) similarly situated non-white individuals were treated more favorably. *See, St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

Once Conitz establishes a *prima facie* case, a rebuttable presumption of discrimination attaches unless Defendants can meet their burden of production to articulate a legitimate, nondiscriminatory reason for rejecting Conitz. *Lindsey v. SLT S.A., LLC*, 447 F.3d 1138, 1148 (9th Cir. 2006); *McDonnell Douglas*, 411 U.S. at 802.

on the Red Dog Property, to the extent feasible, one
hundred percent (100%) of such employees shall be
Natives of the NANA region. . . employment shall be
offered first to available Natives of the NANA
Region who are qualified for the job, or if none are
qualified… who meet job-related standards of fitness
and ability which indicate that with a reasonable
amount of on-job training as outlined . . . the
person could satisfactorily perform the job.

(Exhibit 7, p7+8)

The goal is to exclude all but Natives of the NANA

Region, and to create a workforce that is 100% Natives of the

NANA region. To achieve the goal of having 100% NANA region

natives working for Teck at the mine, Teck is required to

offer jobs to qualified Natives of the NANA region or

shareholders with a reasonable amount of on-the-job training

who could satisfactorily perform the job. In other words, a

NANA Shareholder who is not qualified for the position, but

who can be taught to do the job, takes precedence over an

already qualified non-NANA Shareholder.

Mr. Sommer's, the Human Resources Director for Teck,

agreed that Teck has a hiring preference that favors NANA

shareholders (Exhibit 7, p2-3,7,8.)

Ted Zigarlic, the mine superintendent since 1995, a Teck

30(b)(6) spokesperson, testified at deposition. Mr. Zigarlic

agreed that, "a NANA shareholder and a Native of the NANA

region is [are] a largely coextensive intersecting set." (Exhibit 8, p3; Zigarlic Depo. at 44) Mr. Zigarlic also said that, It is the goal to the extent possible, of NANA and Cominco to have 100 percent Native Shareholder employment at the mine. (Exhibit 8, p5; Zigarlic Depo. at 46) Mr. Zigarlic also testified that the majority of employees at the mine are Natives (or shareholders):

    Q.    You've got a percentage of native hire right now?

    A.    That's correct.

    Q.    Fifty-five percent? I've heard 55, I've heard 60. Something in that range?

    A.    Yeah, it's in that area.

(Exhibit 8,p6; Zigarlic Depo. at 47)

    Both NANA and Teck have joined in a goal to make employment at Teck's operation 100% NANA Shareholder hire. (Exhibit 8 at p3+4; Zigarlic Depo. at 44 and 46, Exhibit 4, p5 at Bates 228, Exhibit 5, p2 at Bates 250, Exhibit 6, p3 at Bates 255)

    Both NANA and Teck maintain:  The first preference for all mine jobs is to go to NANA shareholders. (Exhibit 10, p14 at Bates 242, Exhibit 8, p3+5; Zigarlic Depo. at 44 and 46)