**"Shareholder Preference" Means "Racial Preference"**

> We consider the Eskimo and the Indian a citizen just the same as all the rest of us. We don't consider that he is any better than we are, and we don't consider that he is any worse. He is a man just like we are; and he is entitled to all the rights and privileges and all the duties of citizenship, just as we are; and he is covered by the bill of rights that we are adopting here, just as we are.

See, 4 *Proceedings of Alaska Constitutional Convention* 2525, 2527-91 (Jan. 18, 1956 at 2536-37(quoting Delegate Davis). See also, *Atkinson v. Haldane*, 569 P.2d 151, 155 (Alaska 1977) (approvingly quoting, Justice Frankfurter's opinion in *Metlakatla Indian Cmty. v. Egan*, 369 U.S. 45, 50-51 (1962)), See also, *Malabed v. N. Slope Borough*, 70 P.3d 416 (Alaska 2003).[4]

**Case Law**

*Rice v. Cayetano*, 528 U.S. 495, 514 (2000) warns that "ancestry can be a proxy for race."

In *Malabed v. North Slope Borough*, 335 F.3d 864 (9th Cir. 2003) a native hire preference was struck down as illegal. The questioned ordinance expressly professed an intent to benefit a class defined by race and borough residency. This preference in favor of all Native Americans

---

[4] *Malabed* considered an employment preference enacted by a governmental subdivision. Conitz faces such a preference applied by a wholly private organization, Teck. That Teck included this preference because of a contract with a Native Corporation is not a relevant consideration. Teck is the employer and is neither a political entity or a native corporation.

was construed as a proxy for an illegitimate race-conscious purpose. *Malabed*, 70 P.3d at 424.

Congress' wisdom is that America is best served by equality of employment opportunity, regardless of what group got there first. The Ninth Circuit has already decided that this principle must be applied to a "shareholder preference" and concluded the "shareholder preference" was an impermissible proxy for race.

In *Bonilla v. Oakland Scavenger Co.* 697 F.2d 1297, 1302-1303 (9th Cir. 1982), cert. denied, 467 U.S. 1251 (1984) the Ninth Circuit found that Oakland Scavenger company had a shareholder preference. However in order to become a shareholder one had to be of Italian ancestry. Black and Mexican employees of Oakland Scavenger Co. complained of racial discrimination, the court in Bonilla found:

> **To the extent that preferential wages, hours, and job assignments are tied to ownership of the Company's stock, the shareholder preference plan violates Title VII because the plan's effect is to discriminate against [plaintiffs] with respect to [their] compensation, terms, conditions, or privileges of employment because of [their] race, color, . . . or national origin.**
>
> **42 U.S.C. § 2000e-2(a).**

Conitz asks this Court to decide, as a matter of law, that a preference scheme favoring shareholders of NANA

Regional Corporation is a "proxy for race," and simply racial discrimination.

Establishing that any preference at Teck for NANA shareholders is "racial" will resolve the important issue in this case and advance the litigation substantially.

### Controlling 9th Circuit Authority requires the Court to grant Plaintiffs Motion.

Separate and apart from the issue of whether a shareholder is nearly a proxy term for race, the court is directed in this matter to rule in Plaintiff's favor on this motion.

Where an apparent facially neutral preference plan has disparate impact on "minorities" the plan violates Title VII.

The question of a shareholder preference with restricted alienability of shares, based upon ancestry or race, was addressed before by the 9th Circuit.

In *Bonilla v. Oakland Scavenger Co.*, supra. p2,12 a garbage hauling company had been owned since 1909 by person's of the Italian ancestry. As time went on they began to hire non Italians. However only Italians could obtain shares in the company and the Italians were given preference in

employment. Were the stock alienable the court might have agreed that such a plan was neutral on its face.

However since the stock was not alienable and since persons complaining of the lack of favorable treatment could not obtain the stock, the court found that the facts of the case demonstrated that the disparate impact of the shareholder preference plan was discriminatory. The court further found that burden then shifted to the company to demonstrate that a legitimate and over riding business considerations provided justification for the plan. *Bonilla*, at 1303.

