IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

GREGG CONITZ, )
 )
            Plaintiff, )
 )
vs. )
 )
TECK COMINCO ALASKA, INC., )
 )
            Defendant. )
_____ ) Case No. 4:06-CV-00015 RRB

### DISCOVERY REQUESTS OF 8/16/07

Plaintiff, Gregg Conitz, by and through undersigned counsel, submits the following interrogatories, production requests and admissions requests to Defendant Teck Cominco Alaska to be answered within 30 days from service hereof:

### DEFINITIONS

1) The terms "you", "your", "defendant", or "defendants" shall mean and refer to defendant, Teck Cominco Alaska, Inc., and/or its agents or attorneys.

2) The term "identify" when used in reference to a person shall mean to provide the person's full name, present or last known address, relationship to defendant and the name and address of the person's present or last known place of employment.

3) The term "identify" when used in reference to an organization, agency, corporation, partnership or other entity

LAW OFFICES OF
KENNETH L. COVELL
712 8TH AVENUE
BANKS, ALASKA 99701
PHONE (907) 452-4377
FAX (907) 451-7802

Exhibit 3 page 1 of 12

Conitz v. Teck Cominco, Case No. 4:06-00015 CV RRB
Discovery Requests of 8/16/07                    Page 1 of 15

shall mean to provide the full name, present or last known principal place of business and telephone number of the organization, agency, corporation, partnership or other entity.

4) The term "identify" when used in reference to documents shall mean to identify the type of document (e.g., letter), each author and each recipient, the date of the document and the identity of the present or last known person(s) who possess custody, possession or control of the document. If any document was, but is no longer, in your custody, possession or control, state the disposition of the document and when said disposition was made.

5) The term "identify" when used in reference to any communication, discussion or correspondence shall mean to provide the date of such communication, discussion or correspondence, the identify of each person directly involved in the communication, discussion or correspondence and identify each person who had knowledge of the communication, discussion or correspondence; state whether the communication was oral or written; and identify each document which in any way concerns, relates or refers to or memorializes the communication.

6) The term "document(s)" shall mean all materials or tangible objects conveying spoken, visual or literal substance, and shall include, but are not limited to the original and any non-identical draft or copy of the original, regardless of

LAW OFFICES OF
NETH L. COVELL
712 8TH AVENUE
ANKS, ALASKA 99701
ONE (907) 452-4377
AX (907) 451-7802

Conitz v. Teck Cominco, Case No. 4:06-00015 CV RRB
Discovery Requests of 8/16/07

Exhibit 3 page 2 of 12
Page 2 of 15

origin or location, and any data compilations, of any correspondence, records, tables, charts, analysis, graphs, schedules, reports, memoranda, journals, notes, logs, diaries, calendars, appointment books, letters, telegrams, messages, studies, directives, books, periodicals, magazines, newspapers, booklets, circulars, advertisements, brochures, bulletins, instructions, minutes, electronic mail, contracts, books of accounts, orders, invoices, statements, checks, bills, files, vouchers, notebooks, scrapbooks, data sheets, computer print-outs, photographs, photographic negatives, tape recordings (both audio and video), drawings, forms, catalogues, manuals, blueprints, tracings, tabulations, and any other matter whether handwritten, typed, printed, or maintained in electronic or computer database or software programs.

7) "Address" shall mean street number and street, office or suite number, city, municipality or town, state and zip code.

8) "Archive" means a copy of data on a computer drive, or on a portion of a drive, maintained for reference.

9) "Backup" means copy of active data, intended for use in restoration of data.

10) "Computer" includes but is not limited to network servers, desktops, laptops, notebook computers, mainframes, PDAs (personal digital assistants, such as PalmPilot,

LAW OFFICES OF
NETH L. COVELL
712 8TH AVENUE
BANKS, ALASKA 99701
ONE (907) 452-4377

Exhibit 3 page 3 of 12

Conitz v. Teck Cominco, Case No. 4:06-00015 CV RRB
Discovery Requests of 8/16/07

Page 3 of 15

Cassiopeia, HP Jornada and other such handheld computing devices), digital cell phones and pagers.

11) "Data" means any and all information stored on media that may be accessed by a computer.

12) "Hard drive" is the primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

The discovery requests herein shall be deemed to be continuing in nature and that if defendant becomes aware of any information and/or documents that would further serve to answer, change or supplement the answers given herein, plaintiff hereby requests that the information and/or documents be provided to counsel.

## INTERROGATORIES

1) DESCRIBE in detail, including dates and author, any correspondence, telephone calls, electronic mails, whether commemorated in writing or not, between NANA and Teck Cominco Alaska, Inc., regarding the variously described Native-hire preference, Shareholder preference, regional preference, specifically in relation, but not limited to Gregg Conitz, Karen Conitz, or any other employee of Teck Cominco Alaska and it's predecessors.

