Sean Halloran, Esq.
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska 99501
Phone: (907) 276-1592
Fax:   (907) 277-4352
mail@hartig.com

Attorneys for Teck Cominco Alaska Incorporated

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGG CONITZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| TECK COMINCO ALASKA INC., and ) | |
| NANA REGIONAL CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | Case No. 4:06-CV-00015 RRB |

DECLARATION OF WARREN DRAPER

I, Warren Draper, make my sworn declaration as follows:

1.    I have personal knowledge of and am competent to testify to all facts set forth in this declaration.

2.    I am employed by Teck Cominco Alaska Incorporated. I began working for Teck Cominco as the mine foreman at Red Dog Mine on July 24, 2005, and currently serve as the Operating Superintendent, Mining and Port. I was retired prior to working at Red Dog Mine. I intend to resume my retirement after my work at the mine is completed.

3.   One of the principal duties with which I have been charged is the selection and/or training of successors who can take on the responsibilities of supervising all aspects of the mine operations.   In the spring of 2006, I looked at the safety records and performance of various individuals working in the mine in an attempt to identify individuals that were suitable for grooming as supervisors.  Several employees were identified by myself and the mine supervisors as persons that had acceptable safety records and that possessed the requisite attitude, knowledge of mining, and observation, evaluation and communication skills.  With respect to Gregg Conitz, I determined that his safety record over the prior year was unacceptable.  I found other individuals (including some who are NANA shareholders) to have similarly unacceptable safety records.  Because of the need to improve safety at Red Dog, it is inappropriate for persons with poor safety records, such as Mr. Conitz, to be held up as an example for others to follow.  Accordingly, I did not consider Mr. Conitz further.

4.   At my direction, those individuals that were identified as suitable for grooming as supervisors are used as relief supervisors in the mine whenever it is deemed necessary. Persons that were found to have poor safety records, and persons otherwise determined unsuitable for supervisory positions, are not currently used as relief supervisors even if they have served in that capacity in times past.  We will be continuously evaluating employee skills for future development and upgrading.

5.   Gregg Conitz came to my office on Wednesday, May 17, 2006 at 6:50 a.m.  He said he was concerned about not being used as a temporary supervisor any more. I explained to him that my main goal in mine operations was to try and do some succession planning, and that part of succession planning was to improve the skills of those individuals that I felt were best suited to move

into higher level jobs. I explained to Mr. Conitz that I wanted to give the selected employees time in the relief supervisor role so that they could be properly evaluated. I also explained to Mr. Conitz that one of my concerns about his being used as a temporary supervisor was the amount of incidents he had during the year previous, and that with our focus on safety, it was not right to use people in a supervisory role that had a history of incidents. I also let him know that he was not alone in this regard, and that I had dropped others from being used as supervisors for the same reason.

6. Mr. Conitz told me that he had previously filed discrimination complaints against Teck Cominco, and that he had recently signed an agreement with his lawyer to file a lawsuit against Teck Cominco. He then asked me if I was aware that it was against the law to retaliate against or penalize an employee for taking complaints to the EEOC or any other human rights commission. I was very careful to explain to him that my decision to not use him as a relief supervisor had nothing to do with any complaints that he might have filed in the past or any lawsuit that he might be planning for the future, but that it was strictly a consequence of his performance on the job, especially as reflected by the number of safety related incidents that he had.

7. Mr. Conitz told me that, as an American citizen, he was not getting fair treatment when it came to job promotions, because he had the seniority to move into either a supervisory position or a trainer position, and that the only people he thought should move into these jobs before him would be Jerry Gibson or Martin Parillon, since they had worked in mine operations longer than he had. I responded by saying that the company does not promote people to an exempt position based on seniority, but that it does consider such criteria as attitude, people skills and knowledge of mining. The conversation ended with me telling Mr. Conitz that he should not expect to be used as a supervisor in the future, and that I would continue to try and develop supervisory skills in other

persons that have shown the right attitude and potential for future development.

8. As I explained to Mr. Conitz, my decision to use others as relief supervisors, and to preclude him from being appointed relief supervisor, had absolutely no connection with any complaint that he may have filed with the EEOC or any other governmental agency. I did not retaliate against him and would not tolerate any act of retaliation by any other mine personnel.

9. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED this 5 day of September, 2007, at Red Dog Mine.

_____
WARREN DRAPER

CERTIFICATE OF SERVICE

I certify that on the _____ day of
_____, 2007, a true and correct
copy of the foregoing was served on
those parties of record by First Class Mail
or by electronic means through the
ECF system as indicated on the
Notice of Electronic Filing.


_____
Becky Nelson