Sean Halloran, Esq.
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska 99501
Phone: (907) 276-1592
Fax: (907) 277-4352
mail@hartig.com

Attorneys for Teck Cominco Alaska Incorporated

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGG CONITZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TECK COMINCO ALASKA INC., and | ) |
| NANA REGIONAL CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) Case No. 4:06-CV-00015 RRB |

**AFFIDAVIT OF ROBERT SCOTT**

I, Robert Scott, being first duly sworn, depose and aver as follows:

1. I have personal knowledge of and am competent to testify to all facts set forth in this affidavit.

2. Teck Cominco Alaska is the operator of Red Dog Mine. The ore body and surrounding land that comprise the mine are owned by NANA Regional Corporation. In conjunction with its Red Dog operations, Teck Cominco Alaska works closely with NANA and various of its subsidiaries, including NANA Management Services, NANA/Lynden Logistics,

and others. As operator of Red Dog Mine, Teck Cominco Alaska also has working relationships with Teck Cominco American Incorporated and Teck Cominco Limited.

3. I am a former general manager of the Red Dog Mine, and was employed by Teck Cominco Alaska Incorporated in that capacity from January 2003 to December, 2005. The general manager is Teck Cominco Alaska's highest ranking employee, and is responsible for overseeing all operations of the company. I am currently an officer of Teck Cominco Alaska, and in that capacity and in the course of my employment with Teck Cominco Limited. since January, 2006, I continue to work closely with various executives at Teck Cominco Alaska. I remain familiar with the ongoing operations at Red Dog Mine.

4. As general manager, I was familiar with all of Teck Cominco Alaska's policies. No change in policy could have been adopted by Teck Cominco Alaska during my tenure as general manager without my express approval.

5. Since the mine's inception, Teck Cominco Alaska has sought to hire persons who are shareholders of NANA Regional Corporation to work at the mine, and has a goal of eventually obtaining a Red Dog work force comprised of 100% NANA Regional Corporation shareholders. This hiring preference is applied whenever two or more candidates for a position are equally qualified, so as to allow a NANA shareholder to be hired over equally qualified non-shareholder applicants.

6. Teck Cominco Alaska has never had any policy or practice, whether formal or informal, of providing any hiring or other employment preference based upon race, religion, color, national origin, sex, marital status, pregnancy, parenthood, or, except as required by the demands of the position, disability. Nor has Teck Cominco Alaska ever had any policy of

discriminating based upon Alaska residency, or residency within any geographic region of Alaska.

7. I am aware that Gregg Conitz is suing Teck Cominco Alaska, and that he has alleged that I "overturned" a decision of Ted Zigarlick, superintendent of mine operations, and John Kells, mine operations foreman, and thereby caused Mr. Conitz to not be promoted to the position of mine operations supervisor. I am aware that Mr. Conitz asserts that I made such a decision in order to enforce a hiring preference in favor of Native Americans. Any and all such allegations are plainly wrong. I did not overturn any decision regarding the promotion of Mr. Conitz, and I would never have tolerated, let alone participated in, any employment practice based upon whether an applicant was a Native American.

8. During my tenure as general manager, I signed off on all exempt staff hiring decisions. In every instance where a superintendent selected a successful candidate to fill an open position, I gave my signed approval. I never overturned a superintendent's determination as to who was the successful candidate.

9. With respect to the position of mine operations supervisor, it was the responsibility of the mine operations superintendent to select the best candidate and submit that determination to me with a specific hiring recommendation. Mr. Zigarlick determined that Lawrence Hanna was the best qualified applicant for the position at issue, and submitted his name to me with a recommendation that he be hired. I approved that recommendation. I was satisfied that Mr. Hanna was in fact the superior candidate for that position, and that Mr. Zigarlick acted appropriately in selecting him as the successful candidate. With respect to Mr. Conitz's application, moreover, I agreed with Mr. Zigarlick's assessment that Mr. Conitz's job performance, particularly with respect to safety, made him unsuited to serve as an example for

others to follow, which is an integral component of any supervisory position at Teck Cominco Alaska. Although I reviewed Mr. Zigarlick's choice with him, I did not otherwise participate in Mr. Zigarlick's decision making process, and I do not know the degree to which Mr. Zigarlick may have conferred with Mr. Kells or other of his subordinates when he selected Mr. Hanna as the best candidate.

