Sean Halloran
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska 99501
Phone: (907) 276-1592
Fax: (907) 277-4352
mail@hartig.com

Attorneys for Teck Cominco Alaska Incorporated.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

GREGG CONITZ,                          )
                                       )
            Plaintiff,                 )
vs.                                    )
                                       )
TECK COMINCO ALASKA INC., and          )
NANA REGIONAL CORPORATION,             )
                                       )
            Defendants.                )    Case: 4:06-CV-00015 RRB
_____)

## TECK COMINCO'S OPPOSITION TO
## CONITZ'S MOTION FOR RULING ON LAW OF THE CASE
### &
### CONDITIONAL CROSS MOTION

Mr. Conitz has asked the court to declare Teck Cominco's shareholder

preference unlawful, arguing that it is illegal as a matter of federal and state law.

Specifically, he asks the court to rule that:

the `NANA shareholder' preference is racial discrimination by another name, a proxy for race and this court should grant Conitz's motion establishing this fact.

[Dockets 64 at 3, 64-2 at 7.] Mr. Conitz provides no evidence to suggest that he was affected by the application of the preference he objects to. The court is directed to defendant Teck Cominco's motion for summary judgment at Docket 91, which does attach affidavits and other evidence setting forth the facts relevant to this dispute. The legality of the shareholder preference is properly before the court in Teck Cominco's summary judgment motion and NANA Regional Corporation's cross-motion for partial summary judgment. Thus, the court should consider the lawfulness of the shareholder preference in the context of the facts presented in Teck Cominco's summary judgment motion rather than in the abstract as Mr. Conitz asks the court to do.

In the event that the court determines it will consider the motion at bar, however, Teck Cominco both opposes that motion on the merits and cross moves for a ruling that Teck Cominco's preference for hiring NANA shareholders to work at the Red Dog Project is permissible as a matter of law. In the event the court is inclined to grant Mr. Contiz's motion, in accordance with Civil Rule 56(f), Teck Cominco further requests that it be given additional time to depose NANA's experts and present the court with evidence establishing whether the shareholder preference qualifies as a valid affirmative action program.

## Overview

Mr. Conitz is suing his employer because he was twice not promoted from his equipment operator position; once when he sought to become a supervisor and once when he applied to be a trainer. [Docket 57.] Although he offers the court no facts to suggest that his inability to obtain a promotion was on either occasion the result of any hiring preference (and Teck Cominco denies that it was), he asks the court to rule that any hiring preference given by Teck Cominco at the Red Dog Project to shareholders of the corporation that owns the mine is a "proxy" for a racial preference and to declare that Title VII of the Civil Rights Act and AS 18.80 each preclude Teck Cominco from having what Mr. Conitz characterizes as a Native hire preference. [Docket 64.] According to Mr. Conitz, a ruling on his motion will "simplify" this case.[1] [Id.] However, Mr. Conitz is wrong as a matter of law when he asserts that NANA shareholder status is racially based. As well, he is wrong when he asserts that Teck Cominco's policy is unlawful. Accordingly, the "ruling on the law of this case" that he requests is without any legal merit and must be denied.

---

[1]    Where Teck Cominco asserts that no hiring preference of any type was applied to any candidate on the occasions when Mr. Conitz was passed over for promotion [see Scott Affidavit; Zigarlick Declaration], such a ruling could not possibly serve to "simplify" the litigation at bar. The issue of shareholder preference is only relevant if there is evidence suggesting that the preference was applied against Mr. Conitz. [See Docket 91.] Since Mr. Conitz's motion makes no effort to tie itself to any facts of this case, and addresses none of the claims asserted in this litigation, his motion could not simplify the case even if there was any law to support his position.

