Thomas M. Daniel, Alaska Bar No. 8601003
TDaniel@perkinscoie.com
PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
Telephone: 907.279.8561
Facsimile: 907.276.3108

Attorneys for Defendant/Intervenor
NANA Regional Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGG CONITZ,<br><br>            Plaintiff,<br><br>   v.<br><br>TECK COMINCO ALASKA, INC.,<br><br>            Defendant,<br><br>  and<br><br>NANA REGIONAL CORPORATION,<br><br>            Defendant/Intervenor. | Case No. 4:06-cv-00015-RRB |

## INTERVENOR NANA REGIONAL CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR RULE OF LAW REGARDING SHAREHOLDER PREFERENCE POLICY AND CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiff Conitz has moved the Court to rule as a matter of law that Teck Cominco's shareholder preference policy is a racial preference that violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Alaska Human Rights Act, AS 18.80, et seq. The complaint alleges that Conitz was passed over for two

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

promotions because Teck Cominco applied its policy of giving an employment preference to NANA shareholders, which resulted in the promotion of shareholder candidates with inferior qualifications. Conitz has not put forward any evidence in his motion to show that he was not promoted because of the shareholder preference policy or that he would have been promoted had the shareholder preference not been applied. Instead, he asks only that the Court rule that Teck Cominco's shareholder preference policy is unlawful as a matter of law.

Teck Cominco concedes that it has an employment preference for NANA shareholders at the Red Dog Mine but denies that the shareholder preference policy played a role in the two promotions that Conitz challenges here, asserting instead that Conitz was not promoted because his qualifications were inferior to the shareholders who were promoted. *See* Teck Cominco's Motion for Summary Judgment.

For its part, NANA's position is that even assuming, *arguendo,* that Conitz was denied the two promotions in question because of the shareholder preference, summary judgment nevertheless should be entered for Teck Cominco because a shareholder preference in employment is not unlawful under either federal or state law for the reasons explained in Teck Cominco's Motion for Summary Judgment. Moreover, even if Teck Cominco did not qualify for the exemption in TitleVII as a joint venturer with a Native corporation, the shareholder preference would be lawful for the reasons explained below.[1] For that reason, partial summary judgment should

---

[1] NANA agrees with Teck Cominco's position that it is exempt from the provisions of Title VII of the Civil Rights Act of 1964 and the Alaska Human Rights Act because of the exemption enacted by Congress for the very purpose of permitting shareholder preference programs in employment. *See* Teck Cominco's Motion for Summary Judgment at 19-23. For the reasons

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

be granted to Teck Cominco and Defendant-Intervenor NANA Regional Corporation as to the First, Second and Sixth Causes of Action alleged by plaintiff because even if Conitz had been denied a promotion because of the shareholder preference policy, his claims should be rejected.

Finally, in the event the Court is inclined to rule that the shareholder preference program is a race-based preference, NANA requests additional time, pursuant to Rule 56(f), to take discovery regarding whether the program qualifies as a lawful affirmative action program.

# I.    ARGUMENT

## A.    The Employment Preference for NANA Shareholders is not "Race-Based" and Therefore Is Not Prohibited by Statutes Forbidding Race Discrimination in Employment.

### 1.    A Preference for Shareholders Is Not Equivalent to a Preference for Alaska Natives.

Plaintiff argues that Teck Cominco's policy of granting a preference to NANA shareholders for jobs at the Red Dog Mine is a racial preference and therefore unlawful.  Conitz's reasoning is straightforward.  He argues that because all or almost all NANA shareholders are Alaska Natives, it follows that a preference for shareholders is a "proxy, euphemism, or surrogate for race."  Conitz Motion at 3.  He argues "that shareholder status is predicated entirely upon race," *id.* at 6, and therefore the preference runs afoul of federal and state laws prohibiting race discrimination in employment.

explained below, a shareholder preference in employment would be lawful even absent the explicit Congressional recognition.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

