KENNETH L. COVELL
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska 99701
Phone: 907.452.4377
Fax: 907.451.7802
kcovell@gci.net

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGG CONITZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| TECK COMINCO ALASKA, INC., | ) |
| | ) |
| Defendant, | ) |
| | ) |
| vs. | ) |
| | ) |
| NANA REGIONAL CORPORATION | ) |
| | ) |
| Intervenor | ) |

Case No.  4:06-CV-00015 RRB

**REPLY TO OPPOSITIONS TO PLAINTIFFS MOTION FOR ORDER OF RULE OF
LAW OF THE CASE FILED AT DOCKET 64**

Defendant(s) grasp at straws in attempting to oppose the Motion for Order of Rule of Law.

Prior to this motion defendant(s) position had been that there was a limited shareholder preference at Teck; (all be it un-written); and that it played no part in defendant Teck's failure to promote Conitz.  In light of the current motion, where defendant

Teck's racial preference in favor of Inupiat Eskimos of the Northwest Arctic Borough and NANA region; (thinly veiled as a NANA shareholder preference), will be determined by the court to be a proxy for race: the defendant(s) now assert a plethora of implausible and internally and externally inconsistent defenses.

## Introduction

Defendant(s) raise the follow issues.

1.  A shareholder preference is a political preference and not a racial preference.  This assertion is based upon the ruling in <u>Morton</u> v. <u>Mancari</u>.  The Mancari ruling has extremely limited application; and an Inupiat Eskimo hire preference was construed to be a proxy for an illegitimate race conscious purpose by the Alaska Supreme Court, and such approach was endorsed by the 9th circuit.

2.  Defendant(s) assert that Teck is exempt from Title 7 of the 1964 civil rights act pursuant to 42 U.S.C. §1626(g) which states that a Native Corporation and other entities, including joint ventures, in which the Native Corporation owns 25% of the equity, are not employers as defined under the act and essentially therefore exempt from title 7.  By the terms of there own agreement, and materials; NANA and Teck are not in a joint venture.  Even if they were, NANA does not own "25 per centum of the equity" of Teck.

3.   In the, at best most novel; and at worst borderline frivolous argument; defendant(s) assert that somewhere among the entities of NANA or Teck, there might be some sort of affirmative action plan; and validity of such plan is as yet unknown to those defendants; and such plan is a valid affirmative action plan and therefore authorizes them to engage in what would otherwise be illegal discrimination to remedy a past wrong; even though there is no past history of discrimination by Teck; and that the discrimination plan is both permanent and has a goal of 100% exclusive hire of Inupiat Eskimos, and has no termination date.  In order for defendant(s) to assert the affirmative action defense they must first concede that they did consider race characteristics in their hiring decision.  This necessarily concedes that Conitz has made a Prima Faciea case pursuant to McDonnell Douglas v. Green 411 U.S. 792, 802, 93 S.Ct. 1817,36 L.Ed.2d 66a(1973).[1]

## This is a motion for order of rule of law and not a motion for summary judgment.

Prior to the filing of this motion it has been defendant(s) position that they do have a shareholder preference, but it is not a racial preference, and that it played no role in the decision not

---

[1] Irrespective of defendant(s) willingness to acknowledge the establishment of Conitz prima facie case.  Such case is established as discussed in Conitz'

to promote Conitz. Defendant(s) have maintained that Conitz was either unqualified for the jobs he applied for or the least qualified. Conitz on the other hand maintains that he was most qualified and, the others were either unqualified or least qualified; and those that were promoted were NANA shareholders and such racial characteristic was the basis for there promotion over him.

Whatever position maintained by the parties, as to the qualifications of the candidates; a jury would be free to make there own determination and may well consider or decide that the candidates were equally qualified. A jury would be entitled to know in that circumstance; and/or otherwise whether or not a shareholder preference of any sort is legal. Rather than address such issue during trial; (seemingly plain to plaintiff and thorny to defendant(s)); plaintiff has asked the court for that ruling well in advance of trial. The court will likely find as did the District Court, the Alaska Supreme Court, and the Ninth Circuit Court in the <u>Malabed</u> cases that such classification is in fact a proxy for race. And instruct the jury that any NANA shareholder preference is a preference which is illegal and discriminatory and violative of 42 USC § 1981, Title 7 of the United States Code, and Title 18 of the Alaska Statutes.

