Sean Halloran
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska 99501
Phone: (907) 276-1592
Fax: (907) 277-4352
mail@hartig.com

Attorneys for Teck Cominco Alaska Incorporated

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

Gregg Conitz,

Plaintiff,

vs.

TECK COMINCO ALASKA, INC. and NANA REGIONAL CORPORATION,

Defendants.

Case: 4:06-CV-00015 RRB

**TECK COMINCO'S OPPOSITION TO SPOLIATION MOTION**

Invoking Civil Rule 37 and the inherent powers of the court, Mr. Conitz has moved the court to "dismiss" all defenses that Teck Cominco may assert in this litigation as a sanction for allegedly either not creating or losing a file of unspecified records pertaining to Mr. Zigarlick's decision to not promote Mr. Conitz to the

position of supervisor effective April 1, 2005. According to Mr. Conitz, Teck Cominco was required to both create and maintain the unidentified records for use in this litigation pursuant to 42 USC § 2000e - 8(c). The motion is frivolous and has been brought in bad faith. It should be denied. In accordance with the mandates of Civil Rule 37, the court is obligated to award Teck Cominco its costs for responding to this motion, and should do so without regard for the sanctions that Teck Cominco will separately request as a consequence of the plaintiffs' ongoing campaign of deceit and delay in this litigation.

**A. There Were No Records Pertaining To The Supervisor Position That Teck Cominco Was Required To Maintain For This Litigation Pursuant To 42 USC § 2000e - 8(c).**

Mr. Conitz asserts that Teck Cominco breached a duty arising pursuant to 42 USC § 2000e - 8(c) to maintain records for use in this litigation. Ignoring for the moment that Mr. Conitz cannot point to any records that were not both maintained and disclosed to him, he is necessarily wrong. There were absolutely no records pertaining to the supervisor position at issue that Teck Cominco was obligated by 42 USC § 2000e - 8(c) to preserve for use in this litigation. In relevant part, 42 USC § 2000e - 8(c) requires the following:

> ***Every employer***, employment agency, and labor organization subject to this subchapter ***shall*** (1) ***make and keep such records*** relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom ***as***

> ***the Commission shall prescribe by regulation or order***, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder. . . . If any person required to comply with the provisions of this subsection fails or refuses to do so, the United States district court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission, or the Attorney General in a case involving a government, governmental agency or political subdivision, have jurisdiction to issue to such person an order requiring him to comply.

[42 USC § 2000e - 8(c) (emphasis added).] This statute is fleshed out by the implementing regulations found at 29 CFR §§ 1602.12 and 1602.14, as follows:

> 12. Records to be made or kept.
> ***The Commission has not adopted any requirement, generally applicable to employers, that records be made or kept.*** It reserves the right to impose recordkeeping requirements upon individual employers or groups of employers subject to its jurisdiction whenever, in its judgment, such records (a) are necessary for the effective operation of the EEO–1 reporting system or of any special or supplemental reporting system as described above; or (b) are further required to accomplish the purposes of title VII or the ADA. Such record-keeping requirements will be adopted in accordance with the procedures referred to in section 709(c) of title VII, or section 107 of the ADA, and otherwise prescribed by law.

[29 CFR § 1602.12 (emphasis added).]

> 14. Preservation of records made or kept.
> Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the

> personnel action involved, whichever occurs later. . . . Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. The date of final disposition of the charge or the action means the date of expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated.

[29 CFR § 1602.14.]

Contrary to Mr. Conitz's representation, there are no particular records that Teck Cominco is required to create so as to comply with 42 USC § 2000e - 8(c). [29 CFR § 1602.12.] As to records it chose to create and keep, the requirement for maintaining them expired one year after Mr. Hanna was promoted. [29 CFR § 1602.14.] Mr. Hanna was promoted effective April 1, 2005. [Docket 58 at ¶ 17.] In accordance with the above provisions, Teck Cominco had no continuing obligation after April 1, 2006 to retain relevant records unless, prior to that date, someone filed a claim with the EEOC or a court asserting that the specific hiring decision at issue violated Title VII. [29 CFR § 1602.14.] No claim has ever been brought under Title VII relative to the decision to promote Mr. Hanna instead of Mr. Conitz. [See

Docket 57.] Although Teck Cominco believed at one time that Mr. Conitz had initiated an untimely claim with the EEOC, Mr. Conitz, through counsel, formally clarified that Teck Cominco was mistaken. [Exhibit B; Halloran Affidavit.] It was not until July 3, 2006 that Teck Cominco was first notified that Mr. Conitz was asserting claims relative to the decision to promote Mr. Hanna, and even then, only state law claims have been asserted with respect to that decision. [Halloran Affidavit; see Docket 1, 57.] As of April 1, 2006, any duty that Teck Cominco had to safeguard or preserve any records under 42 USC § 2000e - 8(c) had expired. Where there is no requirement to create any records, Teck Cominco cannot properly be sanctioned for failing to create any of the unspecified records that Mr. Conitz may intend to reference. Where Teck Cominco's duty to preserve the records it did keep expired on April 1, 2006, such that there was no duty under 42 USC § 2000e - 8(c) to preserve records by the time that this litigation was commenced, it cannot be sanctioned for failing to retain records in or after April 2006. The instant motion must be denied accordingly.

