Sean Halloran
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska 99501
Phone: (907) 276-1592
Fax: (907) 277-4352
mail@hartig.com

Attorneys for Teck Cominco Alaska Incorporated


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE


| | |
|---|---|
| Gregg Conitz,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>TECK COMINCO ALASKA, INC. and<br>NANA REGIONAL CORPORATION,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case: 4:06-CV-00015 RRB


## TECK COMINCO'S REPLY TO OPPOSITION TO
## MOTION FOR SUMMARY JUDGMENT

At the May 15 status conference, the court ordered Mr. Conitz to file any

opposition he might have to Teck Cominco's summary judgment motion at Docket

91 by no later than June 9, 2008. [Docket 140.] Asserting that he is responding "to

the court's comments at the status conference", Mr. Conitz has filed a document

that he labels as a post-reply "supplemental pleading" in support of his own motion

(at docket 64) that the court denied during the May 15 conference. [Docket 141.] Teck Cominco assumes that the document filed by Mr. Conitz is intended to constitute his opposition to Teck Cominco's summary judgment motion at docket 91,[1] and replies accordingly herein.

A.    **Teck Cominco Remains Entitled To Judgment On The Federal and State Claims For National Origin Discrimination**.

Teck Cominco sought summary judgment on the federal and state claims for national origin discrimination on the basis that Mr. Conitz, Mr. Baker and Mr. Hanna all have the same national origin, and that Mr. Conitz's claims must fail accordingly. Mr. Conitz does not dispute that the allegation in his Complaint that he is from some European country is false, and he does not dispute that his national origin is the same as that of Mr. Baker and Mr. Hanna. [See Docket 141.] As discussed in Teck Cominco's motion, the law provides that there can not have been any discrimination on the basis of national origin where the successful and unsuccessful candidates share the same national origin. Mr. Conitz's claim is frivolous, and Teck Cominco remains entitled to summary judgment accordingly.

---

[1]    If Teck Cominco is wrong in this assumption, then the court must recognize that Teck Cominco's summary judgment motion at Docket 91 remains unopposed, despite the court's clear instruction directing Mr. Conitz to file any response that he may have. If the filing at Docket 141 is truly a supplemental filing supporting only Conitz's fully briefed (and previously denied) motion at Dockets 64 and 123, it is both inappropriate and impermissible, and should be stricken from the record.

**B.    Teck Cominco Is Entitled To Judgment On The Invasion Of Privacy Claim.**

Teck Cominco moved for summary judgment on Mr. Conitz's invasion of privacy claims on the basis that the undisputed facts in this case show that nobody at Teck Cominco ever intentionally opened personal mail addressed to him, and nobody at Teck Cominco ever read any mail addressed to him. These facts remain undisputed, and Teck Cominco remains entitled to judgment on the invasion of privacy claims accordingly.

**C.    Teck Cominco Is Entitled To Judgment On The State and Federal Claims For Retaliation.**

Teck Cominco moved for summary judgment on the claims for retaliation. As to the assertion that Mr. Conitz's receipt of previously opened mail constituted retaliation, Teck Cominco demonstrated not only that nobody at Teck Cominco ever intentionally opened any envelope that may have been addressed to Mr. Conitz, but also established that none of the people working at Teck Cominco who could have opened the envelopes at issue had any knowledge of Mr. Conitz's EEOC Complaint. As for the claim that Mr. Conitz was further retaliated against because he was not used as an acting supervisor after Mr. Draper was hired to run the mine, Teck Cominco established that Mr. Draper made a justifiable business decision to not use Mr. Conitz and others similarly situated to him as relief supervisors, and that the decision had nothing what so ever to do with Mr. Conitz having earlier complained to the EEOC. Mr. Conitz makes no effort to dispute the relevant facts. He cannot

establish causation, and summary judgment must be granted to Teck Cominco accordingly.

**D.    Teck Cominco Is Entitled To Judgment On The Claims For Racial Discrimination Relative To The Re-Hiring Of Mr. Baker And The Promotion Of Mr. Hanna.**

Teck Cominco moved for summary judgment on the basis that, as a matter of law, there can be no unlawful discrimination with respect to hiring decisions that merely selected the most qualified candidate over an unqualified candidate. Mr. Conitz has made no effort to refute that he was unqualified for the positions he sought and/or that Mr. Baker and Mr. Hanna were each the most qualified applicants for the positions into which they were hired. Teck Cominco is entitled to judgment as a matter of law, and summary judgment should be granted accordingly.

