1              IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF ALASKA

3     _____

4     GREGORY CONITZ,              )
                                   )          **ORIGINAL**
5           Plaintiff,             )
                                   )
6     vs.                          )
                                   )
7     TECK COMINCO, ET AL.         )
                                   )
8           Defendant.            )
      _____)
9     Case No. 4:06-CV-00015

10

11                    STATUS HEARING BEFORE
                THE HONORABLE RALPH R. BEISTLINE
12

13                    December 21, 2007

14

15    APPEARANCES:

16    For Plaintiff:    Kenneth L. Covell
                        712 8th Avenue
17                      Fairbanks, Alaska 99701
                        (907) 452-4377
18
                        Donald F. Logan
19                      Box 73162
                        Fairbanks, Alaska 99707
20                      (907) 590-4341

21    For Defendant     Sean Halloran
      Teck Cominco:     HARTIG RHODES HOGE & LEKISCH
22                      717 K Street
                        Anchorage, Alaska 99501
23                      (907) 276-1592

24

25


EXHIBIT
PAGE 1 OF 33

```
 1   APPEARANCES CONTINUED:

 2

 3   For Mr. Kells:    Jason Beatty
                       P.O. Box 70301
 4                     Fairbanks, Alaska 99707
                       (907) 452-4377
 5

 6

 7   For NANA:         Thomas M. Daniel
                       (via speaker phone)
 8                     PERKINS COIE, LLP
                       1029 West 3rd Avenue, Suite 300
 9                     Anchorage, Alaska 99501
                       (907) 279-8561
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 1
PAGE 2 OF 33

1          PROCEEDINGS

2          THE COURT:  Good morning.  This is Conitz

3   versus Teck Cominco Alaska and NANA Regional

4   Corporation.  Has anybody been including NANA in the

5   caption of the case, or should they be?

6          MR. COVELL:  Should NANA be in the caption

7   of the case?

8          THE COURT:  I know that they have been

9   joined -- they have come in.

10          UNIDENTIFIED SPEAKER:  (Indiscernible).

11          THE COURT:  But I just don't see it

12   mentioned in any of the pleadings.  Is that an issue or

13   not?  Should the pleadings include Greg Conitz versus

14   Teck Cominco Alaska, Inc. and NANA Regional Corporation

15   or not?

16          MR. HALLORAN:  I believe they should, Your

17   Honor.

18          THE COURT:  Well, why don't we just start

19   doing that?

20          MR. COVELL:  Yeah, I don't know if -- well,

21   he is not suing them, but they have intervened, so maybe

22   the caption should reflect them as an intervener.

23          THE COURT:  Just so that things are clear.

24   Okay.

25          MR. COVELL:  But then the style of the


EXHIBIT 1
PAGE 3 OF 33

1    caption should be versus Teck Cominco, Inc. and NANA

2    Regional Corporation, Intervener.

3            THE COURT:  Right.  That's fine, so we know

4    what we're dealing with.  Okay.  That's that issue.

5            I just read again the third amended

6    complaint, and I think that's the last one.  That's the

7    one we're dealing with, right, the third amended

8    complaint?

9            MR. COVELL:  That is the last one that we

10   filed, Your Honor.

11           THE COURT:  No more anticipated?

12           MR. COVELL:  Depends on what I see in some

13   discovery of that.

14           THE COURT:  Okay.

15           MR. COVELL:  Your Honor, there may be

16   because there is another position Mr. Conitz has applied

17   for and recently denied in the last four weeks or so.

18           THE COURT:  Okay.  But it's the same general

19   theory?

20           MR. COVELL:  It's the same types of issues,

21   yes.

22           THE COURT:  Okay.  All right.  So I can hear

23   from each of the parties, or I can start talking.  How

24   do you want to do this?  This is a status conference.

25           UNIDENTIFIED SPEAKER:  I'm happy to talk,


EXHIBIT 1
PAGE 4 OF 33

1    Judge, or --

2             THE COURT:  Why don't you just remain seated

3    since we have got counsel on the telephone.

4             MR. COVELL:  Sure, Judge.  The issue that

5    has got to advance to litigation here, Your Honor, is

6    having the court have the defendant and the intervener,

7    if they so choose, to answer plaintiff's motion per

8    order of law in the case, established law in the case.

9             THE COURT:  Okay.  Let me think about that.

10   What are you saying now?  You filed a motion to

11   establish --

12            MR. COVELL:  We filed a motion, Judge, that

13   said that a stockholder preference of any kind is

14   illegal and the court should so order.

