Sean Halloran
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska 99501
Phone: (907) 276-1592
Fax: (907) 277-4352
mail@hartig.com

Attorneys for Teck Cominco Alaska Incorporated

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| Gregg Conitz,<br><br>        Plaintiff,<br><br>vs.<br><br>TECK COMINCO ALASKA, INC. and<br>NANA REGIONAL CORPORATION,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case: 4:06-CV-00015 RRB |

**TECK COMINCO'S MOTION FOR ATTORNEY FEES**

This court has already determined that the defendants are entitled to recover costs from the plaintiff. [Docket 146.] As part of its recovered costs, Teck Cominco seeks to recover fees in the amount of $78,350.80. Teck Cominco asks that they be taxed jointly and severally against the plaintiff and his counsel.

## LEGAL STANDARDS

In any action or proceeding under Title VII, the court, in its discretion, may allow the prevailing party "a reasonable attorney's fee (including expert fees) as part of the costs". [42 USC 2000e-5(k).] The court similarly has discretion to award fees to prevailing parties relative to claims brought under 42 U.S.C. § 1981. [42 U.S.C. § 1988(b).] In Christiansburg Garment Co. v. Equal Employment Opportunity Commission, the Supreme Court outlined standards to guide the district court's discretion when deciding whether to grant attorney's fees to a prevailing defendant in a Title VII action. The Court explained the standard:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

Christiansburg Garment Co., 434 U.S. 412 (1978); EEOC v. Bruno's Restaurant, 976 F.2d 521 (9th Cir. 1992). The same standard (frivolous, unreasonable, or without foundation) applies when awarding fees to a prevailing defendant under § 1988. United States ex rel. Chunie v. Ringrose, 788 F.2d 638 (9th Cir. 1986); Elks Nat'l Found. v. Weber, 942 F.2d 1480, 1485 (9th Cir. 1991) (fees appropriate under § 1988 if the action is "meritless, in the sense it is groundless or without foundation").

To the extent that state law claims overlap with federal law claims and fall outside the standard for awarding fees to a prevailing defendant, state law governing attorney fees to prevailing defendants is generally preempted by federal law. Hubbard v. SoBreck LLC, ___ F.3d ___, 2008 LEXIS 13563 (9th Cir. June 27, 2008). Otherwise, where the State and federal claims do not overlap, it has long been established that the court is obligated to apply state law

governing awards of attorney fees to defendants who prevail on state law claims. Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 259 n.31 (1975); Klopfenstein v. Pargeter, 597 F.2d 150, 152 (9th Cir. 1979); Matter of Sparkman, 703 F.2d 1097, 1099 (9th Cir. 1983). In Alaska, attorney fee awards are governed by the State's Civil Rule 82, under authority of AS 09.60.010. Klopfenstein v. Pargeter, 597 F.2d 150, 152 (9th Cir. 1979); Ak.R.Civ.P. 82. Rule 82 provides a default recovery of 20% of actual fees to defendants who prevail without trial, and allows the percentage to be increased under appropriate circumstances. [Ak.R.Civ.P. 82(b)(2) and 82 (b)(3).]

In addition to awarding fees as part of the costs taxed against a plaintiff, fees may be assessed against an attorney under 28 U.S.C. §1927 for unreasonably multiplying the proceedings. As well, they may be taxed against an attorney to sanction bad faith conduct. Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed.2d 27 (1991) (inherent power to impose sanctions).

## ARGUMENT

Mr. Conitz initially brought both Title VII and state law claims under AS 18.80 for discrimination and retaliation with respect to Teck Cominco's decision to hire Mr. Mike Baker, as well as state law claims for invasion of privacy. [Docket 1.] He later added claims under state

law relative to the decision to promote Mr. Hanna. [Docket 19, 44.[1]] At the same time, he added federal claims under § 1981 relative to both the Baker and Hanna hiring decisions. [Id.]