The Scavenger company pointed to the alleged superior interest of protecting and providing for members of immediate families and founders of the company. The court said "...Title VII case law has from the beginning made clear that nepolistic concerns cannot supersede the <u>nation's paramount goal of equal economic opportunity for all.</u> *Id.* (emphasis added).

In further discussing in the issue, the court noted that in some instances where there was nepotism and favoritism that was applicable to black and white alike, it would not be discriminatory on its face. However if there were a completely white union, the effect of a continued application

such a nepotism policy would "forever deny to negros and Mexican Americans any real opportunity for membership. *Id.*

> The desire of a union to insure family security restricting new membership to the sons and close relatives of present members may constitute a legitimate "business purpose." But it cannot override the racial impact where present union membership is all white.
>
> *Bonilla* at 1303.

It is obvious whatever intention, there might be if any, of Teck (or NANA) to ensure "family security"; it is simply not a sufficiently legitimate purpose to override the "Nation's paramount goal of equal economic opportunity for all." The court ruled

> We reject the company's argument that it its legitimate interest in protecting its family members overrides the counter veiling nation interest in eliminating employment discrimination based on race and national origin. To the extent that the preferential wages, hour, and job assignments are tied to ownership to the company's stock, the shareholder preference plan violates Title VII because the plan's effect is to discriminate against [Plaintiff] with the respect [their] compensation, terms conditions or privileges of employment because of [their] race, color… or national origin.
>
> *Bonilla,* at 1303-1304.

Conitz' position is no different than that of Bonilla. He is a minority employee at a company. The company has a preference for shareholders. The stock

in the company is not freely alienable.[5] Stock shares are not freely alienable and the perhaps otherwise racially neutral plan, simply is not because of the inalienability of the stock. Such a plan, as a matter of law, has a disparate impact on minority employees. Neither Bonilla or Conitz could ever hope to become a member of the "all white union." Try as they might Bonilla could not become Italian and Conitz could not become an Alaska Native. As a matter of law under the ruling of *Bonilla*, Teck's NANA shareholder preference plan violates Title VII. The court should so rule.

## Conclusion

Teck admits that they have an employment preference in favor of NANA shareholders. The category of NANA shareholders is a proxy for race. Essentially all NANA shareholders are Native Alaskans. The NANA shareholder preference is an illegal racial employment preference under 28 USC §1981, Title VII, and AS 18.80.220(a)(1).

This Court's determination that the law of this case is that the "shareholder preference" is a racially based

---

[5] Bonilla at least worked for the company who's stock holding was an issue. In

preference will only confirm the obvious, and by doing so advance the litigation, and preserve the resources of the court and the parties.

Conitz requests that this court rule, as the law of this case, that the "shareholder preference" and the "native preference" are racially based and are to be treated accordingly.

Not only is NANA shareholder a proxy for race but even if such plan were a facially neutral preference plan, the plan has a disparate impact on the minority of employees in the workplace. Conitz cannot obtain shares in NANA and therefore cannot obtain economic equality in the workplace. Our Nation has a paramount goal of equal economic opportunity for all without regard to race, creed, color, or origin. Teck's plan discriminates against Conitz and all non Northwest Alaska Natives on the basis of race.

For all of the above reasons the "NANA Shareholder" preference is racial discrimination by another name, a proxy for race and this court should grant Conitz's Motion establishing this fact.

---

this case Conitz does not even work for NANA making the connection that much more attenuated.

Conitz v. Teck Cominco, Case No. 4:06-CV-00015 RRB
Motion For Determination Of Law Of The Case
Page 17 of 18

Respectfully submitted this 2nd day of October, 2007 at Fairbanks, Alaska.

LAW OFFICES OF KENNETH L. COVELL

Attorney for Plaintiff, Gregg Conitz

s/Kenneth L. Covell
712 8th Ave.
Fairbanks, AK 99701
Phone: 907.452.4377
Fax: 907.451.7802
E-mail: kcovell@gci.net
Attorney Bar #: 8611103

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been
served electronically, via ECF to the following attorney(s):

Sean Halloran
Thomas M. Daniel - TDaniel@perkinscoie.com

Dated: 10/02/2007
By:  /s/ Melissa A. Dick
     Melissa Dick for Kenneth L. Covell