This request specifically includes any follow up or response to the correspondence by Marie Greene, President/CEO of

LAW OFFICES OF
NETH L. COVELL
712 8TH AVENUE
BANKS, ALASKA 99701
ONE (907) 452-4377
AX (907) 451-7802

Conitz v. Teck Cominco, Case No. 4:06-00015 CV RRB
Discovery Requests of 8/16/07

Exhibit 3 page 4 of 12

Page 4 of 15

the NANA Regional Corporation, dated December 1, 2006 provided in your supplemental disclosure of April 26, 2007. (Copy attached).

ANSWER:

2) STATE what particular position of employment Ms. Greene is referring to in her letter of December 1, 2006. (Copy attached) Please identify every candidate for the position.

ANSWER:

3) 2. Does Teck Cominco Alaska have, or has it had, any EEO statement? If so, where has this statement been published? For example, many companies issue statements to the effect of, "This company is an equal employment opportunity employer and does not discriminate on the basis of race, creed, color, national origin, etc."

ANSWER:

4) State the dates and times that the Teck and/or Teck Cominco EEO statement became part of, was modified or was removed from the policy manual. (See the attached copy of Exhibit 33 from Deposition marked EH/NOV 92.)

ANSWER:

5) State in a manner sufficient to permit identification of, who or what individual or committee was responsible for those changes.

ANSWER:

LAW OFFICES OF
NETH L. COVELL
712 8TH AVENUE
BANKS, ALASKA 99701
ONE (907) 452-4377

Conitz v. Teck Cominco, Case No. 4:06-00015 CV RRB
Discovery Requests of 8/16/07

Exhibit 3 page 5 of 12

Page 5 of 15

6) State, in a manner sufficient to permit identification of the person, who was/were the general manager(s) and/or president(s) of the mine at the time these changes to the EEO statement were made. As part of this answer please state whether or not the identified individual(s) had the authority to make such changes.

ANSWER:

7) STATE, and identify in a form sufficient to permit reference, any and all versions of each and any such "EEO" statements.

ANSWER:

8) Exhibit 33 references "Section C-1". Please explain what Section C-1 is? As part of your response, please explain where Section C-1 is commemorated or where a copy can be found? Also, as part of your response, please tell us when, by date, Section C-1 was drafted, and by whom, what actions were taken following the original drafting, and who was involved in changes, if any, and when Section C-1 was adopted, and by whom or what body. Also, as part of your response, please explain what modifications, if any, have been made to Section C-1 from the time it was adopted, or included in the document evidenced by Exhibit 33, and who was responsible for, and involved with, the modification. Please further explain in detail why any and all modifications were made, who was responsible for the

Exhibit 3 page 6 of 12

LAW OFFICES OF
NETH L. COVELL
712 8TH AVENUE
FAIRBANKS, ALASKA 99701
ONE (907) 452-4377
FAX (907) 451-7802

Conitz v. Teck Cominco, Case No. 4:06-00015 CV RRB
Discovery Requests of 8/16/07

Page 6 of 15

modifications, and identify all documents commemorating or referring to such changes.

ANSWER:

9) Exhibit 6 in the deposition held in July 2007 (Copy Attached) appears to be a draft of and "Equal Opportunity Employment" statement from about 2002. Please explain how this document came to be and who made the changes to the document. As part of this answer, please identify with specificity sufficient to allow reference, each and every such draft, each change to the Policy Manual, and reveal who made the change, and where the documents can be found.

ANSWER:

10) Please disclose how much more money and added benefits are paid to an individual acting as a relief supervisor vis-à-vis the individual's usual position. If this is more than a simple answer, please describe the process and differences in detail for all positions where there is a transfer to relief supervisor.

ANSWER:

11) Please tell us what percentage of the population of the Northwestern Region of Alaska are Alaskan natives.

ANSWER:

LAW OFFICES OF
NETH L. COVELL
712 8TH AVENUE
BANKS, ALASKA 99701
ONE (907) 452-4377
AX (907) 451-7802

Conitz v. Teck Cominco, Case No. 4:06-00015 CV RRB
Discovery Requests of 8/16/07

Exhibit 3 page 7 of 12

Page 7 of 15

12) Please tell us what percentage of Northwestern Region Alaskan Natives are NANA Shareholders.

ANSWER:

13) Please tell us how many employees Teck Cominco Alaska has?

ANSWER:

14) Please explain why Mr. Zagarlick says he never had a file on the Conitz promotion decisions when his attorney said that he did have such a file. In your answer, please identify each person who is sufficiently familiar with the procedures for selecting an applicant who will attest under oath that Mr. Zagarlick had no such file.

ANSWER:

15) Please provide a list of all employees at the mine since 1992 describing their ethnicity, and whether they are a shareholder.