10. Prior to the time that Mr. Zigarlick selected Mr. Hanna as the best candidate, I learned that Mr. Kells had made statements to Mr. Conitz that might lead Mr. Conitz to believe that he would be selected for the position without adherence to the normal review process. When I learned of this, I instructed Mr. Zigarlick to ensure that both Mr. Conitz and Mr. Kells were informed that the selection process would be conducted in a fair and equitable manner, considering each applicant's experience, skills, and relevant knowledge. It is my understanding that Mr. Conitz and Mr. Kells were also reminded that if the top candidates were rated equally, a preference would be given to NANA shareholders, since they have an ownership interest in the Red Dog Mine.

11. Following the announcement of Mr. Zigarlick's decision, I am aware that Mr. Conitz complained that he was unfairly considered for the position of mine operations supervisor as a result of Teck Cominco Alaska's hiring preference for NANA shareholders. However, because Mr. Hanna was deemed superior to all other candidates, no hiring preference was, in fact, applied when he was selected as the mine operations supervisor. Additionally, even if the hiring preference in favor of NANA shareholders had been applied in that instance, I believe that it is appropriate for Teck Cominco Alaska to hire shareholders of the mine's owner to work at Red Dog. Nothing in Mr. Conitz's complaint warranted a change in the decision to have Mr. Hanna fill the position of mine operations supervisor.

12. After Mr. Conitz was not selected as a mine operations supervisor, he applied to become a mobile equipment trainer. He was not selected for that position. Instead, Mr. Zigarlick chose to re-hire Mr. Mike Baker into that position. I believe that Mr. Baker was properly chosen as the successful candidate due to his experience in Surface Operations, Materials Management and Mine Operations; his qualifications as a trainer; his exemplary safety record; and his proven track record as a trainer and a developer of training programs when he previously held what was essentially the same position for which he was being considered. Mr. Conitz, on the other hand, had a poor record with respect to safe mobile equipment operating practices over many years of operations, had no prior experience as an equipment trainer, and had no formal training as a trainer. In short, Mr. Zigarlick was correct in recognizing that Mr. Baker was well qualified for the position while Mr. Conitz was unqualified.

13. Because Mr. Baker was deemed superior to all other candidates, no hiring preference was applied when he was re-hired as a mobile equipment trainer. It was unnecessary to consider any hiring preference in Mr. Baker's case in light of the fact that Mr. Zigarlick determined that Mr. Baker's qualifications and experience made him a vastly superior candidate.

FURTHER YOUR AFFIANT SAYETH NAUGHT

SWORN BEFORE ME at the )
City of Vancouver, in the Province of )
British Columbia, Canada, this 30th )
day of August, 2007. )
)
)
)
_____ )   _____
A Commissioner for taking Affidavits )   Robert Scott
within the Province of British Columbia )

AFFIDAVIT OF ROBERT SCOTT
Conitz v. Teck Cominco, 4:06-CV-0015 RRB                             Page 5 of 6

**ANTHONY A. ZOOBKOFF**
A Notary Public in and for the Province of British Columbia
My commission is not limited as to time

c/o Teck Cominco Limited 600 - 200 Burrard Street
Vancouver, B.C.  V6C 3L9
Tel.: 604-685-3043  Fax: 604-844-2509

CERTIFICATE OF SERVICE

I certify that on the _____ day of _____, 2007, a true and correct copy of the foregoing was served on those parties of record by First Class Mail or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

_____
Becky Nelson