## Background Facts

**A.    Teck Cominco's Hiring Preference For NANA Shareholders.**

As a condition for participating with NANA in the Red Dog Project and operating a mine on NANA land to extract NANA-owned minerals, NANA has required that Teck Cominco establish a hiring preference in favor of NANA shareholders. [Scott Affidavit[2]; Zigarlick Declaration[3].] Consequently, when hiring employees at Red Dog, there are times when Teck Cominco gives a preference to NANA shareholders over other qualified candidates. [Id.] This hiring preference is applied when a NANA shareholder is otherwise rated equally with one or more top candidates that are not NANA shareholders. [Id.] In such situations, the preference given to NANA shareholders will tip the balance in favor of the shareholder and allow the shareholder to obtain the position. [Id.] In situations where a non-shareholder is rated superior to any other candidate, and in situations where a shareholder is determined to be superior to any other candidate, no preference is warranted or applied. [Id.] Whenever one candidate is deemed superior to other candidates, the top candidate is simply offered the job and hired into the position based entirely on merit. [Id.] Although Teck Cominco's policy has

---

[2]    Mr. Scott's Affidavit is on file with the court at Docket 100.

[3]    Mr. Zigarlick's Declaration is on file with the court at Docket 101.

TCAK Opposition to Motion for Rule of Law
*Conitz v. Teck Cominco*, 4:06-CV-00015 RRB

never been articulated in writing, it is widely understood and enforced at all levels of Red Dog operations.  [See Somers depo. at 82 (not written policy).[4]]

## B.    Teck Cominco Has No Hiring Preference Beyond NANA Shareholders.

The Red Dog Project has been an ongoing venture since 1982.  Defendant Teck Cominco Alaska Incorporated began participating in the Red Dog Project in 1988.  [Zigarlick Declaration.]  Since that time, NANA has had the right to enforce against Teck Cominco Alaska certain terms that were contained in an earlier Agreement that NANA entered into with Teck Cominco American Incorporated[5], including not only a right to enforce the hiring preference for NANA shareholders at Red Dog that Teck Cominco Alaska has in place, but also a right to require that Teck Cominco adopt hiring preferences beyond that given to NANA shareholders.  Specifically, NANA could demand that Teck Cominco also prefer the spouses and children of its shareholders, residents of the NANA Region, and successively larger groups of Alaskans.[6]  [See Docket 11, Docket 28.]  Even Mr. Conitz admits, however, that Teck Cominco does not now and never has adopted any hiring preference

---

[4]    Relevant excerpts of Mr. Somers deposition transcript are attached hereto as Exhibit 1.

[5]    Teck Cominco American was then known as Cominco American Incorporated.  Although related, it is a distinctly different company from the defendant Teck Cominco Alaska.  [Zigarlick depo. at 259-260.  (Excerpts of the Zigarlick deposition transcript are on file at Docket 91-6 and 103-2.)]

[6]    NANA is charged by law with promoting the welfare of not only its shareholders, but also those who are dependents of its shareholders and Natives living within the region is serves.  [E.g. 43 USC § 1606(r).]

beyond that afforded to NANA shareholders. [Conitz depo. at 39.[7]] Mr. Conitz is correct in his observation. When considering the motion at bar, this court should recognize that it is undisputed in this litigation that no hiring preference beyond that favoring NANA shareholders is in existence at the Red Dog Project. [Scott Affidavit; Zigarlick Declaration.]

## Argument

### A.    This Court Should Decline To Rule On A Portion Of A Claim.

In his Complaint, Mr. Conitz has claimed that he was not promoted as a result of the application of a Native hire preference by Teck Cominco. [Docket 57.] To prevail on that claim, he will have to establish that Teck Cominco has a Native hire preference, that he was not promoted as the result of such a preference being applied against him, and that the application of such a preference violates the law.[8] Where the instant motion essentially seeks judgment as to only a portion of that claim, it is an impermissible motion and the court should decline to hear it, for the Civil Rules do not permit "the singling out of limited issues on which the Court's advice may be obtained." Mendenhall v. Barber-Greene Co., 531 F.Supp. 947, 948 (N.D. Ill. 1981). Accordingly, a motion "that partitions a single claim for relief into constituent parts and then seeks partial summary judgment on some but not all of

---

[7]    Relevant excerpts of the Conitz deposition transcript are attached hereto as Exhibit 2..