The fallacy in plaintiff's argument is equating shareholder status with the racial classification of Alaska Native.  While it is true that most NANA shareholders are Alaska Natives, not all of them are.  NANA allows spouses of shareholders to inherit stock.  Some of those spouses who have inherited stock are white or have racial characteristics other than Native.  Ex. 1, Declaration of Joanne Harris.  Presently, of NANA's 11,655 shareholders, 65 shareholders are not Native.  *Id.*

More important is that fact that the employment preference here, on its face, is not based on race.  Rather, it is based on the economic status of having an ownership interest in the company that owns the land and minerals where Teck Cominco is mining.  Such an economic preference is no more unlawful than if Conoco Phillips had a hiring preference for its own shareholders.  Indeed, some employers have promotion preferences for their own employees.  That is not a race-based preference, but is instead a preference based on an economic status.

Where an employer makes an employment decision based on a factor that is closely correlated with a protected status, the decision might be challenged under the disparate impact theory of discrimination (discussed below), but it is not disparate treatment based on a protected status.  Indeed, the primary case cited by Conitz in his brief, *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297 (9th Cir. 1982), *cert. denied*, 467 U.S. 1251 (1984), is a disparate impact case, not a disparate treatment case.  As the Supreme Court has explained, "'[d]isparate treatment' [] is the most easily understood type of discrimination.  The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *International Broth. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Disparate impact concerns an employment practice that has the effect of excluding members of a protected group, even when that is not the intent. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 430 (1971). The proper analysis of Teck Cominco's shareholder preference plan is under the disparate impact theory of discrimination, not the disparate treatment model. *See Bonilla,* 697 F.2d at 1303 (holding that a shareholder preference in employment is race neutral on its face and is therefore properly analyzed under the disparate impact theory of discrimination rather than the disparate treatment theory); *see also, Reich v. Cominco Alaska, Inc.*, 56 P.3d 18 (Alaska 2002) (upholding challenge for cause of all prospective jurors who were NANA shareholders because of NANA's direct financial interest in the Red Dog Mine).

### 2.    NANA Shareholders Did Not Derive Their Status as Shareholders Because of Their Race.

Even though most NANA shareholders are Alaska Natives, they did not acquire their status as shareholders because they are Natives, but rather because of their unique "political status" under American law. Consequently, it is incorrect to equate NANA shareholder status with race. This distinction was explained in *American Federation of Government Employees v. United States*, 330 F.3d 513 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1088 (2003), where a section of the Defense Appropriation Act, commonly known as the 8(a) program, was challenged on the grounds that it granted an unconstitutional race-based preference to firms having a certain percentage of Native American ownership. The plaintiffs challenged an award that was made to a government contract that had been awarded to Chugach Management Services Joint Venture, which was a joint venture of two companies –

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

one owned by Chugach Alaska Corporation and the other owned by Alutiiq, a wholly-owned subsidiary of Afognak Village Corporation. Both Afognak and Chugach are corporations established pursuant to the Alaska Native Claims Settlement Act.

The D.C. Circuit held that the preferential treatment given by Congress to ANCSA corporations was not an unconstitutional racial preference. Rather, the Court held that the preference was within Congress's explicit authority under the Constitution to regulate commerce with members of former tribal governments. *Id.* Article 1, Section 8, Clause 3, of the Constitution authorizes Congress to regulate commerce with Indian tribes, including the power to determine which "distinctly Indian communities" should be recognized as Indian tribes. *Id.* The Court relied upon *Morton v. Mancari*, 417 U.S. 535 (1974), holding that the Constitution itself grants Congress explicit authority to legislate on behalf of Indians without running afoul of the prohibition against race discrimination in the Fifth Amendment. *Id.*

In *Morton v. Mancari*, the Supreme Court addressed whether the BIA's employment preference for "Indians" was an unconstitutional racial classification. The Court held that it was not. The Court reasoned that the BIA's preference for Indians was not a racial preference because it was not directed towards the racial group consisting of Indians, but rather was applicable only to members of federally-recognized tribes, thus excluding some persons who were racially classified as Indians. *Id.* at 554 n.24. Most significantly, the Supreme Court reasoned that the Indian preference was not racial because the special treatment of Indians was rationally related to the Government's unique obligation to Indians to further the cause of Indian self-government. *Id.* at 554-55.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

The creation of Alaska Native corporations under ANCSA is, without question, legislation enacted by Congress pursuant to its authority under the Constitution to regulate Indian affairs.