---

Spoliation Motion filed contemporaneously.

A thorough reading of the Malabed cases and Doe v. Kamehameha 470 F.3d 827(9th Cir., En banc 2006) are an extremely helpful primer and good guidance in contemplating the issues presented here.[2] Malabed v. North Slope Borough, 42 F.Supp.2d 927(D.Alaska Apr 08, 1999) (NO. N98-0004 CV (JWS). Malabed v. North Slope Borough, 345 F.3d 864, 92 Fair Empl.Prac.Cas. (BNA) 342, 84 Empl. Prac.Dec. P 41,537, 03 Cal. Daily Op. Serv. 5951, 2003 Daily Journal D.A.R. 7520 (9th Cir.(Alaska) Jul 08, 2003) (NO. 99-35684, 99-35750, 99-35773). Malabed v. North Slope Borough, 70 P3d 416, 92 Fair Empl.Prac.Cas (BNA) 48 (Alaska May 16, 2003) (NO. S-9808). Additionally reading the Forward To The Second Edition of

---

[2] Nana finishes the heading of its opposition with a "cross motion for summary judgment". As there is no summary judgment motion, it seems implausible that there is a cross motion for summary judgment. To the extent that they are moving for summary judgment, there motion appears to rely upon Teck's motion and should be handled commensurately. However to the extent there are issues of law to be decided they should be decided within the context of this motion. Plaintiff will later address both NANA and Teck's request for forbearance for discovery on the elusive affirmative action plan.

Teck titles the tale end of its opposition with "& Conditional Cross Motion." And again asks, among other things, for time to conduct discovery concerning "NANA's experts" to see if the shareholder preference is a valid affirmative action plan. Both Teck and NANA seem to agree, that the court should rule as a matter of law whether or not "Teck Cominco's preference for hiring NANA shareholders to work at Red Dog project is permissible as a matter of law" (Teck's Opposition at page 2) "Moreover, as a matter of Law, any preference for NANA shareholders is not a race based preference, since NANA shareholders are not a race based grouping of individuals" (Teck's Opposition page 21). NANA seems to ask for the same relief while not calling it a ruling of law but say's that "…partial summary judgment should be granted to Teck Cominco and defendant-intervener NANA Regional Corporation as to the first second and sixth causes of action alleged by plaintiff…" (NANA Opposition page 2-3)

It seems that the defendant(s) wish to have this issue decided as a matter of law at this time; and subsequently attempt to raise an affirmative defense of a valid affirmative action program; plaintiff agrees that the court should rule as a matter of law on the issue of the legality of the preference. Plaintiff later

Employment Discrimination Law, Third Edition, Volume 1 (Exhibit 1 attached) is helpful in placing civil rights lawsuits into a meaningful historical prospective.

## Discussion

"As a matter of law, Teck Cominco is entitled to discriminate in favor of NANA shareholders…and…the court…should acknowledge that that principle governs this case" (Teck Opposition page 22 ).

"…a shareholder preference in employment is not unlawful under either Federal or State Law for the reason explained in Teck Cominco's motion for summary judgment." (NANA opposition page 2, referring to Teck's Motion for summary judgment on pages 19-23.)[3]

It appears that the parties agree that the court should decide whether as a matter of law whether, any shareholder preference at the Teck mine is illegal.