**B. There Are No Missing Records.**

In his motion, Mr. Conitz asserts that a "file prepared in conjunction with Ted Zigarlick's review of the various applicants" for the supervisor position remains missing. [Docket 125-2.] However, it is with good reason that Mr. Conitz fails to point to any specific record, data, or information that might no longer be in

existence as a result of being placed within that file. Mr. Conitz is very well aware and is attempting to hide from the court the fact that there is no missing information.

At Docket 125-5, Mr. Conitz attached excerpts of the deposition of Ted Zigarlick; specifically, pages 185 and 187. Had he also included page 186, the court would see that the missing file included only a single sheet of paper on which only the names of the applicants for the job were written. [Zigarlick depo. at 186.] The identities of the various applicants are not unknown in this litigation, are not in dispute or otherwise at issue, and, with the exception of the successful candidate and the plaintiff, have never been suggested to even be relevant to the claims that have been asserted. [Halloran Affidavit.] There is no evidence that has even conceivably been spoliated. By suggesting the contrary, the motion at bar is nothing less than a gross misrepresentation in a long line of deceit on the part of plaintiff's counsel. Teck Cominco's and the court's time is being wasted, and the instant motion should be denied.

**C. There Is No Prejudice To Conitz.**

According to Mr. Conitz, he is prejudiced because the missing file created by Mr. Zigarlick "would go far toward resolving what really happened at the meeting that resulted in his being passed over for a NANA shareholder". [Docket 125-2 at 4] Ignoring the fact that Mr.Zigarlick insists he unilaterally determined that

Mr.Conitz was unqualified for the position he sought, such that there was no "meeting" of the type referenced, and ignoring the fact that Mr. Zigarlick insists that no hiring preference was given or warranted with respect to his decision to award the job to Mr. Hanna, the fact that the missing file contained only a single sheet of paper on which only the names of the applicants was written necessitates that there is no prejudice to the plaintiff. The names of the applicants are all known, and the identity of those individuals does nothing to resolve "what really happened", whether in some unknown meeting or otherwise.

Mr. Conitz concedes that prejudice requires a showing that his ability to proceed to trial is somehow impaired. [Docket 125-2 at 4] He offers absolutely no facts to suggest that his case has in any manner been impaired as a result of Teck Cominco failing to preserve any evidence. There simply is no basis for the plaintiff's motion beyond his desire to frivolously delay this case and cause the defendants to incur needless costs. It should be denied accordingly.

### D.     The Plaintiff's Exhibits Manifest His Bad Faith.

As discussed above, the plaintiff chose to omit page 186 from his excerpt of the Zigarlick deposition, when that page made clear that his motion has no basis in fact. His Exhibit 1[1], which the plaintiff has chosen to not authenticate, is similarly employed by Mr. Conitz to misrepresent the volume of documents that were

supplied to Mr. Conitz in discovery. [See Exhibit A; Halloran Affidavit.] While his motion implies that relevant records have not been made available to him, the fact is that if Mr. Conitz had included all of the letter that is excerpted for his Exhibit 1, the court would have plainly seen that hundreds of documents pertaining to the claim asserted here by Mr. Conitz not only exist, but were produced both during and prior to this litigation. [Id.] Thousands of pages of documents have been turned over to plaintiff's counsel by Teck Cominco. [Id.] The careful creation of exhibits designed to misrepresent that fact evidences the bad faith that underlies the instant motion.

**E. Teck Cominco Must Be Awarded Its Cost Of Defending This Motion.**

Despite the fact that Civil Rule 37 allows sanctions to be imposed only when a party has violated a court order [Fed. R. Civ. P. 37 (6)], and despite the fact that no allegation has been made suggesting any court order has been violated, the instant motion was brought pursuant to Civil Rule 37. [Docket 125-2 at 3.] That Rule mandates that:

> If the motion is denied, the court . . . ***must***, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.

[Fed.R.Civ.P. 37(a)(5(B) (emphasis added).] In accordance with Rule 37, therefore,

1 Docket 125-3.

upon denial of the instant motion, Teck Cominco should be awarded its costs and fees relative to the preparation of its opposition. Total costs and fees attendant to this motion amount to $1,045. [Hallaoran Affidavit.] Teck Cominco should be awarded that sum from plaintiff's counsel accordingly.

DATED this 26th day of March, 2008.

By: ______________________
Sean Halloran

Certificate of Service

I hereby certify that on the 26th day of March, 2008 a true and correct copy of the foregoing was served on Kenneth Covell & Thomas Daniel by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

______________________
Hartig Rhodes Hoge & Lekisch PC