**E.    Where Teck Cominco Contributes Its Employees To The Red Dog Project, Federal Law Permits The NANA Shareholder Hiring Preference.**

Citing to <u>Reich v. Cominco Alaska</u>, 56 P.3d 18, 23 (2002), <u>Pankowski v. Cominco Alaska</u>, ASCHR C-91-093 (1993), and the Declaration of Ted Zigarlick, Teck Cominco established that the relationship between NANA and Teck Cominco is a type of joint venture under Alaska law, and showed that federal law permits Teck Cominco, as a participant in the Red Dog Project, to discriminate in favor of NANA shareholders when hiring personnel to work at the mine. [Docket 91.]

Although he makes no effort to dispute either the law or the facts, Mr. Conitz

asserts that NANA lacks an equity interest sufficient to meet the threshold

established by 42 USC § 1626. In this regard, he asserts that (1) defendant Teck

Cominco Alaska has not taken the name of any Native corporation as its own, (2)

non-party Teck Cominco Limited has a lease agreement with NANA,[2] and (3) there

is no evidence that NANA owns 25% of the outstanding shares of Teck Cominco

Alaska.

      Whether any corporation has adopted some variant of the name of an Alaska

Native corporation as its own is entirely irrelevant to the statutory exemption

created by 42 USC § 1626, for nothing in that statute requires or is conditioned

upon any such formality as Mr. Conitz imagines. [42 USC § 1626(g).] It is similarly

irrelevant whether any entity has a lease agreement with NANA and/or whether

NANA is a shareholder of Teck Cominco Alaska. Rather than asking whether

NANA owns stock in Teck Cominco, the court must ask whether NANA has an

interest in the Red Dog Project. The answer to that question is unambiguously yes.

[Zigarlick Decl.] Because NANA's interest in the Red Dog Project exceeds 25%, the

Red Dog Project, including Teck Cominco's participation in that Project, is exempt

---

      [2]      Although Mr. Conitz only asserts at Docket 141 that "Teck" has such a lease, at page 11 of Docket 123, Mr. Conitz asserts that it is Teck Cominco Limited that is the lessee he references. In fact, Teck Cominco Limited has never entered into any such lease. However, Teck Cominco American Incorporated signed a lease agreement with NANA in 1982, the Alaska Industrial Development and Export Authority entered into a lease with NANA in 1986, and Teck Cominco Alaska Incorporated became party to a lease agreement with NANA in 1988. Each of these entities' lease agreements with NANA continue to facilitate the Red Dog Project. None are relevant to this case.

from the Title VII prohibition against employment discrimination. Summary

judgment should be granted to the defendants accordingly.

### F.     Conitz Does Not Dispute That NANA Shareholders Are Not A Race-Based Group As A Matter Of Law.

Citing Ninth Circuit law, Teck Cominco showed that the statutory

organization of certain individuals into ANCSA corporations as shareholders was a

political and not a racial classification, and that Red Dog's hiring preference for

NANA shareholders is therefore a preference for the political grouping of persons

enrolled as shareholders and not a preference for any racial group. As articulated

by Teck Cominco in its motion, even if a preference for NANA shareholders was

applied in favor of Mr. Hanna or Mr. Baker (and Teck Cominco continues to assert

that it was not), where such a preference does not amount to race based

discrimination as a matter of law, summary judgment must be entered in favor of

the defendants on the racial discrimination claims. Mr. Conitz offers neither legal

authority nor facts to dispute that the enrollment of NANA shareholders is not

racially based. Teck Cominco remains entitled to summary judgment as a matter of

law.

### 1.     Mr. Baker Is Not An Alaska Native.

Not only must the court recognize that Mr. Conitz is wrong when he equates

NANA shareholder status as being synonymous with Alaska Natives (not all

Natives are NANA shareholders and not all shareholders are Natives) a particularly appropriate example was revealed in the discovery conducted by Mr. Conitz in conjunction with preparing his opposition to Teck Cominco's summary judgment motion. Mr. Baker is not an Alaska Native. [Exhibit 3; 43 U.S.C. § 1602(b).] To the extent that Mr. Conitz asserts that re-hiring Mr. Baker constituted racially based discrimination in favor of Alaska Natives, his claim is necessarily without any basis and must be dismissed.

## 2.  <u>Malabed</u> Is Inapposite.

According to Mr. Conitz, <u>Malabed v. North Slope Borough</u> stands for the proposition that AS 18.80 necessarily precludes the application of a hiring preference in favor of NANA shareholders. Mr. Conitz is wrong. In <u>Malabed</u>, the court concluded that Title VII does not preempt the Alaska State Constitution's equal protection clause, where that clause prohibits discrimination by the State in favor of Alaska Natives. 335 F.3d 864, 866 (9th Cir. 2003).