15            THE COURT:  Is that ripe?

16            MR. COVELL:  Of course, I'm right.

17            THE COURT:  No, is it ripe?

18            MR. COVELL:  Is it ripe?  Here is the issue

19   on whether it's ripe or not.  The defense wanted to

20   gather evidence in that regard.  It's our position that

21   gathering evidence in that regard is unnecessary.

22            Rather than quibble, we said, "Fine."  They

23   wanted more time.  As a result of that, we ended up

24   taking the Kells' deposition.  We are of the mind that

25   the Kells' deposition is complete.  The other parties



EXHIBIT 1
PAGE 5 OF 33

1  are of the mind it is not.

2            THE COURT:  Let me kind of take over here.

3  I'll hear from you first.  I haven't heard your voice

4  yet.

5            MR. HALLORAN:  Sean Halloran for Teck

6  Cominco.  Mr. Logan agreed with us that we should have

7  20 days after receiving the transcript of the Kells'

8  deposition to respond to their motion.

9            The deposition of Mr. Kells was started on

10  November 28th.

11            THE COURT:  How long did that go?  That was

12  a pretty long deposition, wasn't it?

13            MR. HALLORAN:  No, Your Honor.  It started

14  at 1:37 in the afternoon, because plaintiffs started

15  late, took numerous breaks during that time.  We were at

16  the courthouse in Healy, which we were told we had to be

17  out of at 4:30.

18            At 4:45, Mr. Logan continued the deposition,

19  saying that he would continue it until 6:30 that

20  evening.  I was not willing to come back at 6:30.  We

21  agreed to continue the deposition and to figure out a

22  time when it could be continued.

23            THE COURT:  Let me just say this:  You know,

24  I probably had one or two other cases in the last couple

25  of years that have been so disharm -- let's see -- is


EXHIBIT 1
PAGE 6 OF 33

1   that the right word?  Lack of harmony, and I don't like

2   it.

3          I'm not going to put up with it.  I don't

4   like these motions to compel, motions to do this,

5   motions to do this.  We have got a lawsuit.  We have got

6   a complaint.

7          Plaintiffs have alleged something.

8   Defendants deny it.  Let's get it litigated.  Okay.  I'm

9   not going to mess around with a bunch of junk.  Okay.

10         And, you know, that's just the way it is.

11  So let's get on top of this.  I see what plaintiffs are

12  alleging.  Defendants deny it.

13         What do we have to -- I want to get a trial

14  date.  I want to get this over with, because I'm not

15  going to run around in circles with you guys fighting

16  all the time.  I'm just not going to put up with it.

17         So -- you don't need to stand up.  So what

18  we -- let's start with the Kells' deposition.  Where

19  does Mr. Kells live?

20             MR. HALLORAN:  In Fairbanks.

21             THE COURT:  Okay.

22             UNIDENTIFIED SPEAKER:  Your Honor --

23             THE COURT:  What's everybody bouncing up and

24  down for?

25             MR. LOGAN:  Your Honor, this is Jason


EXHIBIT 1
PAGE 7 OF 33

1    Beatty.  He is Mr. Kells' lawyer.

2              THE COURT:  Okay.  We'll hear from you, sir.

3              MR. LOGAN:  This is his first court

4    appearance.

5              THE COURT:  Welcome.  How are you doing?

6    Happy holidays.

7              MR. BEATTY:  Same to you, Your Honor.

8    Mr. Kells --

9              THE COURT:  I have read your pleadings.

10   What do you want?  What's your position?

11             MR. BEATTY:  Our position is this:  That it

12   was unreasonable I had to file these motions with you.

13   Mr. Halloran was out of state, didn't return my calls.

14             THE COURT:  Bottom line, what do you want?

15             MR. BEATTY:  The bottom line is Mr. Kells is

16   available on the 27th or 28th of December.  He is also

17   available the 31st through the 8th of January.

18             THE COURT:  He lives in Fairbanks?

19             MR. BEATTY:  He lives in Fairbanks.

20             THE COURT:  Why did we depose him in Healy?

21             MR. BEATTY:  Because he works in Healy and

22   he is down there all the time.

23             THE COURT:  Like two weeks on, two weeks

24   off?

25             MR. BEATTY:  He comes to Fairbanks -- he


EXHIBIT 1
PAGE 8 OF 33

1  works there during the week down there and then he comes

2  back here on the weekends.

3        THE COURT:  Well, I can see why his

4  deposition is relevant.  I can't imagine why it would

5  take more than four to six hours to get completed.  You

6  are about half done with it.

7        MR. BEATTY:  Your Honor, Mr. Halloran, when

8  he was deposing Mr. Kells, asked the same question on

9  the last five pages of the deposition, four times, same

10  question, different mannerism, but four times.