### A.  Teck Cominco Is Entitled To Recover Fees Attendant To Federal Law Claims.

In determining whether a plaintiff's unsuccessful civil rights claim was frivolous or without foundation, "courts should consider several factors including (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." EEOC v. L.B. Foster Co., 123 F.3d 746, 751 (3rd Cir. 1997); Barnes Found. v. Township of Lower Merion, 242 F.3d 151, 158 (3rd Cir. 2001); Myers v. City of W. Monroe, 211 F.3d 289, 292 (5th Cir. 2000); Walker v. NationsBank N.A., 53 F.3d 1548, 1559 (11th Cir. 1995).

Here, Mr. Conitz adamantly refused to make any attempt to establish a prima facie case. Even when faced with an order directing him to respond to a pending summary judgment motion [Dockets 139, 140], he only argued his own already denied motion, hoping that the court would resolve the issues in this case in a factual vacuum. [Docket 141.] Teck Cominco can only assume that his intransigence in this regard resulted from the fact that he knew that he had absolutely no factual underpinning for most or all of his claims.

For example, Mr. Conitz brought claims for discrimination on the basis of national origin, asserting that he was not hired as a direct result of his being from Europe. [Docket 57 at ¶ 8 and

---

[1]  A First Amended Complaint was never served on the defendants, and Mr. Conitz never sought leave to file one. The court granted leave to file the Second Amended Complaint at Docket 44, but Mr. Conitz never actually did so, choosing instead to seek permission to file a Third Amended Complaint.

Counts 1, 2.] However, even the most cursory review of the facts by Mr. Conitz or his counsel would have revealed what Mr. Conitz freely admitted in his deposition: that, like the people whose hiring he complained about, he was born in the U.S. to U.S. parents, and had never even visited any European country, let alone originated from there. [Conitz depo. at 11-13 (Docket 91-4).] The claim was therefore frivolous. Christian v. Mattel, Inc., 286 F.3d 1118, 1129 (9th Cir. 2002); Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005); Levine v. FDIC, 2 F.3d 476 (2d Cir. 1993).

Mr. Conitz similarly brought several claims asserting at their core both that Mr. Baker was an Alaska Native and that Mr. Baker was hired over Mr. Conitz because of his status as an Alaska Native. [Docket 48 at Counts 1, 2 and 6.] When discovery revealed that Mr. Baker was in fact not an Alaska Native [see Docket 142-2 at 2], Mr. Conitz simply chose to disregard the information and continue to press his claims, hoping the court would address his claims in a factual vacuum.[2] [E.g. Docket 141.] Where Mr. Conitz refused to acknowledge the undisputed facts, and continued to press his claims without regard for his knowledge that they had no factual underpinning, they were frivolous as a matter of law. Thomas v. City of Tacoma, 410 F.3d 644, 647-648 (9th Cir. 2005).

Mr. Conitz never attempted to substantiate his retaliation claims. [See Record.] As with his discrimination claims, this court recognized that Mr. Conitz made no effort to establish that

---

[2]  Mr. Conitz steadfastly sought back wages as a remedy for the discrimination he alleged relative to not obtaining the trainer position. [Docket 48 at ¶ 31] He did so knowing full well since the time he applied for the job that the trainer position paid less than he received as a journeyman operator, such that an award of back wages would not have been possible even if he otherwise could have prevailed on his claim. [See Exhibit 1 at p. 2, Interrog. 69.]

he was qualified for the position he sought, and that his failure in this regard demonstrated his inability to establish a prima facie case with respect to the claimed retaliation. [Docket 145.] If there had been any facts to support Mr. Conitz's claims, he could have easily presented them to the court. It was because the claims were frivolous that Mr. Conitz continually asked that the court not reach the facts and instead address the legality of shareholder hire in a vacuum. That they were frivolous is further shown by the fact that Mr. Conitz responded to the news that summary judgment was granted against him by initiating a new round of complaints covering the identical claims. [Exhibit 10, 11.]

Because the asserted federal law claims were frivolous, Teck Cominco is entitled to recover attorney fees attendant to them. This court should tax fees accordingly.