ANSWER:

16) Please identify in a manner sufficient to permit reference to each instance, each and every EEOC complaints made in relation to Tech Cominco Alaska's application of the shareholder preference at the mine, including the subject matter of each claim or complaint and describing its eventual resolution.

ANSWER:

LAW OFFICES OF
NETH L. COVELL
712 8TH AVENUE
BANKS, ALASKA 99701
ONE (907) 452-4377
AX (907) 451-7802

Conitz v. Teck Cominco, Case No. 4:06-00015 CV RRB
Discovery Requests of 8/16/07

Exhibit 3 page 8 of 12

Page 8 of 15

17) Please identify in a manner sufficient to permit reference to each instance, each and every grievance made in relation to Tech Cominco Alaska's application of the shareholder preference at the mine, including the subject matter of each claim and describing its resolution.

ANSWER:

18) Please explain how the shareholder preference system affects employment at the mine, including whether employee staffing would be easier or less burdensome if the shareholder preference was removed.

ANSWER:

19) Please explain in detail how the mail gets to Red Dog mine. Explain what happens at each stage, what the procedures are for handling the mail, who collects, sorts and delivers the mail and if Teck Cominco Alaska makes any effort to advise each person handling the mail about its confidentiality. As part of your answer please identify all documents that support your answer, especially training manuals or policies disseminated to persons who handle mail.

ANSWER:

20) Please tell us if Teck Cominco Alaska, Inc. took Conitz's complaint that his mail had been opened seriously and explain what efforts have been made to investigate the

allegations, including in the answer who was involved in the investigation, what was done to investigate the allegation, whether there is any written or electronic communications about the allegation and investigation and identify each person involved in the investigation and further identify each and every document relating in any manner to that investigation, if any.

ANSWER:

21) Please explain in detail, including every legal theory and factual assumption, why Teck Cominco Alaska does not believe that the shareholder preference is based on race or national origin.

### REQUESTS FOR PRODUCTION

Pursuant to FRCP 34 you are required to respond to the following Production Requests within 30 days.

1) PRODUCE any and all writings, commemorations, checklists and any exemplars or forms used for or as communications, as described in the Interrogatories above, including, but not limited to electronic mails, text messages, letters, memorandums, identified in each and every of your responsive production the previous interrogatories to which it pertains.

2) PRODUCE any and all documentation reviewed for, or created in, formulating responses to Interrogatory no. 2 above,



**NANA Regional Corporation, Inc.**

December 1, 2006

John Knapp, Mine Manager
Teck Cominco Alaska Incorporated
3105 Lakeshore Dr., Bldg A, Ste 101
Anchorage, Alaska 99517

Dear John:

It has come to my attention that Teck Cominco has an internal policy of giving preference to current Teck Cominco employees for open positions at the Red Dog Mine rather than NANA Shareholders as is required by the NANA Cominco Agreement. My understanding of your policy is that Teck Cominco announces jobs internally and externally at the same time and if there are qualified internal and external applications, the internal candidate would be offered the position without regard to shareholder status.

The NANA Cominco Agreement states that "as many as possible of the employees required by Operator or any contractor or subcontractor in connection with any activities under this Agreement to be undertaken in Alaska shall be Natives of the NANA Region." The Employment Goal of NANA and Teck Cominco is 100% shareholder hire. To that end, the Agreement further states that "employment shall be offered first to available Natives of the NANA Region who are qualified for the job or, if none are qualified...to those who meet job-related standards of fitness and ability which indicate that with a reasonable amount of on-the-job training as outlined in the Employment Plan the person could satisfactorily perform the job." The only exception to this general rule is that if there are no NANA shareholders qualified and available for nonrecurring jobs less than two months long.

Red Dog Employment Plan on page four reiterates that Cominco will initially employ NANA Shareholders who qualify for "available positions," and on page five states that Cominco will give preference first to those shareholders best qualified to perform the job and then to those who could perform the job with a reasonable amount of on-the-job training. There is no mention about internal versus external postings or a preference for internal promotion.

Exhibit __3__ page __11__ of ____

NANA Regional Corporation, Inc. • P.O. Box 49 Kotzebue, Alaska 99752 • T:(907) 442-3301 • F:(907) 442-2856
NANA.com

DEF 0460



Because of these statements in the NANA Cominco Agreement and the Employment Plan, I believe Teck Cominco's internal policy of giving preference to full-time regular Teck Cominco employees without regard to shareholder status violates the NANA Cominco Agreement. I am also concerned that there is no mention of shareholder preference anywhere in the Teck Cominco hiring policies and procedures sent to NANA last week. Please let me know if I or another NANA representative can be of assistance in reviewing or revising Teck Cominco policies related to shareholder hire.

Sincerely,

Marie N. Greene
President/CEO
NANA Regional Corporation

Cc: Donald G. Sheldon, Chairman

Exhibit 3 page 12 of 12