[8]    See Raad v. Alaska State Com'n for Human Rights, 86 P.3d 899 (Alaska 2004).

the constituent parts is not permitted." <u>Rubin v. Islamic Republic of Iran</u>, 408

F.Supp.2d 549, 552 (N.D. Ill. 2005).[9]  In this regard, although "Rule 56(d)

authorizes the court to make an order establishing the uncontroverted facts; it does

not permit the court to enter judgment on part of a single claim . . . the court lacks

such authority even where a party stipulates to his or her liability on part of a

claim." <u>Kirsch v. LOT Polish Airlines</u>, 979 F. Supp. 164, 166-167 (E.D.N.Y. 1997),

<u>aff'd</u> <u>sub</u> <u>nom</u>. <u>Filus v. Lot Polish Airlines</u>, 133 F.3d 169 (2d. Cir. 1997).  Where Mr.

Conitz is asking the court to rule on only one portion of a claim, the court should

decline to do so, and summarily deny the instant motion accordingly.


**B.    NANA Shareholders Are Not A Race-Based Group As A Matter Of Law. Preference For NANA Shareholders Is Not a Racial Preference.**

In 1971, Congress settled the aboriginal claims of Alaska's Indians, Aleuts

and Eskimos.  [Pub. L. No. 92-203, 85 Stat. 688 (1971) (codified as amended at 43

U.S.C. §§ 1601.]  The Alaska Native Claims Settlement Act provided for the

---

[9]    <u>See also</u> Wright, Miller & Cane, *Federal Practice & Procedure: Civil* § 2737 at 316-318 (3d ed. 1998) & 2007 Pocket Part at 28 (Rules do "not authorize the entry of a judgment on part of a claim"); <u>Testa v. Janssen</u>, 492 F. Supp. 198, 204 (W.D.Pa. 1980) ("The Federal Rules of Civil Procedure do not authorize partial summary judgment for a portion of a single claim."); <u>Commonwealth Ins. Co. of New York v. O. Henry Tent & Awning Co.</u>, 266 F.2d 200, 201 (7th Cir. 1959); <u>Biggins v. Oltmer Iron Works</u>, 154 F.2d 214, 216 (7th Cir. 1946); <u>Primavera Familienstiftung v. Askin</u>, 130 F. Supp. 2d 450, 539 (S.D.N.Y. 2001); <u>Antenor v. D&S Farms</u>, 39 F. Supp. 2d 1372, 1375 n. 4 (S.D. Fla. 1999); <u>New Jersey Automobile Insurance Plan v. Sciarra</u>, 103 F. Supp. 2d 388, 396 (D.N.J. 1998);  <u>Capitol Records, Inc. v. Progress Record Distributing, Inc.</u>, 106 F.R.D. 25, 28 (N.D.Ill. 1985); <u>Schnering v. Aetna Life Ins. Co. of Illinois</u>, 1985 WL 2534, at *1 (N.D.Ill. 1985).

creation and operation of numerous village and regional corporations. [Id.] NANA is one of the ANCSA Regional Corporations. The Ninth Circuit Court has recognized that the statutory organization of certain individuals into ANCSA corporations as shareholders, "though they utilize blood quantum criteria, are clearly political classifications based on the unique non-reservation and non-tribal situation of the Alaska Natives". Alaska Chapter, Associated General Contractors, Inc. v. Pierce, 694 F.2d 1162, 1169 n10 (9th Cir. 1982). Any preference for NANA shareholders is therefore a preference for the political grouping of persons enrolled as shareholders in NANA by ANCSA and not the much larger group of Alaska Natives now living who may or may not have been assigned shares. Morton v. Mancari, 417 U.S. 535 (1974)[10]; Doe v. Kamehameha Schools/Bernice Pauahi, 470 F.3d 827, 849-856 (9th Cir. 2006) (En banc; W. Fletcher, Pregerson, Reinhardt, Paez, and Rawlinson, concurring)[11]. Even if a preference in favor of NANA shareholders was applied in favor of Mr. Hanna (and Teck Cominco continues to assert that it was not), where such a preference does not amount to race based

---

[10]    In Mancari, the Supreme Court determined that the BIA's employment preference for "Indians" was not an unconstitutional racial preference because it was not directed toward the racial group consisting of Indians, but rather was applicable only to the political group consisting of members of federally-recognized tribes, thus excluding some persons who were racially classified as Indians. Id. at 554 n.24. Here, the political group consisting of NANA shareholders similarly excludes most members of the much larger racial groups of Aleuts, Indians and Eskimos who qualify as Alaska Natives.