> The Alaska Native Claims Settlement Act and this Act are Indian legislation enacted by Congress pursuant to its plenary authority under the Constitution of the United States to regulate Indian affairs.

Pub. L. 100-241, § 2(a), February 3, 1988, 101 Stat. 1788, codified at 43 U.S.C. § 2(a), February 3, 1988, 101 Stat. 1788, codified at 43 U.S.C. § 1601 note. *See* ANCSA § 1626(d).

In 1971, Congress enacted ANCSA to settle the aboriginal claims of Alaska Natives to the land and resources of Alaska. Rather than adopting the reservation system in the lower 48 states, Congress sought a new approach to the settlement of Alaska Native land claims. In exchange for the extinguishment of their aboriginal rights and claims, Alaska Natives received an entitlement to the benefits of ANCSA. *See Koniag, Inc. v. Koncor Forest Resource*, 39 F.3d 991, 995-97 (9th Cir. 1994). Although blood quantum is one factor used in determining which persons were Alaska Indians, Eskimos, or Aleuts and thus entitled to be shareholders in ANCSA corporations, *"[t]hese classifications, though they utilize blood quantum criteria, are clearly political classifications based on the unique non-reservation and non-tribal situation of the Alaska Natives." Alaska Chapter, Associated Gen. Contr. v. Pierce*, 694 F.2d 1162, 1169 n.10 (9th Cir. 1982) (emphasis added).

In sum, the original shareholders of NANA enjoy their status as shareholders because of the unique historical political status of Alaska Natives, not because of their race. Indeed, ANCSA itself would be unconstitutional if shareholder status was

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

conferred based upon the race of Alaska Natives. Accordingly, equating Native

corporation shareholder status with race is incorrect. *See Doe v. Kamehameha*

*School/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 849-856 (9th Cir. 2006) (*en*

*banc*), *cert. dismissed*, 127 S.Ct. 2160 (2007) (W. Fletcher concurring) (school's

preference for Native Hawaiians is political rather than racial preference and therefore

does not violate 42 U.S.C. §1981). For that reason, the shareholder preference does

not violate Title VII, 42 U.S.C. §1981, or the Alaska Human Rights Act.

**B.    The Disparate Impact Theory of Discrimination Is Not Applicable to the Shareholder Preference Policy.**

Plaintiff argues that even if the shareholder preference is not directly

discriminatory based on race, it nevertheless has a disparate impact on non-Native

employees of Teck Cominco and hence is unlawful under the disparate impact theory

of discrimination recognized under Title VII and the Alaska Human Rights Act. He

relies upon *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1302-03 (9th Cir.

1982), *cert. denied*, 467 U.S. 1251 (1984), where the Ninth Circuit ruled that a

shareholder preference where all shareholders were of Italian ancestry had a disparate

impact on black and Mexican employees and therefore violated Title VII.[2]

Under the disparate impact model of discrimination, an employment policy

that is facially neutral may nevertheless violate Title VII where it has an adverse

---

[2] The disparate impact theory of discrimination is not applicable under 42 U.S.C. § 1981 because that statute encompasses only intentional or disparate treatment discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982), cited in *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 839 (9th Cir. 2006) (*en banc*), *cert. dismissed*, 127 S.Ct. 2160 (2007).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

impact upon a disfavored group. As the Supreme Court explained in *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-430 (1971):

> The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees. Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices.