## Racial vs. Political

The argument that, Inupiat Eskimos of a Region of Northern Alaska is a political classification was argued at nauseum in the Malabed case and rejected resoundingly in the District Court, the Alaska Supreme Court and the 9th Circuit.  The Alaska Supreme Court said:

> "Unlike the term "Native American," "Inupiat Eskimo" does not appear to be defined anywhere as requiring

---

addresses any forbearance for the purposes of the court "discovering and or exploring" any affirmative action plan.
[3] Teck's motion for summary judgment on pages 19-23 reiterates the 43 U.S.C. § 16 26(g) argument.

tribal membership or any other arguably *political* status; indeed, it does not appear to describe any particular Indian tribe. And because the class defined by the statement of purposes extends only to Inupiat Eskimos residing in the North Slope Borough, the class that the ordinance intends to prefer is far narrower than the one defined in the 703(i) exception-members of all federally recognized Indian tribes. Because the ordinance expressly professes an intent to benefit a class defined by borough residency and race, its nominally political preference in favor of all Native Americans could be construed as a proxy for an illegitimate race-conscious purpose." <u>Malabed</u> v. <u>North Slope Borough</u>, 70 P.3d 416,424 (Alaska 2003).

NANA regional boundaries are identical to those of the Northwest Artic Borough (Plaintiffs Motion for Order of Rule of Law Exhibit 10, page 6).

Under ANCSA,

> ""Native" means a citizen of the United States who is a person of one-fourth degree or more Alaska Indian (including Tsimshian Indians not enrolled in the Metlakatla Indian Community), Eskimo, or Aleut blood, or a combination thereof.  The term includes any Native as so defined either or both of whose adoptive parents are not Natives.  It also includes, in the absence of a minimum of blood quantum, any citizen of the United States who is regarded as an Alaska Native by the Native village or Native group of which he claims to be a member and whose father or mother is (or, if deceased, was) regarded as Native by any village or group." (25 U.S.C § 500n.)

NANA states, "NANA is owned by more than 11,400 Alaska shareholder of Inupiat Eskimo descent,…" (Plaintiffs Motion for Order of Rule of Law exhibit 10, page 2.)

Under the heading of History in the joint Teck-NANA publication found in exhibit 10, Page 6, of plaintiffs Motion for Order of Rule of Law it states that,

> "Eligible Alaska Natives with at least 25% Indian, Eskimo, or Aleut blood where enrolled as shareholders of the appropriate native corporations." (Plaintiffs Motion for Order of Rule of Law exhibit 9, page6.)

> "Today the vast majority of regional inhabitants are Inupiat making NANA region distinct from other areas of Alaska, where various groups of Indians, Aleuts, and Eskimos intermarried bringing cultural distinction." (Plaintiffs Motion for Order of Rule of Law exhibit 10, page7.)

It seems exceedingly clear that, just like in Malabed, the term "Inupiat Eskimo of the NANA Region" is a proxy for an illegitimate race conscious purpose. Malabed v. North Slope Borough, 70 P.3d 416, 92 Fair Empl.Prac.Cas. (BNA) 48.

The 9th circuit rejected the political classification in a footnote; subsequent to the Alaska Supreme Courts pronouncement the 9th Circuit dismissed the political classification. The court said that,… "this argument puts more weight on Mancari than it can bear" Malabed vs. North Slope Borough, 335 F.3d 864,868 (9th Cir. 2003). [4]

---

[4] Teck also argues that there should be deference in the nature of "Chevron Deference" given to an informal decision of the Alaska State Commission on Human Rights (ASCHR) "In the Matter of Pankowski" (the papers submitted by defendant in this regard are paltry; a discovery request has been made for any further facts in Pankowski, none the less it would appear that it will be of no moment.) Informal inconsequential decisions of administrative agencies are entitled to little or no difference unless such decisions are arrived at in the crucible of an adversary process, not only do they not control, but they carry little or no weight.  A letter opinion from the EEOC of similar but perhaps greater formality

Nor does Doe v. Kamehameha affect the state of the law or, the courts reasoning as to the discussion of a political category; Doe v. Kamehameha is a minority opinion and made in the context school admission as opposed to the work place.  This subject is further discussed below.

Having a preference for shareholders is the same as saying a preference for Inupiat Eskimos of the Northwest Arctic Borough; it is a racial classification.  NANA argues that having a shareholder preference is no different then having a shareholder preference for a private corporation such as Conoco Phillips, this is wrong.  Conoco Phillips stock is traded on the open market.  NANA stock is inalienable (see, Teck's Opposition page 17, sighting 43 U.S.C. § 1629c.)