The <u>Malabed</u> court had certified the question before it to the Alaska Supreme Court. <u>Malabed</u>, 335 F.3d at 866. The Alaska Supreme Court, in answering the certification, held that "the Borough's hiring preference violated the Alaska Constitution's guarantee of equal protection because the Borough lacked a legitimate governmental interest to enact a hiring preference favoring one class of citizens at the expense of others and because the preference it enacted [was] not

closely tailored to meet its goals." <u>Malabed v. N. Slope Borough</u>, 70 P.3d 416, 427-
28 (Alaska 2003).  As stated by the court,

> We simply hold, in keeping with <u>Enserch</u>, that the borough has
> no legitimate basis to claim a general governmental interest in
> enacting hiring preferences favoring one class of citizens over
> others; and we find that the borough has failed to identify any
> source of a legitimate, case-specific governmental interest in the
> preference it actually adopted -- a hiring preference favoring
> Native Americans.

70 P.3d at 426.

The Alaska court's holding in <u>Malabed</u> is not applicable to Teck Cominco or

hiring preferences at the Red Dog Project.  The court limited its holding to entities

of state government; its equal protection analysis is not applicable to private sector

corporations; and unlike <u>Malabed</u>, the hiring preference at issue here does not

distinguish between individuals based on race.  Moreover, the Alaska court was

careful to note that if a political classification of persons -- such as exists with

NANA shareholders -- had been at issue in <u>Malabed</u>, "the ordinance might [have]

avoided problems with the Alaska Constitution's bar against racial discrimination."

<u>Id</u>. at 420.  Furthermore, the court reasoned that if those who were preferred under

the ordinance under review by that court had a "unique legal status", the

defendants might have avoided the equal protection challenge.  <u>Id</u>.  Here, of course,

NANA shareholders, who were assigned inalienable stock [<u>see</u> 43 U.S.C. § 1629c] by

an Act of Congress in a corporation charged by federal law with the task of

furthering the interests of Alaska Natives [43 U.S.C. § 1606(r)], have such a unique legal status.

Building upon the work of the Alaska Supreme Court, the Ninth Circuit Court recognized in <u>Malabed</u> that Title VII did not preempt the Alaska constitution. 335 F.3d at 873. Mr. Conitz asks this court to now leap to the conclusion that the prohibition against racial discrimination in AS 18.80.220 therefore precludes any shareholder hire preference in place at Red Dog Mine. The hurdle to which Mr. Conitz's argument must succumb, however, is that a preference for NANA shareholders cannot be equated with a preference for Alaska Natives. As shown in Teck Cominco's motion, and as referenced above, Ninth Circuit case law has established that the statutory organization of certain individuals into ANCSA corporations as shareholders was a political and not a racial classification, and any preference for NANA shareholders is necessarily a preference for the political grouping of persons enrolled as shareholders in NANA Regional Corporation and not a preference for any racial group. <u>Alaska Chapter, Associated General Contractors, Inc. v. Pierce</u>, 694 F.2d 1162, 1169 n10 (9th Cir. 1982); <u>Morton v. Mancari</u>, 417 U.S. 535 (1974)[3]; <u>Doe v. Kamehameha Schools/Bernice Pauahi</u>, 470

---

[3]    Employment preference for "Indians" is not an unconstitutional racial preference because it is not directed toward the racial group consisting of Indians, but rather is applicable only to the political group consisting of members of federally-recognized tribes, thus excluding some persons who were racially classified as Indians. <u>Morton</u> at 554 n.24. Here, the political group consisting of NANA shareholders similarly excludes most members of the much larger racial groups of Aleuts, Indians and Eskimos who qualify as Alaska Natives.

F.3d 827, 849-856 (9th Cir. 2006) (En banc; W. Fletcher, Pregerson, Reinhardt, Paez, and Rawlinson, concurring) (preference for any group that is political rather than racial in composition does not violate § 1981 as a matter of law). Alaska law precludes discrimination on the basis of race. [AS 18.80.220.] It does not preclude distinctions drawn on the basis of the political classification of persons enrolled as shareholders in the corporation that owns the minerals being mined at Red Dog. [Id.] Malabed is entirely irrelevant to the case at bar. The defendants are entitled to summary judgment, and the court should grant it accordingly.

a.    **Alaska's Human Rights Commission Has Determined That Teck Cominco's Preference For NANA Shareholders Is Lawful.**

In its motion, Teck Cominco established that the Alaska State Commission for Human Rights has expressly determined that the hiring preference given by Teck Cominco to NANA shareholders at Red Dog Mine does not constitute unlawful discrimination under either Alaska or federal law. Pankowski v. Cominco Alaska, ASCHR C-91-093 (1993). The Commission has consistently interpreted Alaska and federal law to permit shareholder hire preferences by Native Corporations and their subsidiaries as well as by the joint ventures in which they participate. E.G. Mortenson v. Alutiiq Management Services, LLC, ASCHR C-04-095 (2005).[4]

---

[4]    For the convenience of the court, a true and correct copy of the Mortenson decision is attached as Exhibit 4.