11        THE COURT:  I don't know that much about

12  Mr. Kells, although I see his name is mentioned in the

13  complaint, so he apparently is a fairly important

14  witness.

15        MR. BEATTY:  Yes, sir, from my

16  understanding.

17        UNIDENTIFIED SPEAKER:  He is an important

18  witness, Your Honor.

19        THE COURT:  Let's just get his deposition

20  finished so that he can get on with his life and we can

21  get on with this litigation.

22        What's your preference?

23        MR. HALLORAN:  We asked Mr. Kells when was a

24  convenient time for him.  He indicated that he would be

25  in Fairbanks off work the entire week before Christmas.


EXHIBIT 1
PAGE 9 OF 33

1            We contacted Mr. Covell.  He was available

2     between the 17th and the 20th.  Mr. Daniels was

3     available on the 20th.  I was available on the 20th.

4            THE COURT:  So what happened?

5            MR. HALLORAN:  So we scheduled it on the

6     20th, and they filed a motion to quash.

7            THE COURT:  Why?

8            MR. LOGAN:  Judge --

9            THE COURT:  Wait.  Why?

10           UNIDENTIFIED SPEAKER:  Your Honor,

11    Mr. Halloran subpoenaed Mr. Kells to come to the

12    deposition.  He was not off that week.  He did not even

13    call Mr. Kells to see if he --

14           THE COURT:  Wait.  Wait.  Wait.  I don't

15    want a bunch of messing around.  When can he be

16    available for his deposition?

17           MR. BEATTY:  He can be available the 27th,

18    the 28th of December.

19           THE COURT:  Is that convenient for you?

20           MR. HALLORAN:  Is that in Fairbanks, Your

21    Honor?

22           THE COURT:  In Fairbanks.

23           MR. HALLORAN:  I can arrange my schedule to

24    be there on any of those days.

25           THE COURT:  Okay.  That's next week.



EXHIBIT 1
PAGE 10 OF 33

1           UNIDENTIFIED SPEAKER:  Yes, sir.

2           THE COURT:  Okay.  So we solved the problem.

3           MR. COVELL:  Judge, I'm going to be out of

4  state at that point, but I'll let Mr. Logan do the

5  deposition and if I can, I'm going to call in.

6           THE COURT:  Can you do it, Mr. Logan?  Sure,

7  Mr. Logan can do it.

8           UNIDENTIFIED SPEAKER:  All right.  That's

9  fine from our perspective.

10         THE COURT:  All right.  Let's just get it

11  done.  I mean, we kind of know what's going on.  It's

12  half over with, right, so let's just get it done.

13         Are you okay with that, sir?

14         UNIDENTIFIED SPEAKER:  Yes, sir.

15         THE COURT:  And counsel on the telephone,

16  how does that sound with you?

17         MR. DANIEL:  That sounds fine with me, Your

18  Honor.

19         THE COURT:  Okay.  Now, my problem is you

20  said 27th or 28th.  That gives room for argument.  When

21  is it going to be, 27th or 28th?

22         UNIDENTIFIED SPEAKER:  The 28th, Your Honor.

23         THE COURT:  Is that all right with you?

24         MR. HALLORAN:  That's fine with me, Your

25  Honor.



1         THE COURT:  Okay.  Where do you do it?

2         UNIDENTIFIED SPEAKER:  That's another

3   question.  Somebody has to check with Ms. D'Amour and

4   make sure she is available.

5         THE COURT:  Well, you want to check on that?

6   Anybody have a cell phone?

7         UNIDENTIFIED SPEAKER:  I got one.

8         THE COURT:  Okay.  You want to use it?

9         UNIDENTIFIED SPEAKER:  Sure.

10         THE COURT:  Let's go off the record.  We're

11   going to solve problems here today.  We're not going to

12   leave here with problems.

13         UNIDENTIFIED SPEAKER:  Thank you, Judge.

14               (Off record.)

15               (On record.)

16         THE COURT:  Okay.  We're back on the record.

17   Mr. Kells' deposition is going to continue here in

18   Fairbanks on Friday, the 28th of December at 10:30 at

19   the -- I think it was 10:30.  What did you say?

20         UNIDENTIFIED SPEAKER:  10:30 a.m.

21         THE COURT:  And the address is?

22         UNIDENTIFIED SPEAKER:  330 Wendell Street.

23         THE COURT:  What point in the deposition are

24   you?  Have you already done direct?  Are you now doing

25   cross?  Is that where you are?


EXHIBIT 1
PAGE 12 OF 33

1           MR. HALLORAN:  We are in the middle of

2    cross, Your Honor.