B.  **Teck Cominco Is Entitled To Recover Fees Attendant To State Law Claims.**

Despite the fact that his claims were pending in this court for two years, and despite knowing at the time he filed his claims that he had absolutely nothing more than mere conjecture to support them, Mr. Conitz never made any effort to substantiate his claim of an alleged invasion of privacy. [See Conitz depo. 68-74 (Docket 91-4).] Indeed, the court specifically found "that Plaintiff has presented no evidence to support his claim that mail addressed to him was intentionally opened or read", and that "Without evidence of intentionality, Plaintiff has no claim". [Docket 145.] Regardless of the degree to which that and other State claims were frivolous, however, Teck Cominco is entitled to recover fees under Alaska Civil Rule 82. To the degree that the claims were not reasonable, however, and to the degree that their prosecution was

vexatious or in bad faith, the percentage of fees that are to be recovered should be increased above the 20% default threshold set forth in the Rule. [Ak.R.Civ.P. 82(b)(2); 82(b)(3).]

### C.  Teck Cominco Is Entitled To Have Fees Taxed Against Plaintiff's Counsel Under 28 U.S.C. § 1927 And The Inherent Powers Of The Court.

28 U.S.C. §1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

For a court to award fees and costs pursuant to this Statute, the court must find that counsel (1) multiplied the proceedings; (2) in an unreasonable and vexations manner; (3) thereby increasing the cost of the proceedings; and (4) did so either recklessly or in bad faith. Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986). Case law has focused on the requirement that an "attorney's conduct be in bad faith." Soules v. Kauaians for Nukolii Campaign Committee, 849 F.2d 1176, 1185 (9th Cir. 1988). This requirement is satisfied either by the reckless pursuit of a frivolous argument or the pursuit of a meritorious claim for the purpose of harassing an opponent. Id. at 1185-86, quoting Estate of Blas, 792 F.2d at 860.

Separate and apart from statutory authority, the Supreme Court has "recognized the 'well-acknowledged' inherent power of a court to levy sanctions in response to abusive litigation practices." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980). "As a function of this power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines." F.J. Hanshaw Enterprises, Inc. v. Emerald River Deve., Inc., 244 F.3d 1128, 1136 (9th

Cir. 2001). This inherent authority may be used where there is clear evidence that the offending party's claims were entirely without color; and also where the claims were brought in bad faith - that is, "motivated by improper purposes such as harassment or delay." Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 336 (2nd Cir. 1999).

Plaintiff's counsel made clear in this case that it was his intent to delay responding to Teck Cominco's summary judgment motion until after the court ruled on Mr. Conitz's summary judgment motion. Thus, plaintiff's counsel reported to the court that because he "may or may not want to develop" the facts, he wanted the court to rule that shareholder hire was unlawful without regard for whether his client could actually prove his claims. [Docket 147-4 at 20.] To accomplish this end, Mr. Conitz sought to delay the due date for his opposition to Teck Cominco's motion from January until May. [Docket 112.] He claimed this request was necessary so as to take depositions "in early April". [Id.] The court granted his request, and extended the deadline for responding until May 9, 2008. [Docket 121.] Although Teck Cominco offered to make witnesses available for depositions during the time period that Mr. Conitz requested (and in some instances had been offering their availability for more than a year earlier),[3] he adamantly refused to schedule any depositions at that time, insisting instead that depositions could only be taken after the May 9th deadline for responding to summary judgment, at a time when he knew Teck Cominco's counsel was expected to be in the midst of a lengthy

---

[3]   Wasting defense counsel's time was a constant in this case. On numerous occasions, plaintiff's counsel asked for information as to the availability of various witnesses (many of whom were not controlled in any manner by Teck Cominco). Teck Cominco would check with the witness to discover their availability for depositions, only to have plaintiff's counsel decline to follow through and take any of the depositons that he claimed to want.

trial. [Exhibits 4, 5; see docket 147-4 at 31.] One can only assume that he anticipated that further delays would then be obtained, and that the court would eventually rule on his motion while he precluded the defendants' motions from becoming ripe. Even when the court ordered that it wanted to review the claims in this case in the context of Teck Cominco's motion, and ordered that any response to Teck Cominco's motion was be filed by no later than June 9, 2008, plaintiff's counsel only filed a sur-reply to the plaintiff's own motion in which they failed once again to address the facts embodied by the actual claims that the plaintiff presented in this litigation. [Docket 139, 140, 141.]