[11]    In Kamehameha Schools, the concurring opinion pointed out that a preference for any group that is political rather than racial in composition does not violate § 1981 as a matter of law.

discrimination as a matter of law, summary judgment must be denied to Mr. Conitz and entered in favor of the defendants.

**C.    To The Extent That Teck Cominco Contributes Employees To The Red Dog Project, Federal Law Permits It To Favor NANA Shareholders.**

**1.    Teck Cominco And NANA Participate In A Joint Venture.**

A joint venture exists under Alaska law when you have "an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge." Northern Lights Motel v. Sweaney, 561 P.2d 1176, 1187 (Alaska 1987). "The joint venture may be established without any formal agreement between the parties; it may be implied from the facts or circumstances of the case." Id. "Although each venturer need not exercise actual physical control of the instrumentalities used in the enterprise, each must have a legal right to some voice in the direction and control of the enterprise." Id. Here, The Alaska Supreme Court has recognized that the relationship between NANA and Teck Cominco is a type of joint venture. Reich v. Cominco Alaska, 56 P.3d 18, 23 (2002)[12]; see Zigarlick Declaration. In this regard, the Red Dog Mine is a Project in which Teck Cominco has participated with NANA since March 1988. [Zigarlick Declaration.] NANA contributes the land and

---

[12]    Cominco Alaska Incorporated is the former name of defendant Teck Cominco Alaska Incorporated. [Zigarlick depo. at 259.]

TCAK Opposition to Motion for Rule of Law
*Conitz v. Teck Cominco*, 4:06-CV-00015 RRB

the mineral rights, while Teck Cominco contributes capital, operational expertise and operational abilities [Id] They each contribute additional efforts and knowledge through participation in the Project's management committee, which is composed of six NANA representatives and six Teck Cominco representatives. [Id.; Pankowski v. Cominco Alaska, ASCHR C-91-093 (1993).[13] ] For its contributions to the Project, NANA receives royalties and is paid 25-50% of the net proceeds in accordance with a regularly increasing schedule. [Id.; Reich at 24.]

2.   **Teck Cominco Is Exempt From Federal Anti-discrimination Laws To The Extent It Participates With NANA In The Red Dog Project.**

Because NANA's equity in its joint venture with Teck Cominco meets or exceeds the threshold established by statutes, federal law exempts Teck Cominco and other participants in the Red Dog Project from the discrimination prohibitions of federal law when hiring personnel to work at the mine. [43 U.S.C. §1626(g).]

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate in hiring practices because of a person's race, color, religion, sex, or national origin. [42 U.S.C. §2000e-2(a).] However, the Civil Rights Act expressly exempted Indian tribes from the definition of employers, so as to permit them to favor Native Americans when hiring. [42 U.S.C. §2000e(b). ] In addition, the statute provides that certain non-Indian business entities are also exempt, so as to

---

[13]   A copy of the Pankowski decision is on file with the court at Docket 91-2.

TCAK Opposition to Motion for Rule of Law
*Conitz v. Teck Cominco*, 4:06-CV-00015 RRB                                    Page 10 of 23

encourage them to provide preferential treatment to Natives under certain circumstances. [See 42 U.S.C. §2000e-2(i).] Congress extended the privilege for preferential treatment to Alaska Natives when amending the Alaska Native Claims Settlement Act in 1991 and again in 1992 under the Alaska Land Status Technical Corrections Act. These Acts resulted in the following statutory provision:

> a Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 percentum of the equity shall be within the class of entities excluded from the definition of "employer" by section 701(b) (1) of Public Law 88-352 (78 Stat. 253), as amended, or successor statutes.

[43 U.S. C. §1626(g).]