401 U.S. at 430. In *Griggs*, the Court ruled the employer's requirement that all employees must have a high school diploma and pass a general intelligence test had the effect of excluding blacks at a greater rate than whites and thus perpetuated the company's pre-Civil Rights Act history of openly discriminating against blacks. *Id.* at 851-852. Thus, unless the employer could demonstrate that the job requirements bore a relationship to successful job performance, they violated Title VII. *Id.* at 854-856; *see also Thomas v. Anchorage Telephone Utility*, 741 P.2d 618, 628-629 (Alaska 1987) (applying the *Griggs* standard under the Alaska Human Rights Act).

The Supreme Court's description of the disparate impact theory explains why it is not applicable here. Teck Cominco's employment preference for NANA shareholders does not "'freeze' the status quo of prior discriminatory employment practices," because there is no history of employment discrimination against whites, like Conitz. Indeed, almost all the cases addressing the disparate impact theory are brought on behalf of historically disfavored groups – blacks, Hispanics, and women. In the only case the undersigned has found addressing a non-minority employee's claim of disparate impact discrimination, the court rejected the claim for this very

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

reason – the absence of background circumstances showing that the facially neutral policy was a vehicle to perpetuate discrimination.

In *Livingston v. Roadway Express, Inc.*, 802 F.2d 1250 (10th Cir. 1986), a 6'7" white male who was rejected for employment as a truck driver alleged that the employer's policy of refusing to employ drivers who were over 6'4" tall, had a disparate impact on males. *Id.* at 1251. He presented statistical evidence showing that a much higher percentage of men than women were taller than 6'4", and therefore the company's policy affected three times as many men as women.

The Tenth Circuit rejected Livingston's disparate impact claim because of the absence of historical discrimination against white males. Quoting from *Griggs*, the Court held that "a neutral practice that has an adverse impact on a favored class simply cannot operate 'to 'freeze' the status quo of prior discriminatory employment practices' within the meaning of *Griggs*." *Id.* at 1252.

Assuming, *arguendo*, that a non-minority plaintiff could bring a claim using the disparate impact model of discrimination to establish a prima facie case, he would have to, (1) show a significant disparate impact on his protected class or group, (2) identify the specific employment practice at issue, and (3) show a causal connection between the challenged practice and the disparate impact. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002), *cert. denied*, 537 U.S. 1110 (2003). Conitz cannot prove elements 1 and 3. He has put forward no statistical evidence showing that the shareholder preference policy has a disparate impact on whites seeking promotion to supervisory positions. *See Stout v. Potter*, 276 F.3d 1118, 1122-24 (9th Cir. 2002) (difference in selection rate of females and males for supervisory positions

did not show that selection policy had a disparate impact on females).  Nor has Conitz

shown a causal connection between the shareholder preference policy and the alleged

disparate impact.

In sum, the disparate impact model of employment discrimination has no

application here because Teck Cominco's shareholder preference policy does not

perpetuate historical discrimination against Caucasians.  Moreover, even if the

disparate impact theory was applicable, Conitz has not shown that the shareholder

preference policy has a disparate impact on white males seeking promotions.

Accordingly, plaintiff's motion to declare the shareholder preference policy unlawful

on this basis must fail.

C.    **Even if the Shareholder Preference is Race-Based, it May be Lawful Under Court Decisions Addressing Voluntary Affirmative Action Plans.**

A private employer's policy of taking race into account in making promotion

decisions does not automatically violate Title VII or other statutes prohibiting race

discrimination in employment.  *See United Steel Workers of Am. v. Weber*, 443 U.S.

193 (1979), and *Johnson v. Transp. Agency*, 480 U.S. 616 (1987).  Unlike the

affirmative action cases brought against governmental entities under the equal

protection clause of the Constitution, *see, e.g., Gruter v. Bollinger*, 539 U.S. 306

(2003) and *Gratz v. Bollinger*, 539 U.S. 244 (2003), which require race-based

affirmative action programs to be justified under the strict scrutiny standard of review,

the Supreme Court has taken a different approach for private race-conscious

affirmative action programs.