43 U.S.C. § 1606(b) states, "that common stock…shall not be…(i)sold; (ii)pledged; (iii) subjected to a lien or judgment execution; (iv)assigned in present or future; (v)treated as an asset under; (I)Title 11 or any successor statute; (II)any other insolvency or moratorium law, or (III)other laws generally

---

was considered by Judge Sedgwick in Malabed 42 F.Supp 935, and rejected for those reasons.
> (FN45. *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)). Stated somewhat generally, Chevron directs that if a Congressional Act is silent or ambiguous regarding an issue of statutory interpretation, courts should determine whether an agency's interpretation is based on a permissible construction of the statute. If the agency's interpretation is within its authority and not otherwise arbitrary or contrary to law, courts should defer to the agency. *See generally,* I Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law,* §§ 3.1-3.6 at 107-31 (3d ed. 1994)

affection creditors' rights; or  (IV)otherwise alienated. (c) Not withstanding the restrictions set forth in subparagraph (B)…stock may be transferred to a Native or a descendant of a Native."

The great distinction between NANA stock and Conoco Phillips stock is that you only get NANA stock by birth, marriage, or inheritance. (See also 25 U.S.C. § 500n, and Plaintiffs Motion for Order of Rule of Law Exhibit 5 page 3; Exhibit 7 page 5; Exhibit 8 page 2.)

Obviously, if you can't be a member of the "White Union" or there are a few token members of the White Country Club, the discrimination is still taking place.  Conitz can't be a NANA shareholder/Inupiat Eskimo of the NANA region, try as he might.

<u>Bonilla</u> is clear that such discrimination is illegal discrimination, and it is controlling authority for the court.

### 43 U.S.C. § 1626(g)

43 U.S.C. § 1626(g) states "For the purposes of implementation of the Civil Rights Act of 1964, a Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity shall be within the class of entities excluded from the definition of "employer" by section 701(b) (1) of Public Law 88-352 (78 Stat. 253), as amended, or successor statutes."  This statute

---

("Davis") (for discussion regarding Chevron principles with citation to authority).

would appear to exclude the Alaska Native Corporations and certain entities partially owned by Alaska Native Corporations from Title 7, of the Civil Rights Act. It would not exclude such entities from Title 18 of the Alaska Statutes and probably would not exclude employers from racial discrimination claims under 42 U.S.C. § 1981. In any event Teck does not fall under this exception.

By there own terms, Teck and NANA define the relationship between the parties as a lease agreement. (See, Plaintiffs Motion for Order of Law, Exhibit 10, page 230) "the actual mining operation is conducted <u>under lease</u> by Teck Cominco… (Exhibit 10 page 2.) (See also Exhibit 9, page 2) "the mine…operates <u>under a lease agreement</u> between NANA and the mine operator, Teck Cominco limited."[5] (Emphasis supplied)

There is simply no mention of a joint venture. Additionally the defendant has gone to great lengths to keep the contractual agreements between Teck and NANA secret. If the court were to consider ruling that there was any joint venture here, the plaintiff is entitled to have full production of all documents concerning the business relationship between Teck and NANA. In any event, the burden of proving such entity is upon Teck and NANA, as yet they have not even come forth with any evidence of a joint

---

[5] 99.5% of NANA shareholder are Inupiat Eskimo. (See Declaration of JoAnne Harris Exhibit 1, NANA Opposition.) It appears from her Declaration that those few who are not shareholders were spouses of shareholders who inherited stock from shareholders.

*Conitz v. Tack Cominco,* Case No. 4:06-CV-00015 RRB
Reply to Opposition to Plaintiff's Motion for Rule of Law at Docket 64
Page 11 of 19

venture. A joint venture would entail a sharing of not only profits, but also losses. NANA was never willing to expose itself to any losses in the operation of the Teck mine. There is simply no joint venture here and 1626(g) does not apply.