Although Mr. Conitz ignores the Commission's interpretation of the statute it is charged with enforcing, he asserts that shareholder hire preferences must be illegal under Alaska law because the Title VII exemption for Native Corporations and the joint ventures in which they participate does not preempt Alaska's anti-discrimination law. [Docket 141 at 4.] Mr. Conitz is simply mistaken as to the reasons why shareholder hiring preferences are not offensive to AS 18.80. Where AS 18.80.220 prohibits racial discrimination, and where the law makes clear that Red Dog's NANA shareholder hire preference cannot be equated with any racial preference, the presence or absence of preemption is simply irrelevant. Mr. Conitz cannot prevail under AS 18.80 because nothing in AS 18.80 precludes shareholder hire policies. Summary judgment should be granted to the defendants accordingly.

**3.    § 1981 Does Not Preclude A Shareholder Hire Preference.**

Mr. Conitz argues that even if the shareholder preference at Red Dog is not barred by Title VII, it is barred by 42 U.S.C. § 1981. For a variety of reasons, he is wrong.

Mr. Conitz's § 1981 claim is based upon the theory that Red Dog's NANA shareholder hire preference has a disparate impact on non-Native employees of Teck Cominco and is therefore unlawful.[5] He has no evidence to suggest that any

---

[5]     Bonilla v. Oakland Scavenger, 697 F.2d at 1303, upon which Mr. Conitz relies, holds that shareholder preference policies, being facially race neutral, must be analyzed under a disparate impact, and not disparate treatment, theory.

such disparate impact actually exists.[6]  Even if he had evidence, however, this court would have to recognize that his claim is entirely without merit as a matter of law.  The disparate impact theory of discrimination is not applicable under 42 U.S.C. § 1981 because that statute encompasses only intentional and disparate treatment discrimination.  Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982).  Moreover, disparate impact theories of liability under other discrimination laws are not meant to encompass claims brought by members of majority groups not historically victimized by discrimination, such as white males.  Livingston v. Roadway Express, Inc., 802 F.2d 1250, 1252 (10th Cir. 1986).  To the extent that Mr. Conitz seeks liability under a disparate impact theory, his claim must fail as a matter of law, and judgment should be entered in favor of the defendants.

Mr. Conitz asserts that Aleman v. Chugach Support Services, Inc. compels the court to rule in his favor with respect to his § 1981 claim.  [Docket 141 at 4.]  He is wrong.  Nothing in Aleman addresses the merits of that claim.  To the contrary, with respect to the issue of whether § 1981 claims against Native employers are preempted by the exception embodied in Title VII, the Aleman decision serves only to create a split between the circuits.  The 10th and 11th Circuit Courts have each

---

[6]    Teck Cominco asserts that if the relevant data were presented to the court, it would show that Alaska Natives are significantly under-represented in the Red Dog work force relative to the racial composition of the local population, while white males are significantly over-represented.

clearly adopted the legal proposition that plaintiffs may not "circumvent the Title

VII bar against race discrimination claims based on a tribe's Indian employment

preference programs simply by allowing a plaintiff to style his claim as a § 1981

suit." Taylor v. Alabama Intertribal Council, 261 F.3d 1032, 1035 (11th Cir. 2001),

cert. denied, 535 U.S. 1066 (2002); Wardle v. Ute Indian Tribe, 623 F.2d 670, 673

(10th Cir. 1980). District courts in other circuits, and the weight of authority,

concur: "Given Congress's clear intent to exempt tribes from employment

discrimination suits under the more specific later statute, Title VII, and the general

rule that specific statutes prevail over general ones, courts have dismissed

employment discrimination suits grounded in § 1981." Cohen, *Cohen's Handbook of*

*Federal Indian Law* § 21.02; see e.g. Stroud v. Seminole Tribe of Florida, 606 F.