3           THE COURT:  Okay.  You can just pick it up

4    then.  Okay.  Will you be okay with that?

5           MR. BEATTY:  Yes, sir.

6           THE COURT:  Will you notify your client?

7           MR. BEATTY:  Yes, I will.  I have one final

8    question for the court.

9           THE COURT:  All right.

10          MR. BEATTY:  We could have worked this out

11   without wasting the court's time.  Mr. Halloran didn't

12   get back with me.  I would like to know about a motion

13   -- the motion that I filed on attorney's fees.

14          THE COURT:  Okay.  You had a motion -- you

15   are not a party to the litigation?  You just represent

16   the client, right?

17          MR. BEATTY:  Yes, sir.  I mean, it was

18   unreasonable for him to have to go through this.  If we

19   had got a phone call, we could have just worked it out

20   over the phone.

21          THE COURT:  So how much --

22          MR. BEATTY:  Two hours, Your Honor.

23          THE COURT:  And what's your position?

24          MR. HALLORAN:  First of all, Your Honor, I

25   asked Mr. Kells specifically on the 28th at his



EXHIBIT 1
PAGE 13 OF 33

1    deposition when he would be available, when it would be

2    convenient for him to have his deposition continued in

3    Fairbanks.

4              He told me the entire week before Christmas

5    was a good time for him. I wasn't available. I was out

6    of state. I was not contacted with regard to this

7    motion, but, you know, they are saying I should have

8    picked up the phone and called Mr. Kells again.

9              The reality is that Mr. Kells, at

10   Mr. Logan's instruction, has insisted that I not contact

11   him at all, except in Mr. Logan's presence.

12             MR. LOGAN:  Objection, Your Honor.

13             THE COURT:  When he is through talking, then

14   I'll hear you, because your name came up.

15             MR. LOGAN:  He is calling me a liar.

16             THE COURT:  No, he is not.  Go ahead.

17             MR. HALLORAN:  I mean, we did what we could,

18   Your Honor, to schedule this thing.  The motion was

19   filed before I was contacted.

20             He contacted my office.  He was told I was

21   in meetings in Seattle.  There was -- you know, I

22   learned of his motion long after it was filed.  It

23   wasn't a matter of him attempting to work something out

24   with me.

25             If he wanted something different, Your


EXHIBIT 1
PAGE 14 OF 33

1    Honor, we would have been happy to accommodate Mr. Kells

2    if it wasn't working out the way that Mr. Kells had told

3    us that it would.

4              THE COURT:  Why couldn't Mr. Kells do it as

5    scheduled?

6              MR. BEATTY:  He was working, Your Honor.

7              THE COURT:  Change of work plans or

8    something?

9              MR. BEATTY:  He was working.  He couldn't

10   take off work at that time.

11             THE COURT:  But at one time, he thought he

12   could.

13             MR. BEATTY:  But I wasn't there privy for

14   that conversation.  My understanding was that he was

15   never contacted and asked if he was available for that

16   time.

17             And as I said, I contacted Mr. Halloran's

18   assistant because he was out of town, and I told her I

19   had to file it by the end of Friday so that you could

20   get it because we were running out of time.

21             And she said she would try to get a hold of

22   Mr. Halloran.  He never got back to me, so I had to file

23   it.

24             THE COURT:  Okay.  Mr. Logan, your turn.

25             MR. LOGAN:  Your Honor, I have never, not


EXHIBIT 1
PAGE 15 OF 33

1  once, told Mr. Halloran not to talk with the other side,

2  with any other sides in this, and I sincerely --

3           THE COURT:  You couldn't do that anyhow,

4  could you?  He is not your client, is he?

5           MR. LOGAN:  Pardon?

6           MR. HALLORAN:  Approach the bench, Your

7  Honor.

8           THE COURT:  Mr. Kells is not your client, is

9  he?

10          MR. LOGAN:  I know, but I have interviewed

11 him, and the gentleman has just said that I told him not

12 to talk to him, and I never did that.

13          THE COURT:  All right.  He is going to prove

14 that you did.

15          MR. HALLORAN:  Your Honor, this is an e-mail

16 from Mr. Logan to Mr. Kells that he sent the night

17 following the start of the deposition in which he

18 suggested to Mr. Kells that it would be best if I only

19 contacted Mr. Kells in Mr. Logan's presence.

20          And then Mr. Kells then sent that e-mail to

21 me essentially indicating to me that he didn't want me

22 to contact him, that he was going along with Mr. Logan's

23 suggestion.

24          MR. LOGAN:  I have to read this before I can

25 respond.