Delay wasn't the only tactic employed by plaintiff's counsel. Bad faith and deceit were among the arrows within their quiver. For example, invoking Civil Rule 37 and the inherent powers of the court, Mr. Conitz moved to "dismiss" all of Teck Cominco's defenses as a sanction for allegedly either not creating or losing a file. [Docket 125.] He claimed that Teck Cominco failed to create records in compliance with 42 USC § 2000e - 8(c) (requiring records as the Dept. of Labor may order through regulation) despite the fact that that Statute does not require any records to be made. [Docket 125; 29 CFR § 1602.12 ("The Commission has not adopted any requirement, generally applicable to employers, that records be made or kept").] And although he claimed that Teck Cominco spoliated evidence by losing a "file prepared in conjunction with Ted Zigarlick's review of the various applicants" [Docket 125-2], he failed to point to any specific record, data, or information that might no longer be in existence as a result. This was because counsel for Mr. Conitz was attempting to deceive the court. At Docket 125-5, Mr. Conitz attached excerpts of the deposition of Ted Zigarlick; specifically, pages 185 and 187. Had he also included page 186, the court would have been able to see that the missing file

included only a single sheet of paper on which only the names of the applicants for the job were written. [Zigarlick depo. at 186 (Docket 130-2.] The identities of those applicants were known and not in dispute or otherwise at issue. [Docket 131.] In addition to pretending that the missing file had some importance, however, plaintiffs' counsel hid from the court the fact that hundreds of pages of documents related to the hiring decision had been voluntarily turned over to the plaintiff for use in this case. He did this by filing a letter from defense counsel as an exhibit and having his exhibit omit the many pages of the letter that made clear that numerous documents were produced. [Compare Dockets 125-3 and 131-2.] Knowing that his exhibit was a gross misrepresentation of the truth, counsel simply ignored the requirement that he authenticate it. [See Docket 125.] The plaintiff's motion at Docket 125 was nothing less than a gross misrepresentation in a long line of deceit on the part of plaintiff's counsel, filed to waste Teck Cominco's and the court's time. Not only was it frivolous, but it was also brought in bad faith. And although defense counsel asked plaintiff's counsel to withdraw the offending motion so that no time would have to be wasted in preparing a reply, plaintiff's counsel refused. [Exhibit 6.] Presumably hoping that the court might avoid discovering the degree to which he was acting in bad faith, however, he sought a lengthy extension for the time in which to file Mr. Conitz's reply and then simply never got around to filing one, such that the motion remained unripe up until the time the case was dismissed.

    The events surrounding the deposition of John Kells further illustrate the bad faith that was exemplified in the conduct of plaintiff's counsel. Mr. Kells initially agreed to provide an affidavit to the defendants. He then reported that Attorney Don Logan had contacted him on behalf of the plaintiff, and notified the defendants that "Logan thought that this could best be