In developing the legislation contained in ANCSA, Congress was sensitive to the impoverished condition of Natives and the lack of opportunities for Natives to improve their conditions. Hakala v. Atxam Corp., 753 P.2d 1144, 1147 (Alaska 1988). Section 1626(g) was intended to facilitate Alaska Native shareholder employment programs by resolving any uncertainty as to the applicability of the Civil Rights Act to certain business enterprises in which Native Corporations participate. [S. Rep. 201, 100th Cong., 1st Sess. at 26 (1987), reprinted in 1987 U.S.C.C.A.N. 3269, 3290.] According to (then) Senator Frank Murkowski, the intent of Congress in adopting the ANCSA amendment was to ensure that Alaska Native corporations and their affiliates were exempted along with Indian tribes from the anti-discrimination laws of § 2000e(b). [100th Cong. Rec. S3196 (March 28, 1988).] Accordingly, federal law serves to promote economic participation by Native

corporations and the employment of Natives in enterprises in which those

corporations participate. As one court noted, legislative history reveals that the

exemption from Title VII was created for the affected Native peoples:

> in an effort to decrease unemployment and in order to integrate
> their people into the affairs of the national community, operate
> many economic enterprises, which are more or less supervised
> by the Indian tribes, the employees serving as apprentices in
> many instances, and as supervisors and regularly employed and
> paid employees in others.

Dille v. Council of Energy Resource Tribes, 801 F.2d 373, 375 (10th Cir. 1986),

quoting 110 Cong. Rec. 13702. The exemption further allows affected Natives to

control their own economic enterprises and develop their natural resources. Id.

The Red Dog Project is precisely the type of activity that Congress sought to

encourage when it exempted Alaska Native corporations from the discrimination

laws, because the Project allows NANA the ability to effectively control certain

employment aspects of the economic enterprise in which it participates and thereby

allow its shareholders to obtain employment opportunities that otherwise might not

be available.

NANA is charged by law with providing benefits to and promoting the

health, education and welfare of both its shareholders and the family members of

its shareholders who are not themselves shareholders. [43 USC § 1606(r).] Where

Congress provided NANA and other Native corporations with the ability to provide

benefits to Natives and/or the corporations' shareholders and/or the families of their

shareholders in the form of employment opportunities, Congress was merely enabling the Native corporations to fulfill their assigned role.

Because the joint venture existing between NANA and Teck Cominco which is the Red Dog Project is exempt from federal discrimination laws, Teck Cominco's participation in that Project is exempt, including its contribution of personnel like Mr. Conitz to that Project. [43 U.S.C.§ 1626(g)[14].] Teck Cominco's hiring preference in favor of NANA shareholders is permissible as a matter of law. This court should deny summary judgment to Mr. Conitz, and grant it to the defendants.

### D. Alaska's Human Rights Commission Has Determined That Teck Cominco's Preference For NANA Shareholders Is Lawful.

The Alaska State Commission for Human Rights is charged with enforcing Alaska's anti-discrimination laws. [AS 18.80..060; 18.80.110 -.130.] It also acts on behalf of the U.S. Equal Employment Opportunity Commission to enforce federal anti-discrimination laws. [E.g. Docket 91-2.] In a case where the Human Rights

---

[14]     The exemption is not limited to Title VII, but extends to § 1981 also. Courts recognize that "it would be wholly illogical to allow plaintiffs to circumvent the Title VII bar against race discrimination claims based on a tribe's Indian employment preference programs simply by allowing a plaintiff to style his claim as a § 1981 suit." Taylor v. Alabama Intertribal Council, 261 F.3d 1032, 1035 (11th Cir. 2001), cert. denied, 535 U.S. 1066 (2002). In this regard, "Given Congress's clear intent to exempt tribes from employment discrimination suits under the more specific later statute, Title VII, and the general rule that specific statutes prevail over general ones, courts have dismissed employment discrimination suits grounded in § 1981." Cohen, Cohen's Handbook of Federal Indian Law § 21.02. See e.g. Wardle v. Ute Indian Tribe, 623 F.2d 670, 673 (10th Cir. 1980); Yashenko v. Harrah's NC Casino Co., LLC, 352 F. Supp. 2d 653, 664 (W.D. N.C. 2005), aff'd, 446 F.3d 541 (4th Cir. 2006); see also Stroud v. Seminole Tribe of Florida, 606 F. Supp. 678, 680 (S.D. Fla. 1985).

Commission was acting with delegated authority on behalf of the EEOC, the Human Rights Commission determined that the hiring preference given by Teck Cominco to NANA shareholders at Red Dog does not constitute unlawful discrimination under either AS 18.80 or Title VII. <u>Pankowski v. Cominco Alaska</u>, ASCHR C-91-093 (1993).