The Supreme Court's decisions addressing affirmative action in private

employment first apply the three-part analytical framework of *McDonnell Douglas*

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

*Corp. v. Green*, 411 U. S. 792 (1973). Under that analysis, the plaintiff must first establish a prima facie case by showing that the employer considered the employee's race in making hiring or promotion decisions. In step two, the employer must explain its non-discriminatory rationale for its decisions. *See Johnson*, 480 U.S. at 626. At this stage, an affirmative action plan provides a legitimate reason for a hiring decision that considers race or ethnicity. *Id.* Then, at step three of the analysis, the burden falls to the plaintiff to prove that the employer's "justification is pretextual and the affirmative action plan is invalid." *Id.* at 626.

Thus, even assuming that Conitz can make out a prima facie case of race discrimination by showing that Teck Cominco considered his race when it denied him the promotions in question, that would do nothing more than make out a prima facie case. As defendants assert that the shareholder preference plan qualifies as a valid affirmative action plan, the burden falls on the plaintiff to prove that policy is invalid. *Id.* at 627. He cannot meet that burden because the record is not sufficiently developed.

The Ninth Circuit has broken down the analysis of whether an affirmative action plan is justified into three parts: (1) the plan must respond to a manifest imbalance in the work force, (2) the plan must not "unnecessarily trammel" the rights of members of the non-preferred class, or "create an absolute bar to their advancement," and (3) the plan must do no more than is necessary to attain a balance. *Rudebusch v. Hughes*, 313 F.3d 506, 520-21 (9th Cir. 2002); *see also Doe v. Kamehameha School/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 839-41 (9th Cir. 2006), *cert. dismissed*, 127 S.Ct. 2160 (2007) (applying affirmative action analysis in

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

the context of private school system in Hawaii that gave preference to students of Native Hawaiian ancestry).

Applying the first factor – whether the shareholder preference here is justified by a specific, significant imbalance in the work force – it is well known that Alaska Natives are underrepresented in the work force generally. But the record in this case is devoid of evidence about the work force at the Red Dog Mine. Therefore, there is not a sufficient factual predicate for determining whether the shareholder preference policy can pass this test. For this reason, the Court should defer ruling on the policy until the record is better developed.

The second factor the Court must consider is whether the preferential treatment afforded NANA shareholders by Teck Cominco unnecessarily trammels the rights of non-shareholders. As noted by the Ninth Circuit in the *Kamehameha School* case, Congressional recognition of the challenges faced by Native Hawaiians in obtaining a quality education supported the conclusion that the school policy there of giving preference to Native Hawaiians did not unnecessarily trammel the rights of non-native Hawaiians. *See Kamehameha Schools*, 470 F.3d at 845. Similarly, here, Congress recognized the need for shareholder preference programs when it adopted the exemption in Title VII for Alaska Native corporations. The legislative history shows that the very purpose of that exemption was to allow ANCSA corporations to give preference to their own shareholders in employment. A provision of ANCSA excludes Native corporations (and corporations, partnerships, joint ventures, trusts, or affiliates in which a Native corporation owns not less than 25 per centum of the equity) from the definition of "employer" contained in Title VII. 43 U.S.C.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

NANA'S OPPOSITION TO MOTION FOR RULE OF LAW
CONITZ V. TECK COMINCO
CASE NO. 4:06-CV-00015-RRB
Page 13 of 17

18531-0014/LEGAL13695297.2

§ 1626(g); 42 U.S.C. § 2000e(b).  The legislative history of the 1988 amendments to ANCSA that brought regional corporations within the Indian Tribe exemption to Title VII shows that the very purpose of the exemption was to authorize shareholder employment programs.  *See* S. Rep. 100-201, 1987, p. 26, 1988 U.S.S.C.A.N. 3269, 3290 (stating that the purpose of the exemption was to "facilitate Alaska Native shareholder employment programs by resolving any uncertainty as to the applicability of the Civil Rights Act of 1964 to certain business enterprises in which Native corporations participate.").