Even if there were a joint venture here, there is absolutely no evidence showing that NANA owns 25% of the equity of Teck. Again there would be a burden of coming forward with evidence on NANA and Teck to this extent, their argument that NANA leases the land to Teck does not give them equity in Teck. Their argument that Teck pays profits to NANA, again does not demonstrate any equity interest of NANA in Teck, Teck could stop making money and/or make more money and NANA would still own zero percent of Teck. The exception simply does not apply.

### Affirmative Action or Lack Thereof

The defendants arrive at the proposition that they "may have" a viable affirmative action plan. They just don't know what it is and where it is.

This novel approach is probably inspired by the interesting case of <u>Doe</u> v. <u>Kamehameha</u> 430 F.3d 827(9th cir. En banc 2006) and its rather unique opinion. It was decided by a 15 member panel of the 9th circuit. The majority opinion, uniquely analyzes a 42 U.S.C. § 1981 action. Previously 1981 actions had been analyzed in the fashion of the employment

context; the majority opinion modifies the employment context, and comes up with a new and unique formula for analyzing school cases, with a less rigorous examination of the criteria for what might be styled as an affirmative action plan. The majority applied a modified Title 7 Employment Standard in the educational context under § 1981 (Doe at 839,840.) For instance, rather than looking at inequities of racial distribution within the context of the school or the employer, the court looked to the unspecified community as a whole.

There was a significant scholarly dissent Judge Bybee and Judges Kozinski, O'Scannlin, Tallman, Callahan, Riemer and Kleinfeld. The dissenting judges numbered 7. There was a concurring opinion by 5 Judges; those 5 Judges would have said that the discrimination by Kamehameha was political not racial. It would appear that such concurring opinion is of no precedential value, as it was only subscribed to by 5 of the 15 Justices. In any event the unique theory that this discrimination would be political is not subscribed to by majority of the court.

Indeed, uniquely it appears that such theory had not even been briefed by the parties in the case. Such decision was subject to significant and piercing criticism. For instance, Justice Bybee indicates that Judge Fletcher states that

"Native Hawaiian" status is both a political <u>and</u> a racial classification." (Doe at 879-895, Sec III.)  This is a novel theory.

In any event, the Fletcher decision is a minority opinion; additionally is limited by its facts, to an educational setting.

As the 9th Circuit said the whole case in the <u>Malabed</u> decision concerning the racial classification concerning, or the attempt to classify the Inupiat Eskimo of the North Slope Borough; and by analogy the Inupiat Eskimos are the Northwest Arctic Borough, "this argument puts more weight on <u>Mancari</u> than it can bear."

In any event, the majority opinion modified the standard for a private employers affirmative action program to an educational context, and found that the actions of the Kamehameha School were not illegal under 42 U.S.C. § 1981. This case, clearly by its terms, does not apply to the employment context.

An Affirmative Action Program in an employment context has to demonstrate; 1), a history of past discrimination and plan of remedy; 2), not unduly burden the class of persons being discriminated against; and 3), have a object of

attaining some parody to the population as a whole and not maintaining any certain percentage.

Any purported plan of defendants violates all three criteria. Firstly, it is very interesting to note that the facts indicate that the preference policy was never written down. (See Teck opposition page 5)."Although Teck's policy has never been articulated in writing, it is widely understood and enforced at all levels of Red Dog operations. See, Somers depo at 82 (not written policy), (Teck Opposition at pages 4-5.) [6]

We do know some things about their plan; first of all it is racially based; second of all, by asserting that they have an affirmative action plan they are agreeing that they take race into account when making employment decisions. There is no demonstration by NANA or Teck of past discrimination in the Teck mine, and an affirmative action plan is to remedy past discrimination, without such, there can be no affirmative action plan.