Supp. 678, 680 (S.D. Fla. 1985). With its Aleman decision, the Fourth Circuit Court

now stands alone in rejecting this proposition. However, this court need not grapple

with how the Ninth Circuit Court would address this issue.[7] The undisputed status

of NANA shareholders as a political and not a racial group means that § 1981, by

its own terms, is entirely irrelevant. No exemption from § 1981, whether through

Title VII or otherwise, is necessary. See Sagana v. Tenorio, 384 F.3d 731, 738 (9th

Cir.2004) ("the guarantee that 'all persons' may enjoy the same rights that 'white

citizens' enjoy does not protect against discrimination on the basis of ... political

---

[7]    The undersigned is aware of no reported decisions in this Circuit. In most cases in which the issue might arise, sovereign immunity is also a factor. Application of sovereign immunity typically moots this issue, such that courts of this Circuit have not faced it.

affiliation."); <u>Keating v. Carey</u>, 706 F.2d 377, 384 (2d Cir.1983) ("In light of the Court's interpretation, the legislative history, and the express language of the statute, we hold that § 1981, however generously construed, does not prohibit discrimination on the basis of political affiliation.") As a matter of law, Mr. Conitz's § 1981 claim must fail, and summary judgment should be granted to the defendants accordingly.


**G.    Bonilla Is Irrelevant.**

According to Mr. Conitz, <u>Bonilla v. Oakland Scavenger Co.</u> is dispositive of the issues in this case. Once again, Mr. Conitz is wrong. In <u>Bonilla</u>, employees of the Oakland Scavenger Company were offered shares in the employer company if they were of Italian ancestry, but not if they had a different racial background. Once shares had been issued to them, the terms and conditions of their employment were substantially enhanced. The court concluded that the practice of favoring one racial group over others in this manner violated Title VII. By contrast, the case at bar involves a hiring preference that is expressly exempted from the reach of Title VII and involves persons who are affected by virtue of a political and not a racial classification.

Mr. Conitz's argument that there is a public policy "of equal opportunity in employment" [Docket 141 at 5] ignores the fact that Congress created specific exemptions in Title VII that were intended to allow affected Natives to obtain an

opportunity "to enter the service of their own people without the necessity of competing with white applicants for these positions". <u>Morton v. Moncari</u>, 417 U.S. 535, 544 (1974), <u>quoting</u> 78 Cong. Rec. 11729. Title VII, § 1981, and AS18.80.220 each permit the employment preference enjoyed by NANA shareholders hired to work at Red Dog. The cases Mr. Conitz cites simply do not stand for any contrary proposition, and summary judgment should be entered in favor of the defendants.

## H.    <u>Penobscot Nation</u> Is Bad Law.

Mr. Conitz cites <u>Penobscot Nation v. Fellencer</u>, 999 F. Supp. 120 (D.Me. 1998) for the proposition that the Penobscot Nation specifically, and Native entities generally, are not exempt from employment discrimination provisions. <u>Penobscot Nation</u>, which was a sovereign immunity case, was reversed by the First Circuit Court in <u>Penobscot Nation v. Fellencer</u>, 164 F.3d 706 (1st Cir. 1999). The Circuit Court held in that case that <u>Morton v. Mancari</u>, 417 U.S. at 553, required a recognition that employment policies of affected Native entities are of fundamental importance and cannot be subjected to the adjudication of employment discrimination claims. 164 F.3d at 713. Mr. Conitz is plainly wrong to assert a contrary proposition.

I.    <u>**Wampanoag Tribe**</u> **Is Irrelevant.**

Mr. Conitz cites to <u>Wampanoag Tribe of Gay Head v. Massachusetts</u>

<u>Commission Against Discrimination</u> (in which the court enjoined the Commission

from seeking to adjudicate any claims against the Tribe) for the proposition that the

Congress "has no problem" abrogating sovereign immunity when it wishes to do so.

Sovereign immunity is not in any manner an issue in this case, and the

<u>Wampanoag Tribe</u> decision is entirely irrelevant. As with the other cases cited by

Mr. Conitz, it offers no basis for precluding summary judgment in favor of Teck

Cominco and NANA. The court should enter summary judgment accordingly.

DATED this 12th day of June, 2008, at Anchorage, Alaska.

HARTIG RHODES HOGE & LEKISCH, PC
Counsel for Defendant
    Teck Cominco Alaska Incorporated


By:  _____
     Sean Halloran


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the ___ day of June, 2008
a true and correct copy of the foregoing was served
on Kenneth Covell & Thomas Daniel by electronic
means through the ECF system as indicated on
the Notice of Electronic Filing.

_____
Hartig Rhodes Hoge & Lekisch PC