EXHIBIT 1
PAGE 16 OF 33

1          THE COURT:  Okay.

2          MR. HALLORAN:  Your Honor, this is another

3    e-mail which I received from Don Logan.  I believe that

4    it was sent to me by mistake.  The context makes no

5    sense that it was actually intended for me, but I think

6    that shows the attitude of plaintiff's counsel in this

7    case when they are saying that the real objective here

8    is "to make the ass go to Healy".

9          THE COURT:  Okay.  Are you the ass?

10         MR. HALLORAN:  Apparently.

11         THE COURT:  Okay.  So there is obviously --

12   there is some conflict between counsel, but what about

13   Mr. Kells is in the middle of it.  So I'm trying to

14   figure out if his attorney is entitled to compensation

15   for having to file this motion.

16         MR. HALLORAN:  If so, I believe it should

17   come from plaintiff's counsel, Your Honor.

18         UNIDENTIFIED SPEAKER:  (Indiscernible).

19         THE COURT:  Mr. Covell?

20         MR. COVELL:  Judge, at the end of this

21   deposition, I felt that Mr. Halloran was just stretching

22   his time out.  He asked a number of questions.

23         We offered to continue it that night.  We

24   would have continued it the next morning.  He had other

25   obligations.  I tried to make arrangements to continue


EXHIBIT 1
PAGE 17 OF 33

1    it.

2            He decided to leave at the end of the

3    business day, which he is entitled to do.  And then he

4    sent me an e-mail and asked me if I was available the

5    week before Christmas, and I said I was, but I said, "I

6    don't know what Mr. Kells' availability is."

7            Then he sent me an e-mail.  He filed a new

8    subpoena and notice of deposition, which he can't do

9    without leave of the court, didn't properly serve

10    Mr. Kells with it, did it less than two weeks before the

11    date.

12            I sent him back an e-mail and said, "Is a

13    motion to quash necessary?"  He didn't respond to that.

14    So if there had been some communication, it would have

15    got worked out.

16            During the course of the deposition, it was

17    apparent to me that the likelihood of finishing the

18    deposition before Christmas was extremely low, and it

19    was my suggestion that it would be most practical to try

20    to do it in January.

21            If there had been some communication, it

22    could have been worked out.  Instead, Mr. Halloran chose

23    to force the situation into an unworkable mode.  And as

24    it turns out, Mr. Kells wasn't available then, and this

25    is why we ended up with the one motion and this

1   unnecessary bickering.

2                THE COURT:  How much do you get an hour?

3                MR. BEATTY:  $175 an hour, Your Honor.

4                THE COURT:  That's all?

5                MR. BEATTY:  I'm cheap, Your Honor.

6                THE COURT:  I guess.  So $175 from you, $175

7   from you before the deposition is taken again.  You

8   understand?  Plaintiff, defendant, you send this

9   gentleman 175 bucks.  Clear?

10               UNIDENTIFIED SPEAKER:  Yes, sir.

11               THE COURT:  All right.  Next issue.

12               MR. HALLORAN:  Do you want to hear from me,

13  Judge?

14               THE COURT:  Well, I want to get this case to

15  trial, because I'm not going to babysit you guys for the

16  next year and a half, I will tell you that.

17               MR. COVELL:  Thank you, Judge.  And I agree

18  with Your Honor.  Okay.  I want to see important issues

19  in this case get resolved.

20               THE COURT:  It's not a -- as I read it, the

21  issues are not very complicated.  They are almost legal,

22  aren't they?

23               MR. COVELL:  That's my point, Judge.  And

24  that's why I want the court to order Cominco and NANA,

25  if NANA chooses to answer, my motion.  We don't need the


EXHIBIT
PAGE 19 OF 33

1  Kells' deposition to do that.  It's a --

2        THE COURT:  But the Kells' deposition is

3  only going to be next week, so let's get it done and

4  20 days afterwards, they have to file an opposition.

5        MR. COVELL:  Here is what I see happening,

6  Judge.  Okay.  They are going to take the Kells'

7  deposition, they are going to make a cross-motion for

8  summary judgment.

9        That's going to involve fact issues.  They

10  have a witness in Vancouver, Canada.  And there has been

11  squabbling about whether or not he will be available in

12  the United States and issues to that effect.

13        I can see that becoming a morass.  We may or

14  may not want to develop our factual questions.  It's

15  fine -- if they want to file that motion, they can go

16  right ahead and do that, but what I want the court to do

17  is keep that separate from the clean legal issue that I

18  presented to the court, because it's my belief, and I

19  think it will be the court's belief, particularly if you

20  read the motion and think about it, that that's what

21  it's all about.