accomplished by deposition". [Exhibit 7.] Although Mr. Kells claimed that the affidavit (prepared per his instructions) was not accurate in that it failed to identify Mr. Kells as the decision maker with respect to promoting Mr. Conitz [Id.; Kells depo. at 46-47], he freely admitted that the selection of a successful candidate was in fact Mr. Zigarlick's decision and not his. [Kells depo. at 81.] Although it was the defendants who were seeking to obtain Mr. Kells' testimony, and although Mr. Logan had never entered an appearance in this case,[4] Mr. Logan then noticed Mr. Kells' deposition. [Exhibit 8.] He scheduled it in Healy, despite the fact that Mr. Kells is a Fairbanks resident, and refused to even consider requests from NANA and Teck Cominco to hold the deposition in Fairbanks. (Travel from Anchorage to Healy requires 10 hours round trip driving, while travel to Fairbanks requires only a one hour flight in each direction.) When it was necessary to continue the deposition, Teck Cominco scheduled the continuation in Fairbanks at a time when the witness and each counsel had said they could attend. [Docket 147-4 at 14, 18.] Despite the fact that the deposition had earlier been continued and not concluded, plaintiff's counsel took the position that they would not allow Teck Cominco or NANA an opportunity to complete cross-examination if it was to be held in Fairbanks. [E.g. Exhibit 9.] When the defendants insisted it was necessary for the deposition to be completed, Mr. Logan contacted the witness and arranged for him to be represented by attorney Jason Beatty for the purpose of attempting to quash it. [Docket 147-3 (Kells depo.) at 146.] Although Mr.

---

[4] Mr. Logan regularly asserts that when working on behalf of the plaintiff, he works with but not for plaintiff's counsel. [See Logan decl. at Docket 153-3.] When Teck Cominco has objected that Mr. Logan should then enter an appearance in this case, Mr. Covell has responded by asserting "Mr. Logan works for me on a contract basis and he's working under my auspices at this time." [Docket 147-3 (Kells depo.) at 3.]

Beatty claims to not work for Mr. Covell, he works out of Mr. Covell's office and acknowledges that he appears on behalf of Mr. Covell's clients in other matters. [Docket 147-3 (Kells depo.) at 145; Docket 153-2.] When questioned by the court as to whether there was any relationship between the representation of Mr. Kells and Mr. Conitz, both Mr. Logan and Mr. Beatty concealed the truth from the court.[5] [Docket 147-4 at 13, 16.] Further misrepresentations were made as to the fee that was charged Mr. Kells. In this regard, in an apparent effort to convince the court that there was an arms length relationship, Mr. Beatty falsely reported that the fee charged Mr. Kells was $350, when in fact it was only $1. [Docket 147-4 at 13, 19; Docket 147-3 (Kells depo.) at 146.] Mr. Logan made clear that the purpose of their efforts was to harass defense counsel when he wrote on December 9 that "As long as the ass has to travel to Healy again, I will be quite happy." [Exhibit filed in open court on 12-21-07.]

The acts of plaintiff's counsel in supplying to a witness the services of an attorney who works for them, and misrepresenting to the court that the relationship was at arms length is not the only instance where plaintiff's counsel crossed the line and attempted to interfere with the efforts of defense counsel to deal with the claims in this litigation. Once again, the situation involving Mr. Kells illustrates how plaintiff's counsel sought to harass defense counsel and preclude the defendants from bringing this case to a proper and timely resolution. On the evening following the first part of Mr. Kells' deposition, Mr. Logan contacted Mr. Kells via e-

---

[5] The court may recall that Teck Cominco earlier had been forced to move to compel the plaintiff to give testimony concerning Mr. Kells, where plaintiff's counsel had not allowed it on the basis of attorney client privilege. [Docket 29.]

mail in an effort to reach him "before you agree to a Fairbanks deposition". [Exhibit filed in open court 12-21-07.] In that e-mail, Mr. Logan instructed him as follows:

> I cannot ethically tell you not to talk to Mr. Halloran, nor would I. You might consider insisting that he put me on a conference call so that we both share the conversation.

[Id.] That he did not intend for the same restriction to be imposed upon any communications he might want to have with the witness is made plain, for he ended the above suggestion by saying:

> This is, of course, completely up to you. Give me a call.

[Id.]

This court has recognized that it is improper for a plaintiff's attorney to attempt to preclude a defense attorney from separately interacting with witnesses where plaintiff's counsel does not represent those witnesses. [Docket 147-4 at 16.] In light of the fact that plaintiff's counsel continues to deny that Mr. Beatty works for Mr. Covell's firm, even though they acknowledge that Mr. Beatty appears in court in Mr. Covell's stead on behalf of Mr. Covell's clients, their efforts to limit defense counsel interaction with Mr. Kells was necessarily improper.