The decision of the Human Rights Commission is entitled to deference by this court. <u>See</u> <u>Chevron U.S.A. v. Natural Res. Def. Council</u>, 467 U.S. 837, 842-43 (1984).[15] In this regard, when an administrative agency's interpretation of a statute "involves agency expertise or the determination of fundamental policies within the agency's statutory function" courts should "determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination." <u>State, Dept. of Admin. v. Bachner Co., Inc.</u>, 167 P.3d 58, 60-61 (Alaska 2007). Accordingly, if the court hears Mr. Conitz's motion, it should deny his request for summary judgment and grant summary judgment to defendants Teck Cominco and NANA Regional Corporation.

---

[15] <u>Chevron</u> directs that courts should determine whether an agency's interpretation of a statute is based on a permissible construction of that statute. If the agency's interpretation is within its authority and not otherwise arbitrary or contrary to law, courts should defer to the agency. <u>See generally</u>, I Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law*, §§ 3.1-3.6 at 107-31 (3d ed. 1994).

E.    **Conitz May Not Properly Present A Disparate Impact Claim.**

Mr. Conitz argues that even if the shareholder preference is not directly based on race, it nevertheless has a disparate impact on non-Native employees of Teck Cominco and is therefore unlawful under a disparate impact theory.  Of course, since his motion anticipates that the court will decide this case in a factual vacuum, he provides no evidence to suggest that any such disparate impact could be established.  However, even if he had evidence to suggest that a disparate impact actually exists[16], this court must recognize that any such argument would be entirely without merit.  The disparate impact theory of discrimination is not applicable under 42 U.S.C. § 1981 because that statute encompasses only intentional and disparate treatment discrimination.  Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982).  Moreover, disparate impact theories of liability under other discrimination laws are not meant to encompass claims brought by members of majority groups not historically victimized by discrimination, such as white males.  Livingston v. Roadway Express, Inc., 802 F.2d 1250, 1252 (10th Cir. 1986).  To the extent that Mr. Conitz seeks liability under a disparate impact theory, his claim must fail as a matter of law, and judgment should be entered in favor of the defendants.

---

[16]    Teck Cominco asserts that if the relevant data were presented to the court, it would show that Alaska Natives are significantly under-represented in the Red Dog work force relative to the racial composition of the local population, while white males are significantly over-represented.

F.    **Case Law Cited By Conitz Is Inapposite.**

According to Mr. Conitz, this case is governed by <u>Bonilla v. Oakland Scavenger Co.</u>, 697 F2d 1297 (9th Cir. 1982).  He further relies on <u>Malabed v. North Slope Borough</u>, 335 F.3d 864 (9th Cir. 2003) and also cites to <u>State v. Enserch</u>, 787 P.2d 624 (Alaska 1989), to which he falsely suggests that Teck Cominco was somehow a party or other participant.

Although the <u>Malabed</u> plaintiffs originally filed in federal court, the case was actually decided by the Alaska Supreme Court following the certification of the Alaska Constitution's Equal Protection Clause issues to that Court.  <u>Malabed v. N. Slope Borough</u>, 335 F.3d 864, 866 (9th Cir. 2003).  The Alaska Supreme Court, in answering the certification, held that "the Borough's hiring preference violated the Alaska Constitution's guarantee of equal protection because the Borough lacked a legitimate governmental interest to enact a hiring preference favoring one class of citizens at the expense of others and because the preference it enacted [was] not closely tailored to meet its goals." <u>Malabed v. N. Slope Borough</u>, 70 P.3d 416, 427-28 (Alaska 2003).  As stated by the court,

> We simply hold, in keeping with <u>Enserch</u>, that the borough has no legitimate basis to claim a general governmental interest in enacting hiring preferences favoring one class of citizens over others; and we find that the borough has failed to identify any source of a legitimate, case-specific governmental interest in the preference it actually adopted -- a hiring preference favoring Native Americans.