Moreover, the shareholder preference policy here, like the affirmative action plan approved in *Johnson*, "unsettled no legitimate, firmly routed expectation on the part of petitioner."  480 U.S. at 638.  Conitz, like the plaintiff in *Johnson v. Transp. Agency*, had no "absolute entitlement" to a promotion.  *Id*.  He had no "legitimate, firmly rooted expectation" of promotion."  *Id*.  His entitlement to a promotion was not "settled."  *Id*.  Consequently, Teck Cominco did not upset a settled expectation, even if its promotion decision was based on the shareholder preference policy.

The third test applied by the Supreme Court and the Ninth Circuit in assessing affirmative action plans is whether it does no more than necessary to correct the manifest imbalance in the work force.  This factor requires that an affirmative action plan be "temporary."  *Johnson*, 480 U.S. at 640; *Weber*, 443 U.S. at 208.  However, the fact that the plan does not have an express end date does not mean that the plan will fail this test.  *See Johnson*, 480 U.S. at 639-640.  Here again, the factual record needs to be better developed before the court can rule on this point.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

The Ninth Circuit's recent *en banc* decision in *Doe v. Kamehameha School/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 839-41 (9th Cir. 2006), *cert. dismissed*, 127 S.Ct. 2160 (2007), is particularly instructive. There, a white plaintiff challenged a private school system's policy of giving preference in admissions to Native Hawaiians. The Kamehameha Schools were established in Hawaii in the late 1800's by the last direct descendant of King Kamehameha to educate Native Hawaiians. *Id.* at 831. The schools give preference in admissions to Native Hawaiians. But because there are many more qualified students of Hawaiian ancestry than available spots, it has been rare that a student without Hawaiian ancestry has been admitted to the schools. *Id.* Nevertheless, the Ninth Circuit upheld the schools' admission policy in the face of an attack under 42 U.S.C. §1981.

The Ninth Circuit, sitting *en banc*, split on the basis for upholding the admissions policy. The majority opinion applied a modified analysis from the cases addressing affirmative action in employment. Five concurring judges would have upheld the schools' preference for Native Hawaiians on the grounds that it was not a racial preference at all, but was a political preference authorized by the Supreme Court's jurisprudence addressing the justification for special treatment of American Indians, Alaska Natives, and Native Hawaiians. *Id.* at 850-853. Application of the holding in the *Kamehameha Schools* case supports Teck Cominco's employment preference for NANA shareholders.

In sum, the record is not sufficiently developed to address whether Teck Cominco's shareholder preference policy qualifies as a lawful affirmative action plan.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Accordingly, plaintiff's motion for a ruling of law that the policy is unlawful is premature.

## CONCLUSION

The Teck Cominco employment preference for NANA shareholders is not a race-based preference and therefore does not violate the disparate treatment theory of discrimination under Title VII, 42 U.S.C. § 1981, or AS 18.80.220. Moreover, the disparate impact theory of discrimination is not applicable because the shareholder preference policy does not operate to "'freeze' the status quo of prior discriminatory employment practices" against a historically disadvantaged group. Nor has Conitz demonstrated that the policy, in fact, has the effect of disadvantaging Caucasian employees.

For these reasons, Conitz's motion for rule of law should be denied and summary judgment should be granted to NANA and Teck Cominco. Even if the court were to conclude that the shareholder preference policy is race-based, the parties should be granted additional time pursuant to Rule 56(f) to develop evidence regarding whether it will qualify as a lawful affirmative action plan.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

DATED:  January 24, 2008.

s/ Thomas M. Daniel, Alaska Bar No. 8601003
TDaniel@perkinscoie.com
**Perkins Coie** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
Telephone:  907.279.8561
Facsimile:  907.276.3108

Attorneys for Defendant/Intervenor
NANA Regional Corporation


The undersigned hereby certifies that a true and correct
copy of the foregoing document is being electronically
served on Sean Halloran and Kenneth Covell.

s/Thomas M. Daniel

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108