Conitz is the minority in the NANA region, because the region is populated by over 90% Inupiat Eskimos. (Motion for Order of Rule of Law, Exhibit 9, page 270). Therefore you

---

[6] It should not seem remarkable to the court or anyone that Teck's policy is not written down, and one day, in relation to Mr. Conitz, the policy means that all shareholders receive preference at all jobs. This is what was told to Mr. Kells and this is what happened to Mr. Conitz. This is also what's reflected in the materials of NANA as attached to plaintiff's motion eg...First choice to all jobs goes to NANA shareholders. So their plan is not written down.

have an ethnic majority, Inupiat Eskimos, discriminating against and ethnic minority, white people and/or others. This cannot be an affirmative action plan <u>City of Richmond</u> v. <u>J.A.Croson</u> <u>Co.</u>, 488 U.S. 469, 505-06, 109 S.Ct. 706, 102 L. Ed. 2d 854 (1989)

Additionally, the plan cannot trammel on the rights of the subservient class. Yet time and again, NANA and Teck both say the goal of their shareholder preference plan is 100% shareholder hire at the mine. (See exhibit 4 Page 5; Exhibit 5 page 2; exhibit 6, page 3; exhibit 7, page 7)(Teck NANA agreement Exhibit 8, page 3 and page 5). Obviously there is simply no opportunity for a non shareholder to obtain a position with a goal of "maintaining" 100% shareholder hire, where as the goal is to maintain a percentage; especially since an exceptionably high and total percentage of 100%, a "so called" affirmative action plan is not legal or legitimate.

While perhaps the 100% goal, with no beginning and no end and no opportunity for other races; might fit the education based concurring minority opinion of Judge Fletcher in the case of <u>Kamehameha</u>, there is no precedential value for such plan in the employment context. Certainly approval of such a novel theory of law is not a likely lighting bolt, to come

from this court. The defendants have no affirmative action plan, they have not plead it as an affirmative defense in the case, they have produced no written plan, and they admit that no written plan exists. The defendant(s) do not even know where to look for the plan, Teck seems to want to depose the defendant (NANA's) unknown and yet to be named experts in this regard. (Teck Opposition page 23) Why NANA would have an expert to testify about viability of its own affirmative action plan; when Teck who is doing the discriminating would use, need or be covered by a purported NANA affirmative action plan makes no sense. Even if it did exist, it would baffle the mind as to how it would authorize Teck's discrimination on the basis of race. NANA, on the other hand, says "In sum, the record is not sufficiently developed to address whether Teck Cominco's shareholder preference policy qualifies as a lawful affirmative action plan." Accordingly, the Plaintiffs Motion for Ruling of Law, that the policy is unlawful is premature. (NANA Opposition page 15-16.)

So maybe Teck thinks that NANA has the plan, or maybe Teck thinks NANA experts can tell Teck that its plan is a good plan or maybe NANA thinks Teck has the plan, but Teck says they don't have any written plan.

These suggestions are incredible. No FRCP 56(f) continuance should ensue.

## Conclusion

NANA shareholder is a proxy for race; Teck has an admitted policy of preferring NANA shareholder. The court should rule that any preference for a NANA shareholder is illegal under Title 7, Title 18, and 42 U.S.C § 1981. The court is compelled to do so by and logic and reason as discussed above as well as otherwise; the case law, especially <u>Bonilla</u>, dictates such results as well. Teck and NANA's defenses as to 43 U.S.C. § 1626(g) do not exist, because there is no joint venture, and there is no 25% equity ownership of Teck by NANA.

There is no affirmative action plan. The defendant(s) can't produce copies of it or say it exists, and can't argue that it's valid because it doesn't exist. The court should enter its ruling of law in this case.

Respectfully submitted this 12TH day of March, 2008 at Fairbanks, Alaska.

LAW OFFICES OF KENNETH L. COVELL
Attorney for Plaintiff, Gregg Conitz

s/Kenneth L. Covell
712 8th Ave.
Fairbanks, AK 99701
Phone:  907.452.4377
Fax:  907.451.7802
E-mail:  kcovell@gci.net
Attorney Bar #:  8611103

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been
Served electronically, via ECF to the following attorney(s):
**Sean Halloran**
**Thomas M. Daniel – TDaniel@perkinscoie.com**
Dated: 03/12/2008
By:      /s/ Kenneth L. Covell
             Kenneth L. Covell