22        That's in NANA's motion to intervene.

23        THE COURT:  Is it possible for you in three

24  or four sentences to tell me what this whole case is

25  about?


EXHIBIT /
PAGE 20 OF 33

1          MR. COVELL:  Sure, Judge.  Teck Cominco has

2     a -- what they characterize as a shareholder preference

3     at the mine.

4          THE COURT:  That's legal or illegal?

5          MR. COVELL:  That's illegal.  And the reason

6     it's illegal is you got to be a shareholder in NANA to

7     get it.  To be a shareholder in NANA, you get that by

8     blood, with rare exception, adoption, marriage, things

9     of that case.

10          It amounts to a racial preference of

11     employment.

12          THE COURT:  So you said that's illegal?

13          MR. COVELL:  That's illegal.

14          THE COURT:  And then you have got a

15     retaliation claim too?

16          MR. COVELL:  Sure.

17          THE COURT:  And then you have got this --

18          MR. COVELL:  If Your Honor decides the

19     question that I posed in that motion is a shareholder

20     preference of any sort, and they have admitted that they

21     at least have some shareholder preference there, so the

22     question is of any sort illegal.

23          And if the court suggests --

24          THE COURT:  What's the case law say?

25          MR. COVELL:  Case law says yes.  I cited



EXHIBIT 1
PAGE 21 OF 33

1    four cases.

2             THE COURT:  Well, if you write in the case

3    law, I bet you they have a different view.  Maybe they

4    don't.

5             MR. COVELL:  I'm sure they do, Your Honor.

6    And that's why I would like Your Honor to settle that,

7    because, frankly, if Your Honor settles that one issue,

8    that's going to put an 80 percent narrower on the

9    litigation.

10            THE COURT:  Here is what we'll do.  You have

11   already got an agreement that 20 days after the Kells'

12   deposition is concluded they have to answer your motion,

13   so I'm not going to interfere with that.

14            And we don't have a deadline for when

15   motions --

16            MR. DANIEL:  Your Honor, I'm not able to

17   hear what you're saying.

18            THE COURT:  I'm sorry.  You must have gotten

19   too far away.  It's my fault.  I'm leaning back now.  I

20   forgot you were there.

21            20 days after this deposition -- the

22   deposition is next Friday, should be completed that day.

23   Within 20 days at the conclusion of that, you and, let's

24   see, Teck have to file oppositions on the pending motion

25   for summary judgment, 20 days after it's transcribed.


EXHIBIT  I
PAGE 22 OF 33

1        MR. HALLORAN:  That's correct, Your Honor.

2        MR. COVELL:  Technically, it's motion for --

3        THE COURT:  Whatever it's called.

4        MR. COVELL:  And the bulk of these

5   depositions --

6        THE COURT:  Technically, it probably should

7   be a motion for summary judgment on this issue, but we

8   know what we're talking about, right?

9        It will resolve this legal issue?

10       MR. COVELL:  That's the idea.

11       THE COURT:  Okay.

12       MR. DANIEL:  Although I would like to be

13   heard on that, Your Honor.  I don't think it resolves

14   anything.

15       THE COURT:  Well, maybe it won't.  I don't

16   know.  I haven't -- you know, I don't read motions

17   before they get ripe, so I don't want you coming in

18   thinking I know what you're all talking about.

19       But I know that you want to file a motion

20   and I know that parties are entitled to file motions,

21   and apparently there was an agreement that the

22   opposition didn't have to be filed until 20 days after

23   Kells' deposition was transcribed.

24       I want to stick with that.  Then I will get

25   that.  It's ripe.  I'll go to town on it.



1           And we'll have a decision pretty quick

2    because I don't like to delay these things.  Maybe there

3    will be other motions filed subsequently.  I will --

4    then there will be an opposition and I will get on top

5    of that.

6           I just want to get -- these are the kind of

7    cases that they fester the longer they lie, and so I

8    want to get on top of it.  I would like to see it tried

9    next summer.  Maybe that's impossible, but why not.

10          If necessary.  Maybe it's going to be

11   resolved legally.  I just don't -- you parties, you

12   people all know far more about all of these issues than

13   I do because my job is just to keep things flowing until

14   I got to start ruling on motions.  And I apparently am

15   about ready to have one before me.

16          I don't like it always being discovery

17   motions.  I want something with a little teeth in it.

18   Okay.

19          Mr. Covell, next.

20          MR. COVELL:  Your Honor, to go back to

21   discovery, there is a couple of issues, perhaps the

22   cleaner ones --

23          THE COURT:  I ruled on -- I gave you 26 more

24   interrogatories, didn't I?