"Hide the ball" seemed to be another of the plaintiff's counsel's games in this case. On June 12, 2007, the Clerk issued an Order notifying the parties that Teck Cominco had not been served by the court with anything filed electronically due to an error that was found (and corrected) at that time. The order went on to state that "A review of the documents filed by counsel for plaintiff indicates that they do not include any certificates of service as required by the Local Rules and Administrative Policies and Procedures. Counsel for plaintiff is reminded that he must comply with the Local Rules and the Court's [policies]." Even to this date, however, the plaintiff has not served the defendants with any of the documents that he previously filed

other than the initial complaint, including the "First Amended Complaint" which was filed without any attendant motion or permission from the court. Even if counsel's failure to serve documents on the defendants was inadvertent originally, their continued failure after being notified by the court exemplifies the bad faith with which they approached this litigation.

As with depositions, written discovery embodied many of plaintiff's counsel's more abusive tactics. For example, many of the requests for production propounded by the plaintiff merely asked for copies of documents that had been furnished to him in initial disclosures. [E.g. Docket 66-3.] Others merely repeated earlier discovery requests to ask for the identical documents that had been requested previously. For example, the plaintiff's request for production 1 sought employee records for Mr. Leo Thomas. [See Exhibit 2.] Since Mr. Thomas was deceased since before any of the events at issue in this litigation arose, and since he was otherwise irrelevant, Teck Cominco objected to producing the documents, but offered that it would none-the-less make them available if the plaintiff would agree to extend an existing confidentiality agreement to encompass them. [Id.] Plaintiff's counsel then misrepresented to the court that Teck Cominco "has refused" to turn over the records. [Docket 147-4 at 28.] Although defense counsel represented at the hearing that they would agree to extend the confidentiality agreement and accept receipt of the records [Id. at 30] they instead merely propounded three more requests for production seeking the identical records, forcing Teck Cominco to repeat its objection and willingness to produce the records (despite objection) three more times. [Exhibit 3 at pp 3-7, RFP 22, 23, and 24.] Other duplicates abound. [E.g. compare Exhibit 1 at p 4, RFA 9 with Exhibit 3 at p. 7, RFA 17; compare Exhibit 1 at p. 5, RFA 15 with Exhibit 3 at p. 9, RFA 20; compare Exhibit 1 at p. 3, RFP 4 with Exhibit 3 at 2, RFP 18; compare Exhibit 1 at p. 3, RFP

5 with Exhibit 3 at p. 3, RFP 21.] Where so much of the discovery in this case was apparently designed to only waste the time and resources of defense counsel, this court should recognize that abusive discovery was merely one in a long series of the tools that plaintiff's counsel employed in their bad faith prosecution of this case.

Even the choice of venue was abusive. The plaintiff lives in Anchorage. Teck Cominco's corporate offices are located there also. The witnesses in this case had no connection to Fairbanks, except for the fact that Mr. Kells (who the plaintiffs insisted on deposing in Healy) resides there. None of the issues in this case were in any manner affected by or connected to Fairbanks, and it was improper for the case to be filed there instead of Anchorage. While an improper choice of venue is not in and of itself usually an indicator of bad faith, when viewed in conjunction with all the other efforts to inconvenience the defense and their counsel, the court should recognize that every aspect of this case, including the improper venue, is demonstrative of the bad faith that permeated this case.

Teck Cominco was obligated to incur $78,350.80 in attorney fees relative to the defense of this matter. It should be allowed to recover them jointly and severally from the plaintiff and his attorneys.

DATED at Anchorage, Alaska, this 12 day of August, 2008.

                HARTIG RHODES HOGE & LEKISCH PC
                Attorneys for Defendant
                Teck Cominco Alaska Incorporated.

                By: _____
                     Sean Halloran

Certificate of Service

I hereby certify that on the 12 day of August, 2008 a true and correct copy of the foregoing was served on Kenneth Covell & Thomas Daniel by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

_____
Hartig Rhodes Hoge & Lekisch PC