70 P.3d at 426.

The holding of Malabed is not applicable to Teck Cominco or hiring preferences at the Red Dog Project. The Malabed court limited its holding to entities of state government; its equal protection analysis is not applicable to private sector corporations; and hiring preferences as are at issue cannot possibly violate the statute that was in question in Malabed, because that statute prohibits only entities of state government from distinguishing between individuals based on race. Moreover, the Alaska court was careful to note that if a political classification of persons -- such as exists with NANA shareholders -- had been at issue in Malabed, "the ordinance might [have] avoided problems with the Alaska Constitution's bar against racial discrimination." Id. at 420. Furthermore, the court reasoned that if those who were preferred under the Borough ordinance had a "unique legal status", the defendants might have avoided the equal protection challenge. Id. Here, of course, NANA shareholders, who were assigned inalienable stock [see 43 U.S.C. § 1629c] by an Act of Congress in a corporation charged by federal law with the task of furthering the interests of Alaska Natives [43 U.S.C. § 1606(r)], have such a unique legal status.

Enserch is similarly inapplicable. In State Departments of Transportation & Labor v. Enserch Alaska Construction, Inc., 787 P.2d 624 (Alaska 1989), the court struck down an Alaska statute that provided hiring preferences for public works projects to residents of economically distressed zones. Although Teck Cominco pays tolls when using the transportation system whose construction by the State was at

issue in Enserch, even Mr. Conitz concedes that Teck Cominco is a private corporation and not a political subdivision the State of Alaska. [Docket 64-2 at 1, n.4.] Because Enserch involved Equal Protection analysis under the Alaska Constitution that is applicable only to State action, it has no relevance in this case.

Bonilla also is irrelevant here. In that case, employees of the Oakland Scavenger Company were offered shares in the employer company if they were of Italian ancestry, but not if they had a different racial background. Once shares had been issued to them, the terms and conditions of their employment were substantially enhanced. The court concluded that the practice of favoring one racial group over others in this manner violated Title VII. By contrast, the motion at bar involves a hiring preference that is expressly exempted from the reach of Title VII. Mr. Conitz's arguments to the effect that Title VII has a general goal of equal opportunity for all simply must give way where Congress created specific exemptions in Title VII that were intended to allow affected Natives to obtain an opportunity "to enter the service of their own people without the necessity of competing with white applicants for these positions". Morton v. Moncari, 417 U.S. 535, 544 (1974), quoting 78 Cong. Rec. 11729. The law permits the employment preference that Teck Cominco provides to NANA shareholders hired to work at Red Dog, and even permits the type of Native preference that Mr. Conitz complains about. The cases he cites simply do not stand for any contrary proposition, and summary judgment should be entered in favor of the defendants.

## G.    Conitz Presented No Admissible Evidence.

Mr. Conitz asserts that he is a minority employee at Red Dog. He offers no facts to establish the truth of that assertion. He asserts that the only way to acquire stock in NANA is "by birth, ancestry, adoption or marriage". Of course there are no facts presented to suggest that stock can be acquired by any of these means. He asserts that "essentially all" NANA shareholders are Natives, but again offers no facts to establish this assertion; and although he asserts that Teck Cominco's preference for NANA shareholders serves to discriminate against "all non Northwest Alaska Natives", he does not address the degree to which there are many Natives in Northwest Alaska that are not NANA shareholders and therefore do not benefit from the shareholder preference, or the degree to which NANA shareholders residing outside of Northwest Alaska may benefit from it. He asserts that "the extent of the [shareholder hiring] preference may be a matter that is in dispute" and offers no facts to show what it consists of, but none-the-less asks the court to establish as fact that the "disputed preference" is a "racial proxy" and to establish as law that it is illegal. He asserts that Teck Cominco materials belie its assertion that it has only a shareholder hire preference without regard for NANA's right to require more, but he offers no such illusory documents. Although he can provide no evidence in support, he also asserts that the defendant Teck Cominco Alaska contracted with NANA in 1982, which is untrue. (While Teck Cominco American did in fact contract with NANA in 1982, Teck Cominco American is a different

company than Teck Cominco Alaska, and Teck Cominco American is not before this court.) Moreover, he offers nothing to support his knowingly false assertion that Teck Cominco Alaska routinely offers employment to NANA shareholders who are "not qualified for the job" over "qualified non-NANA shareholders". Since summary judgment requires the movant to cite facts within the record and establish that no material facts remain in dispute [see Fed.R.Civ.P. 56], and since Mr. Conitz has neither presented the court with admissible evidence regarding the facts he asserts or pointed to such evidence in the record, this court must deny his motion.