25          MR. COVELL:  That's another question, Judge.


EXHIBIT 1
PAGE 24 OF 33

1    Thank you for doing that.  The question is, does it mean

2    they are supposed to answer what they have?  Does it

3    mean that we --

4              THE COURT:  What is so complicated?  Why do

5    you need so many interrogatories?

6              MR. COVELL:  One of the problems, Your

7    Honor, was I was unartful and I called the preference

8    the native hire preference and they denied it, so they

9    really needed to be rephrased as a shareholder

10   preference.  That was one of the problems.

11             The other problem, and Mr. Logan dealt with

12   this more than I, but we proposed the interrogatories

13   with sub-parts and then they came back and said well, we

14   have sub-parted --

15             THE COURT:  You know you can't do sub-parts.

16   You can turn them into 250,000 interrogatories.

17             MR. COVELL:  Right.  So that's part of the

18   problem as well.

19             THE COURT:  Just clean, concise

20   interrogatories, you ask them what you want them to tell

21   you, and then you send requests for admissions, clean,

22   concise, if that's what you want to do.  Get it on, get

23   it over with.

24             You know, listen, I was a litigator for a

25   long time.  I know about interrogatories.  I used to do



EXHIBIT l
PAGE 25 OF 33

1   them back in the days when it was unlimited

2   interrogatories, but that's not the rule and that's not

3   where we are anymore.

4              Clean, concise, get them done, get them over

5   with.  And then, you know, the idea is not to try to

6   badger one another, or make someone go to Healy just

7   because it's inconvenient.  That's not the idea.

8              The idea is to get it done so I can get it

9   ruled on and get it over with.

10             MR. COVELL:  The point of going to Healy was

11  not to make --

12             THE COURT:  I know, but that's not what they

13  think.

14             MR. COVELL:  So that's one issue.  So what I

15  understand the court to say is that we should repropose

16  them then; is that right?

17             THE COURT:  Well, didn't you get 26 answers?

18  Didn't they answer down to 26 of them and then stop?

19  Isn't that what you told me?

20             MR. COVELL:  Yes, Your Honor.

21             THE COURT:  Okay.  Well, then you can ask 26

22  more interrogatories.  I would presume that you wouldn't

23  ask again what you have already had answered.

24             MR. COVELL:  Of course, Your Honor.

25             THE COURT:  So you get 26 more


EXHIBIT (
PAGE 26 OF 33

1    interrogatories, so you get a total of 52.  You already

2    used 26 of them.

3                MR. LOGAN:  (Indiscernible) -- he

4    specifically asked me if we could have the deposition in

5    Healy.  I was trying to be a nice guy to the deponent.

6                THE COURT:  These issues, I know they are

7    real important to you people, but I just want to focus

8    on the legal issues.  I don't take things personal.

9                I have litigated long enough to know how

10   these things work out.  Okay.

11               MR. COVELL:  Another issue regarding

12   discovery, Your Honor, is I have never had an intervener

13   in a case before.  I don't know what the NANA status is.

14               Do they participate fully with discovery?

15   Do they ask questions at the depos or not?  And then do

16   we send them -- do we exchange Rule 26?

17               THE COURT:  What's NANA's position on that?

18               MR. DANIEL:  Our position is that we should

19   be able to participate in discovery and depositions like

20   any other party.

21               THE COURT:  So that means you would be

22   subject to interrogatories like any other party then.

23   Is that what you are saying?

24               MR. DANIEL:  Yes, if they are relevant, yes.

25               THE COURT:  Of course.  I don't want any

EXHIBIT 1
PAGE 27 OF 33

1  irrelevant stuff.  Does that answer your question?

2           MR. DANIEL:  That's the question.  They are

3  in like a party for discovery?

4           THE COURT:  That's what they understand, and

5  apparently that's what you understand as well.

6           MR. COVELL:  Mr. Daniel, you and I can talk

7  about disclosures hopefully today, right?

8           MR. DANIEL:  Sure.

9           MR. COVELL:  Okay.  All right.  Your Honor,

10  we had another interrogatory regarding somebody that had

11  the job before Mr. Conitz who is deceased.  We had asked

12  for personnel records in that regard.

13           Teck has refused, so that's going to bring

14  another motion to compel, unfortunately.

15           MR. HALLORAN:  Your Honor, we did not

16  refuse.  We said that the records are available for

17  production and all he has to do is call my office and

18  make arrangements and we'll get him the documents that

19  he wants.

20           THE COURT:  You mean, you are going to give

21  him personnel records of someone that's deceased?