## H.    Even If Teck Cominco's Shareholder Preference Was Race Based, This Court Must Allow Teck Cominco An Opportunity To Address Whether It Qualifies As A Viable Affirmative Action Program.

Even when most forms of racial discrimination are prohibited to private employers, the law universally carves out an exception for private employers who have an affirmative action program in place. See e.g. Rudebusch v. Hughes, 313 F.3d 506, 520-21 (9th Cir. 2002).

The shareholder preference in effect at Red Dog is a requirement imposed by Teck Cominco's partner, NANA Regional Corporation. [Zigarlick Declaration.] Teck Cominco is entitled to seek discovery from NANA, including deposing NANA's experts, on the issue of whether the shareholder preference qualifies as a valid affirmative action program. NANA only recently became a party to this litigation, and its expert's reports are not yet due.

In the event that this court reaches the merits of Mr. Conitz's motion, and in the event that this court is inclined to rule that the shareholder preference in effect at Red Dog is somehow a racial preference, Teck Cominco moves, pursuant to Civil Rule 56(f), for additional time to depose NANA's expert(s) and to present an argument to the court as to whether the shareholder preference qualifies as a viable affirmative action program.

## CONCLUSION

Mr. Conitz has presented no evidence and no law that suggest he is entitled to summary judgment. Moreover, because Mr. Conitz is, in essence, seeking summary judgment as to only one part of a claim, his motion is impermissible under the rules and should be denied without consideration by the court.

If the court considers Mr. Conitz's motion, however, it must recognize that Teck Cominco participates with NANA in the Red Dog Project, and that their joint venture entitles its participants to discriminate in favor of NANA shareholders when hiring personnel to work for that Project. [43 U.S.C.§ 1626(g); 42 U.S.C. §2000e-2(a).] Moreover, as a matter of law, any preference for NANA shareholders is not a race based preference, since NANA shareholders are not a race based grouping of individuals. Alaska Chapter, Associated General Contractors, Inc. v. Pierce, 694 F.2d 1162, 1169 n10 (9th Cir. 1982).

As for Mr. Conitz's assertion that state law separately bars any Native hiring preference at Red Dog, the State agency charged with enforcing Alaska's anti-discrimination statutes disagrees, and has determined that Teck Cominco's shareholder hire policy does not violate either Alaska or federal law.  Pankowski v. Cominco Alaska, ASCHR C-91-093 (1993).

Although Mr. Conitz did not argue § 1981 in his motion, the law requires that it give way to the more specific Title VII, which grants an exemption to Teck Cominco employment practices at Red Dog with respect to anti-discrimination laws. E.g. Taylor v. Alabama Intertribal Council, 261 F.3d 1032, 1035 (11th Cir. 2001), cert. denied, 535 U.S. 1066 (2002).  Moreover, § 1981 does not encompass claims for disparate impact such as the claim asserted by Mr. Conitz in his motion, and none of the discrimination laws permit majority groups like white males to proceed on a disparate impact theory.  Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982); Livingston v. Roadway Express, Inc., 802 F.2d 1250, 1252 (10th Cir. 1986).

As a matter of law, Teck Cominco is entitled to discriminate in favor of NANA shareholders when staffing the Red Dog Project, and if the court reaches the merits of Mr. Conitz's motion, it should acknowledge that that principle governs this case.  If, however, the court is inclined to rule that the shareholder preference in place at Red Dog is somehow racial in nature, the court should allow Teck Cominco sufficient time to depose NANA's expert(s) and present arguments to the

court establishing whether the preference qualifies as a valid affirmative action program.

DATED this 24th day of January, 2008, at Anchorage, Alaska.

HARTIG RHODES HOGE & LEKISCH, PC
Counsel for Defendant
  Teck Cominco Alaska Incorporated


By: _____
    Sean Halloran


CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January, 2008
a true and correct copy of the foregoing was served
on Kenneth Covell & Thomas Daniel by electronic
means through the ECF system as indicated on
the Notice of Electronic Filing.

_____
Hartig Rhodes Hoge & Lekisch PC