22  Aren't those confidential?

23           MR. HALLORAN:  Your Honor, what we said was

24  that he'll have to extend the agreement that we already

25  have.  We produced the personnel records of all the


EXHIBIT /
PAGE 28 OF 33

1  people that we thought were relevant.

2              THE COURT:  Completely confidential?

3              MR. HALLORAN:  We said that they can't take

4  confidential information and use it in any regard, and

5  that at the end of the case, they have to return all

6  copies of all the personnel records that they have.

7              THE COURT:  And if they want to use it, they

8  can --

9              MR. HALLORAN:  We told him that if they

10  would agree to that with respect to this person who we

11  believe is totally irrelevant, we said why we think it's

12  irrelevant, but if they really want them, to avoid a

13  fight, we said we'll give them to you.

14              You just have to call and make this

15  agreement.

16              THE COURT:  Where are these records

17  physically?

18              MR. HALLORAN:  They are at Red Dog Mine.

19              THE COURT:  So what do you say about that?

20              MR. COVELL:  I'll sign the agreement.  Do we

21  have to go to the mine to get them or go to Anchorage or

22  will they send them to us?

23              THE COURT:  You want him to go to Red Dog to

24  get them?

25              MR. HALLORAN:  No.  The records are at Red


EXHIBIT
PAGE ___ OF 33

1  Dog. We'll get copies for him. We'll say, you know, it

2  appears -- it's whatever, 10 cents a page or 15 cents a

3  page. We can get copies made for you, send us a check,

4  tell us that you're going to return them at the end of

5  the case and that you are not going to use any of the

6  confidential information, make it public in any way.

7          THE COURT: Other than with a court order in

8  this trial.

9          MR. HALLORAN: Right.

10          THE COURT: Yeah.

11          MR. COVELL: That's fine. We'll do that

12  then.

13          MR. HALLORAN: That's what we told him, Your

14  Honor.

15          THE COURT: Solved another problem.

16  Anything else? All right. Mr. Covell, anything else?

17          MR. COVELL: I think that's all I have.

18          THE COURT: Mr. Logan, anything else?

19          MR. LOGAN: No, Your Honor.

20          THE COURT: Sir, your turn.

21          MR. HALLORAN: Nothing that we need to

22  resolve here, Your Honor.

23          THE COURT: What do you think -- I guess

24  it's too early to talk about the trial date because I

25  got to see what this motion is all about, but why not


EXHIBIT 1
PAGE 30 OF 33

1    get this resolved towards the end of the summer if there

2    are questions of fact that have to be litigated.

3            Is that unreasonable?  I'm not giving a

4    trial date today.

5            MR. HALLORAN:  Summer is going to be

6    impossible for me.  I have a trial in front of Judge

7    Sedwick that starts May 19 and --

8            THE COURT:  The Red Dog one, that big old

9    thing?

10            MR. HALLORAN:  Yes.

11            THE COURT:  Is that going?

12            MR. HALLORAN:  It appears to be.

13            THE COURT:  Well, then fall.  Okay.

14            MR. HALLORAN:  Judge Sedwick has told me not

15    to let anything else get scheduled until October.

16            THE COURT:  I wouldn't want to do that

17    either.

18            MR. HALLORAN:  And we will be seeking a

19    change of venue if there is to be a trial in this case

20    to Anchorage, simply because Mr. Kells is the only

21    witness who has any connection whatsoever to Fairbanks.

22            THE COURT:  Just file that in due course.

23    It doesn't matter to me.  I'm back and forth all the

24    time, so that's a motion -- you got to file it within

25    the time frame, appropriate time frame though.



EXHIBIT 1
PAGE 31 OF 33

1         MR. HALLORAN:  All right.

2         THE COURT:  Anything else?  How about

3   Mr. Daniel?

4         MR. DANIEL:  Nothing else for me, Your

5   Honor.

6         THE COURT:  Well, I hope you all have a

7   wonderful holiday.  Just make sure you get this attorney

8   here his money so he can have a holiday as well.  Okay.

9         You're off the hook.  I guess you are going

10  to have to contribute.  Thank you all very much.

11                    (Off record.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25


EXHIBIT 1
PAGE 32 OF 33

1                    TRANSCRIBER'S CERTIFICATE

2

3      I, SONJA L. REEVES, hereby certify that the foregoing

4   pages numbered 1 through 33 are a true, accurate and

5   complete transcript of proceedings in Case No.

6   4:06-CV-00015 transcribed by me from a copy of the

7   electronic sound recording to the best of my knowledge

8   and ability.

9

10

11   _27 Mar 08_                    _Sonja L. Reeves_

12   DATE                      SONJA L. REEVES, TRANSCRIBER

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 1
PAGE 33 OF 33