KENNETH L. COVELL
Kenneth L. Covell
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska 99701
Phone: 907.452.4377
Fax: 907.451.7802
kcovell@gci.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGG CONITZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No.  4:06-CV-00015 RRB |
| | ) |
| TECK COMINCO ALASKA, INC., | ) |
| | ) |
| Defendant, | ) |
| | ) |
| vs. | ) |
| | ) |
| NANA REGIONAL CORPORATION | ) |
| | ) |
| Intervenor. | ) |

### OPPOSITION TO TECK'S MOTION FOR ATTORNEY'S FEES

"It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees.  Congress has provided only limited exceptions to this rule 'under selective statutes granting or protecting various federal rights'". (Internal citation omitted.)  <u>Christianburg Garment Co. v. EEOC</u>, 434 US 412, 415, 98 S.Ct. 694, 54 L.Ed.2d 648 (US 1978).

A plaintiff in a Title VII case is essentially acting as a "private attorney general", Christianburg, 434 US 416, 417. A prevailing Title VII plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances, Id 417.[1]

Under Section 706 (k) of Title VII of the Civil Rights Act, the plaintiff is entitled to attorney's fees and costs. The reasons for this statutory section are to "make it easier for plaintiff of limited means to bring a meritorious suit", Christianburg, at 420, citing to Congressional Record. The debating Senators speaking concerning a Title II attorney's fees provision, (similar to the Title VII attorney's fees provision), they indicated that allowance of awards to defendants would "deter the bringing of lawsuits without foundation, to discourage frivolous lawsuits, and to dismiss the likelihood of unjustified suits being brought". Christianburg, at 420.

Christianburg addressed the issue of whether or not the defendant ought to receive attorney's fees pursuant to Section 706 (k). The Supreme Court recognized that there were two strong equitable considerations in favor of attorney's fees for plaintiffs in Title VII actions. First, a plaintiff in a Title VII action is "the chosen instrument of Congress to vindicate 'a policy that Congress considered to be of the highest priority'". Christianburg, at 418.

Second, awarding attorney's fees to a prevailing plaintiff is awarding attorney's fees against a violator of the federal law. Christianburg, at 418.

Only in the instance where the court finds a plaintiff has brought a meritless claim, can the court exercise discretion and award fees against the plaintiff. Christianburg, at 421. Meritless can be understood as meaning groundless or without foundation. The court should not merely look at who won a lawsuit. "This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." EEOC v. Bruno's Restaurant, 13 F.3d 285, 287 (9th Cir. 1993), citing Christianburg, at 421-22.

---

[1] Under the American Common Law Rule, attorney's fees are available against the party who has acted in bad faith.

In <u>Christianburg</u> the plaintiff's had filed a claim with EEOC, and the plaintiff had an opportunity to file a lawsuit, but did not do so. The statutory scheme was then modified, arguably extending the limitation for the filing of an action by the EEOC.

The EEOC lost this legal issue. The district court and the appellate court would not make a finding that the claim was frivolousness, or without foundation. In review of the case, the court found that on this question of law, the commission brought a case that was an issue of first impression requiring judicial resolution, and the commission's statutory interpretation was not frivolous. In the Conitz case, the major issue is one of legal interpretation.[2] (See transcript of May 15, 2008, Status Hearing, pp 1-17.) (Hereinafter T at p. 13, ln 12-15.)

THE COURT:

". . . I realized this whole case really is going to boil down to a legal issue. And the legal issue is the one that Mr. Covell, in fact, did present in his docket 64 motion, . . . " Motion for Order of Rule of Law of the Case

In fact the parties agreed that this was the important issue in the case. Teck's counsel acknowledged it. T at p. 10, ln 7-10

THE COURT: Am I wrong in my understanding that this is going to boil down to a legal issue and if you're right on the law, the case is probably going to be over at this level.

MR. HALLORAN: I believe so, Your Honor.

T at p. 11, ln 24 to p. 12, ln 10

THE COURT: Okay. All right. I'm just saying that this boils down to a legal issue. And if the plaintiff prevails on the legal issue, then we move to next -- more issues. I mean, that doesn't the -

---

Alyeska Pipeline Company v. Wilderness Society 421 US 240, 258-259, 95 Supreme Court 1612, 1622, 44 L.Ed.2d 141.
[2] The district court very specifically told plaintiff's counsel to only brief the legal issue. T at p. 8 ln 13-14; T at p.

11 ln 24-25; T at p.12 ln 1-9.

- then the case will be open and then we have a jury trial. But if the law is that under this -- these facts and these circumstances, defendants are entitled to utilize the Native preference, even though they call it a shareholder preference, whatever it is, legally, then the plaintiff doesn't have a case. That's the -- that's all I'm trying to say today. Do you follow me?

MR. COVELL: I agree, Judge.

Mr. Tom Daniel, NANA's counsel, was on the phone and he acknowledged the conversation as well and indicated that rather than doing new briefing, the court should just decide it on the briefing contained in the Motion for Order of Law of the Case filed at docket 64. T at p 13, ln 2-8

MR. DANIEL: Your Honor, may I interject here? This is Tom Daniel.

THE COURT: Yes.

MR. DANIEL: Well, I -- my interjection was going to be, is that the plaintiff has already briefed the legal question on the lawfulness of the shareholder preference, because it was his [Docket 64] motion . . . .

The Court to date has made no finding that plaintiff's claim is meritless. Indeed the court has inferred the opposite.

T at p. 8, ln 2-8

THE COURT: That's all I -- that's -- and if you're wrong on the legal issue, then your case is probably over.

MR. COVELL: Right.

THE COURT: At least at this level.

MR. COVELL: Right.

THE COURT: But you do real well before the Ninth Circuit.

The court also said in this vein,

T at p. 10, ln 7-10.

THE COURT:  Am I wrong in my understanding that this is going to boil down to a legal issue and if you're right on the law, the case is probably going to be over at <u>this level</u> (emphasis added).

MR. HALLORAN:  I believe so, your honor.

Obviously the court's inference here is that there is likely to be an appeal in this matter and the court is not saying it is frivolous and going to be denied.  The court is essentially saying that there very well could be a different result at the Ninth Circuit.  This is reinforced by the following:

T at p. 10, ln 18-19

THE COURT:  And you might be right, but I don't want to say so until Mr. Covell has a chance to respond. . . .

Additionally, the court said T at p. 14, ln 5-11

THE COURT:  ". . . Because if you prevail on the legal issue, there are still all kinds of issues still open in this case.  But if the law is as I suspect it may be, then the plaintiff doesn't have a case.  And you can save a lot of money by bringing it to an end now and see if the Ninth Circuit disagrees, but I want to do what the law is.  That's all I want to do."

In this quote the court is obviously saying that the Ninth Circuit very well may disagree.  This does not have any sound of a meritless or frivolous claim.  In fact the court is inferring that there very well likely may be a reversal.  A meritless or frivolous claim would not be so characterized.

<u>CASE LAW</u>

A case that indicates taking a position on the interpretation of the law and having the court decide it to the contrary, is not frivolous or meritless.  The issue in <u>EEOC v. Bruno's Restaurant</u>, 13

F.3d 285, revolved around a potential extension of a statute of limitations for claims filed by the EEOC. In that matter, the EEOC lost the claim, however, the court did not find the claim to be frivolous or meritless.

Indeed, significant amounts of case law indicate that Conitz's claim is significant. In Malabad v. North Slope Burough, 335 F.3d 864 (9th Cir. 2003) the Ninth Circuit found the Native hire preference ordinance to be violative of the Alaska Constitution. In Bonilla v. Oakland Scavenger Co., 697 F.2d 1297 (9th Cir. 1982), the court found that promoting people on the basis of owning shares in a company, when shares were only available to people of Italian ancestry, was discriminatory. In the latest Doe v. Kamehameha Schools/Bernice Pauhi, 470 F.3d 827 (9th Cir. 2006), the court found in a plurality opinion that discrimination was allowable on the basis of race in the limited arena of education but not in the arena of employment, at Kamehameha p. 842. See also "dissenting opinion" of Bybee, Kozinski, O'Scannlain, Tallman, and Callahan and in part Rymer and Kleinfeld.

Surely defendant Teck does not suggest that the position of these learned jurorists on the opposite side of the Kamehameha opinion express and maintain a frivolous position.

It is not unreasonable for Mr. Conitz to think that, given this controlling Ninth Circuit Authority, that his claim was meritorious. This claim is meritorious when compared to all measures. The court has recognized such during the Status Conference of May 15, 2008. And when measured against the prevailing Ninth Circuit Authority, it appears to be a very strong case.[3] Further, and more broadly, we perceive that all people should be treated equal. If, as this court says, there is a special exception to the rule; it can hardly be called frivolous to bring a claim that requests enforcement of the general rule. This is either an issue of first impression and/or when brought as a first impression at Malabed, it was decided to contrary.

Any way you look at it, in no way can Conitz's claim be characterized as frivolous.

PRIMA FACIE CASE

The burden of establishing a prima facie case is not onerous. Texas Department of Community Affairs v. Burdine 450 US 248 (1981). An employee making out a prima facie case under McDonnell Douglas Corp v. Green 411 US 792 (1973), Texas Department of Community Affairs v. Burdine 450 US 248 (1981), Saint Mary's Honor Center v. Hicks 509 US 502 (1993), Reeves v. Sanderson Plumbing Products Inc. 530 US 133 (2000), and Raytheon Co. v. Hernandez 540 US 44 (2003).

The plaintiff's prima facie case rarely stands unrebutted. Once the plaintiff creates an inference of discrimination by setting forth the prima facie case, the burden shifts to the employer to articulate, through the introduction of admissible evidence, a "legitimate non-discriminatory reason for the adverse action in order to rebut the inference of discrimination." The employer's burden at this stage is only one of going forward introducing evidence; the ultimate burden of persuasion always rests with the plaintiff. McDonnell Douglas, 411 US at 802, Texas Department of Community Affairs v. Burdine, 450 US at 255.

The plaintiff must show that 1) he is a member of a protected group, 2) he applied and was qualified for a job which the employer was seeking applications, 3) he was rejected despite his qualifications, and 4) the employer continued to solicit applications from others with qualifications equal to the plaintiffs. Burdine, 450 US at 248.

Conitz is white and of European descent[4] He is a member of a protected class. It is undisputed that he applied for the Supervisor's position and Trainer position. It is undisputed that he had acted in the capacity of Relief Supervisor for a multiple number of years. It is undisputed that

---

[3] In considering the Motion To Deny Costs one of the factors to be considered is the closeness and difficulty of the issues raised in the case. Obviously this factor comes into play into the Motion to Deny Costs.
[4] See Conitz Declaration regarding ancestry filed herewith.

Conitz was not hired for other positions and that Mr. Hanna is of Native Alaskan descent and a NANA shareholder.[5]

Once a prima facie case is established the burden shifts to defendant to allege a non-discriminatory reason. The burden of pleading a prima facie case is minimal, Cordova v. State Farm Insurance Companies 124 F.3d 1145 (9th Cir. 1997).

Dawavendewa v. Salt River Project Agr. Imp.and Power Dist., 154 F.3d 1117, (9th Circuit 1998) held that employment preferences based upon specific tribal membership constitutes national origin discrimination in violation of Title VII. Here we have the same type of preference operating for members of an ANSCA corporation.

The 9th Circuit applied this reasoning in Malabed v. North Slope Borough, 42 F. Supp.2d 297 (D.Alaska 1999), aff'd, 335 F.3d 864 (9th Cir. 2003). See also Malabed v. North Slope Borough 70 Pacific 3d 416 (Alaska 2003).[6]

The court's "Order Regarding Pending Motions and Dismissing Case" at Docket 145 is problematic. Clearly the court's order was in response and subsequent to its order for briefing on the legal issue in the case. See May 15, 2008 transcript Ex. A  While the order states in the last paragraph that Teck Cominco's motion at Docket 91 is and Summary Judgment is granted. The title of the motion is not "Order Granting Summary Judgment", rather it is "Order Regarding Pending Motions and Dismissing the Case". It appears that the court intended for the legal issue to go on appeal, as was agreed to by the parties. The court did focus on the issue filed in plaintiff's **Motion for Order of Law of the Case** filed at Docket 64.

---

[5] Defendant asserts that Mr. Baker is not Native Alaskan, but he is a NANA shareholder. While Mr. Baker may not be of the blood quantum to meet the status of a NANA shareholder, it is understood and believed that Mr. Baker is in fact at least partially of Native Alaskan descent. (See Declaration of Gregg Conitz Concerning Factual Assertions In Defendant Teck's Motion For Attorney's Fees and also Declaration of Conitz Concerning Racial Characteristics of Alaska Natives (Also see Teck Motion for Attorney's Fees at page 5? acknowledging Baker is 1/8th Alaska Native?)

[6] Native Americans are protected from race discrimination under Title VII and the Civil Rights Act of 1866. Nanty v. Barrows Company, 660 F.2d 1327, 1329 (9th Cir. 1981), overruled on other grounds. Jenks v. Mountain States Tel. & Tel. Co., 53 FEP 1708, 1716 (D.Utah 1989)

T at p 13, ln 12-15

THE COURT:  " . . .And the legal issue is the one that Mr. Covell, in fact, did present in his

docket 64 motion, . . ."

As the court had precluded further discovery, plaintiff cannot be faulted for failing to produce

evidence in response to the Summary Judgment Motion, at Docket 91.  More realistically, this

"finding" might be considered to be a Rule 12(b)6, sufficiency of the evidence standard.  There is no

heightened 12(b)6 standard for employment discrimination cases.  Swierkiewicz v. Sorema NA, 534

US, 506 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).  (overruling 2nd Cir. precedent requiring heightened

pleading requirements in civil rights cases.)  Maduka v. Sunrise Hospital 375 F.3d 909 (9th Cir.

2004) follows the dictates Swierkiewicz.

These cases say that it is "an employment discrimination complaint need not include such

facts and instead must contain only a short and plain statement of the claim showing that the pleader

is entitled to release."  Maduka at 911-912.  In any event, Conitz's complaint is replete with facts

supporting his claim and if  proven true, making out his employment discrimination claim.  e.g. see

Third Amended Complaint, paragraphs 1 through 32.  (See also Deposition of Kells, attached as Ex

B and Deposition of Conitz, attached as Ex C.)  This factual information and more would have been

submitted with Conitz's Opposition To Teck's Motion For Summary Judgment, had the court ordered

such briefing.  However, the court ordered that Conitz only brief the legal issues.  T at p. 8, ln 13-14,

T at p 11, ln 24-25, The at p. 12, ln 1-9.

A plaintiff in a civil rights claim must be given a fair opportunity to refute any of an

employer's purported legitimate non-discriminatory reasons for failing to promote Conitz, Rodriguez

v. General Motors, 904 F.2d 531 (9th Cir. 1990).

Conitz was not given the opportunity to refute the employer's pre-textual reasons.  The

court's said: (Order at page 3, Docket 145) "Because plaintiff has not established a prima facie case

of discrimination, . . ." does not in any way conclusively evidence a frivolous claim. The issue of summary judgment on the facts was not joined. The issue of addressing the legal issues, specifically Motion for Order of Law of the Case, was what the court was trying to reach; and in order to do so, the court discussed the prima facie case. In order for the court to reach the issue of the legality of a shareholder/native hire preference, the court gratuitously discussed the issue. These comments ought to be reviewed as discussion and nothing more than dicta.

<u>DAMAGES</u>

Defendant Teck takes the position that an employee who is not granted a promotion has not been damaged. Firstly, discrimination on the basis of race and national origin is dignatory. Whether or not a job carried more money if "it was . . . a substantial new opportunity" plaintiff is damaged when he is denied the promotion of basis of race, <u>Rodriguez</u> at 534.

Additionally, Conitz factually disputes whether or not he would have made more money in the positions he applied for. The fact of the matter is that the employees who entered into the positions he applied for made more money than Conitz did. (See, Declaration of Gregg Conitz Concerning Factual Assertions In Defendant Teck's Motion for Attorney's Fees, paragraphs 3 and 4.)(Attached as Ex. D)

More realistically, however, in fact the employee(s) promoted instead of Conitz ended up making more money than Conitz even though they had less experience. Mike Baker's salary for 2005 was $95,090, for 2006 was $98,418, and for 2007 was $102,355 (see Declaration of Gregg Conitz Concerning Factual Assertions In Defendant Teck's Motion for Attorney's Fees, page 2, number 3.) versus Conitz's salary which for 2005 was $106,431, for 2006 was $93,893, and for 2007 was $99,580 (see Declaration of Gregg Conitz Concerning Income 2000 through 2007 filed herewith)(Attached as Ex. E).

<u>NATIONAL ORIGIN</u>

Defendant Teck claims that Conitz has not made out a prima facie case as to his national origin.  See Declaration of Gregg Conitz Concerning Ethnicity attached as Ex. F.

National origin means the country where a person is born or from which his or her ancestors came.  Espanoza v. Farah Manufacturing Co. 414 US 86, 88 1973.  See also 42 USC 2000e-2(a)(1)(2000).  National origin discrimination is defined broadly, Sethy v. Alameda County Water District, 545 F.2d 1157, 1159 (9th Cir. 1976).

Conitz clearly comes from European descent and is a different race and/or national origin than an Alaska Native.  Alaska Natives have distinct physical characteristics (see Declaration of Gregg Conitz Concerning Ethnicity pargraph 2.).

FAILURE TO SUBSTANTIATE RETALIATION CLAIM

Teck asserts that Conitz did not factually substantiate his retaliation claim.  Once again, Conitz points the court to its statement that it was only deciding the legal issues .

(See T at p. 7 ln 7, p. 8 ln 5.):

THE COURT:  Because I thought the whole case now, is going to boil down to whether or not -- not necessarily  the whole case, but  you're right.  If, in fact, the law is that Teck can engage in shareholder preferences, even if the shareholders are primarily Native, if they can legally do that, that's a matter of law.  That's a -- isn'the that a question of law?

MR. COVELL:  Right.  And that's what I was trying to get the court to rule on without becoming . . . .

THE COURT:  And I want to do that.

MR. COVELL:  Okay.

THE COURT:  That's why I'm saying, I don't really want to grant a continuance until November if the whole case is going to be resolved on this single issue.  And I don'the . . . . .

MR. COVELL:  I think . . . . .

THE COURT:  And I was thinking, you know, they filed a pretty convincing summary judgment motion, but I haven't seen your opposition to it.

MR. COVELL:  I can certainly respond to legal issues, but . . . . .

THE COURT:  That's all I -- that's -- and if you're wrong on the legal issue, then your case is probably over.

MR. COVELL:  Right.

THE COURT:  At least at this level.


Plaintiff was not given full opportunity to develop facts in this matter.  Contrary to Teck's assertion that there may be factual shortcomings because there were no facts:  the plaintiff, in the court, wished to preserve judicial resources and address the central issue in the case.  See Declaration of Gregg Conitz Concerning Factual Assertions In Defendant Teck's Motion For Attorney's Fees.

<u>RULE 82</u>

While Rule 82 allows the court to award attorney's fees, the court may vary the attorney's fees award based on various considerations, including other equitable factors deemed relevant.  Rule 82(b)(3) and Rule 82(b)(3)(k).

Teck asked for Rule 82 fees concerning the invasion of privacy count.  As discussed above, Conitz was directed to answer the motion on a legal basis concerning the main issue in the case.  As this matter was pending discovery, and the court indicated it wanted no further discovery conducted, Conitz could not produce the results of discovery.  If the court wishes defendant to continue discovery during the pending appeal, the court could say so.  It would be an abuse of discretion for the court to award attorney's fees on an issue that plaintiff was precluded from continuing to conduct discovery on, and filing information about, the facts of the case.

Furthermore, defendant has failed to distinguish what portion of its work, if any, was attributable to defending the invasion of privacy claim. Therefore, the court should, at a minimum, deny the request for fees, absent Teck attaching declarations establishing which fees, if any, were attributable to the invasion of privacy claim, <u>Aeroquip Corp v. Adams</u>, 45 F. Appx. 634 (9th Cir. 2002) (unpublished opinion) <u>Gravel v. Ferris</u>, 5 F.3d 356 (9th Cir. 1993)(concerning allocation of fees.) If defendant's contention is that no evidence was presented on this issue, it would have spent little or no time on the matter, and even if its Rule 82 assertion is correct, it would be entitled to 20% of nothing.

## MUCKRAKING

Defendant Teck claims that plaintiff's counsel delayed and extended the proceedings unreasonably and vexatiously, and did so in bad faith. This appears to be the type of tactic that defense counsel might employee in a case. There is no percentage in plaintiff's counsel engaging in such tactics. Teck's laundry list of issues will be addressed in turn.[7]

The assertions that the conduct of plaintiff was vexatious are unfounded. On one hand, Teck asserts that plaintiff did not conduct enough discovery as to the invasion of privacy issue and the Rob Scott deposition. On the other hand, defendant Teck asserts that plaintiff conducted too much discovery. This is when plaintiff claimed multiple similar discovery requests were vexatious even though prompted by defendant's objections.

Teck has been uncooperative in discovery. They refuse to produce the agreement between Teck and NANA that concerns the operation of the mine. Plaintiff had required to file two motions to compel evidence, at Docket 13 and Docket 66.

---

[7] Attached as Ex. G are a sampling of emails concerning attempts to arrange discovery in the matter. They don't evidence vexatious or bad faith on the part of plaintiff and evidence the exact opposite, a sincere attempt to make the situation(s) work.

## PURPORTED PURPOSEFUL DELAY IN TAKING OF DEPOSITIONS

Plaintiff had filed a motion for order of law on the case at Docket 64. This motion was ripe in February of 2008. It would have been ripe much sooner except for defendant's insistence on completing the Kell's deposition before filing its opposition to this motion. None of Kells' deposition was ever used in Teck's Opposition to Conitz's **Motion For Order Of Rule Of Law**. See Opposition at Docket 104.

Plaintiff explained in his motion at Docket 112 on January 29th, that Mr. Conitz worked up north on a four weeks on and two weeks off schedule, and that he would not be available to consult with counsel until the week of Feburary 25th (this in part because communications from the work site had been compromised by the defendant. Plaintiff and counsel questioned whether or not communications with plaintiff while he was at the job site are secure.) Additionally, the parties wish to meet for a face to face discussion and Mr. Covell was scheduled for a murder trial the week of February 25th. The next possible opportunity for Mr. Conitz to travel and attend depositions was in early April. Given the schedule of Mr. Conitz and undersigned counsel, and the need to go to Vancouver, British Columbia, the scheduling of the Mr. Scott's deposition was certainly not feasible in the time frames proposed.

There had been a number of times when counsel had attempted to arrange the deposition of Mr. Scott. Early on defendant had suggested he would make Mr. Scott available in Anchorage, but later defendant insisted that he would only be available for depositions in Vancouver, British Columbia. Counsel offered to take the deposition, perhaps in Seattle at the boardroom at the airport, and this offer was refused as well. At one point, while trying to arrange for depositions, and the defendant insisting that they be done in Vancouver, British Columbia, counsel became aware that in fact Mr. Scott in fact been in Alaska and at the Teck Cominco Mine. No mention of this was ever made to counsel by Teck's counsel.

In any event, Teck offered a very limited number of days. The dates and times in April that were offered were simply unworkable, particularly since they were in Vancouver, British Columbia. When I asked Mr. Halloran if it were possible to do the depositions in early May, he responded in an email in a rather forceful manner using words to the effect of WHAT PART OF NO DON'T YOU UNDERSTAND. He further indicated he would not be available to depositions until November, some seven months away.

In my twenty-two years of law practice, counsel has never had anybody tell me before that they couldn't do a deposition for seven months. Mr. Halloran alluded to no set of facts that substitute counsel might be found or some other arrangement might be made for taking the deposition, or perhaps bringing the witness to us in order to accommodate his (Mr. Halloran's) scheduling problems. See, Declaration of Kenneth L. Covell In Support Of Opposition For Motion of Attorney's Fees. (Attached as Ex. H)

Counsel's intention of having the **Motion for Order of Rule of Law** in the case settled before discovery was complete, was that if the court would have ruled against Conitz, doing discovery at this point would be unnecessary, thereby saving the parties time, effort and money. If **Motion For Order of Rule of Law** was granted, it may have precluded a need for some of the depositions, or at least the length of the depositions. Furthermore, if the **Motion For Order of Rule of Law** was granted, it may have precipitated settlement or an alteration of proceedings, including possibly an interlocutory appeal, making the discovery and the trip to Vancouver, British Columbia, as well as others unnecessary. Counsel, however, told the judge at the hearing on May 15th, 2008, that he was prepared to do the discovery if the court wanted the factual issues in the summary judgment motion answered. Such delay would have been on account of Mr. Halloran, defendant Teck's counsel's unavailability. Even when counsel Halloran indicated to the court he would be

available because his case has settled, Judge Beistline agreed with plaintiff's approach to the case.  T at p.6, ln 5:

       THE COURT:  --I've looked at this case at length.  Okay.  I think it all boils down to whether or not Teck is entitled to engage in shareholder preference, even if the shareholder is Native.  Isn't that really what it's all about?  And that's what you were trying to get me to respond to in docket 64. T at p. 6, ln 5-10.

       The court said further, T at p.8, ln 24:

       THE COURT:  But I'm just saying that's the way it's focusing.  And I hate to see people engage in protacted litigations, spend all kinds of money when the legal issue forecloses their case.

       MR COVELL:  I Agree.

       THE COURT:  So that's where I am intellectually with you.

       MR. COVELL:  Very good.  I'm glad we had this hearing then . . . .

       Mr. Halloran, on behalf of Teck, also agreed, T p. 10 ln 7-10:

       THE COURT:  Am I wrong in my understanding that this is going to boil down to a legal issue and if you're right on the law, the case is probably going to be over at this level.

       MR. HALLORAN:  I believe so, Your Honor.

       Mr. Halloran had acknowledged that his calendar was a problem with conducting discovery, T at p.11 ln 14:

       MR. HALLORAN:  . . . . . I mean, if discovery needs to be done, my calendar opened up as of this morning.

       THE COURT:  . . . . . realistically, I don't want anybody to spend un -- if you're right on the law, and you might be.  Sometimes it, frankly, is counter-intuitive when you get involved in this kind of thing.

       The court clearly wanted to settle the legal issue before further discovery was done.

## BAD FAITH, DECEIT AND SPOLIATION[8]

Ted Zirgarlick made the self-serving comment that only one page of names was in the file that he testified to having made. Teck's counsel wants plaintiff to prove the negative, that there was nothing more in the missing file and that it would have been useful. Teck's Motion for Attorney's Fees at page 9. Because the file was gone, the content could never be accurately determined. That is why this sanction was sought. The best -- or perhaps least convenient from the defendant's point of view -- evidence concerning the matter was lost. In Teck's Motion for Attorney's Fees at page 9, Teck states it was not required to maintain records. Teck misunderstands and misstates the rules.

On or before September 30 of each year, every employer that is subject to title VII of the Civil Rights Act of 1964, as amended, and that has 100 or more employees shall file with the Commission or its delegate executed copies of Standard Form 100, as revised (otherwise known as "Employer Information Report EEO-1") in conformity with the directions set forth in the form and accompanying instructions. Notwithstanding the provisions of § 1602.14, every such employer shall retain at all times at each reporting unit, or at company or divisional headquarters, a copy of the most recent report filed for each such unit...

29 C.F.R. 1602.7

### § 1602.14 Preservation of records made or kept.

Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. The date of final disposition of the charge or the action means the date of expiration of the statutory period within which the aggrieved person may bring an

---

[8] Teck infers in its opposition at page 12 footnote 5 that plaintiff's counsel acted in bad faith in resisting the questioning of Conitz concerning statements of Kells made in counsel's presence. The court specifically found that "plaintiff's counsel raised both the attorney client privilege and the work product doctrine in good faith, . . ." Minute Order from chambers granting motion to compel at Docket 59.

action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated.

The law does require preservation of relevant records. A recordkeeping claim can be included as a separate count in an employee discrimination complaint. EEOC v. Peabody Western Coal Company, 400 F.3d. 774, 785 (9th Cir. 2004). Suggesting that Teck had a recordkeeping requirement is far from frivolous, and asking for a sanction for failing to preserve records, under the recordkeeping requirement is a reasonable and sensible thing for a plaintiff to do.

Whether or not hundreds of pages of documents had been produced in the case, the critical "hiring file" has gone missing. This matter still was pending before the court at the time of the court's order. Plaintiff's counsel should not be required to "write that brief", as well post dismissal.

## KELLS' DEPOSITION

Taking John Kells' deposition was necessary. It supports Mr. Conitz's case. Mr. Kells was a management employee with the company, but is no longer in their employ. He would be considered to be the most critical witness in the case.[9] Whether or not he provided an affidavit for defendant Teck, he would have been deposed before such motion was answered. Kells' deposition was scheduled in Healy at Mr. Kells' request. Mr. Kells works at the Usibelli Coal Mine in Healy. It is 120 miles from Fairbanks to Healy. He worked a shift of 4 - 10's or something similar. At the time the deposition was to be scheduled, the holidays were approaching, his daughter was getting married, he had no time in Fairbanks during the regular

---

[9] John Kells Deposition is filed herewith as Ex.__. Kells' Deposition is part of the significant evidence Conitz was gathering to file an opposition to the factual assertions in Teck's Motion For Summary Judgment. The court, however, ordered only briefing on the legal issues.

weekday, and in order for him to be deposed in Fairbanks he would have had to take two days off work. He could however be deposed in Healy with little interruption of his work schedule.

Undersigned counsel went to great lengths to attempt to accommodate Mr. Halloran in arranging this matter. Counsel agreed to have the deposition later in the day, so that counsel could fly to Fairbanks, rent a car and drive to Healy. He would then have the option of either driving back to Fairbanks and flying to Anchorage, or, if more sensible depending on when the deposition wrapped up, he could continue with the rental car to Anchorage and turn the car in there. It appeared to counsel that Mr. Halloran tried to make the Healy deposition absolutely the most difficult project as possible for himself. It is unfortunate in Alaska that sometimes we have to travel for depositions. Counsel had to travel to Anchorage to take depositions from Mr. Zirgarlick, Mr. Sommers and Mr. Conitz in August of 2007. It took a significant amount of time and was inconvenient to do so, however, it was done because it was necessary. Counsel had hoped to have done the deposition of Mr. Kells himself, however, due to scheduling issues I had here, and in an attemp to keep the deposition happening in a reasonably short period of time, I had Mr. Logan go do the deposition for counsel while counsel listened to it telephonically from Fairbanks.[10]

The deposition notice indicated it would continue from day to day until complete. Mr. Halloran indicated that he was unwilling to work late and he was unwilling to work the next day. Mr. Halloran's consternation over the Kells' deposition seems to me to be of his own making. Counsel frankly doesn't believe I have ever put in so much effort arranging a deposition, only to have the defendant exhibit so much angst over it.

JASON BEATTY

---

[10] See November 28, 2007, 10:10 a.m. Covell email to Tom Daniel; Ex. I.

*Conitz v. Tack Cominco, Case No. 4:06-CV-00015 RRB*
*Opposition to Teck's Motion for Attorney's Fees*
*Page 19 of 24*

Jason Beatty is an attorney who was recently admitted to the Bar.  Mr. Kells did not want to have his deposition taken in Fairbanks because of the inconvenience and the upcoming holiday season.  Mr. Beatty agreed to represent Mr. Kells in a motion to quash the deposition notice.  Prior to that time Mr. Beatty had done no work for me.  Subsequent to that time, Mr. Beatty has occasionally gone and covered court hearings for me.  Beatty has done no substantial work for counsel.  I pay Mr. Beatty a minimal amount of money to do these hearings for me.  It is not uncommon in a solo practice in Fairbanks to have other attorneys cover hearings for you when you are unavailable.  It is also good practice for a new lawyer starting out to get some exposure in the courtroom and some confidence in court.  The fees between Mr. Beatty and Mr. Kells are a matter only between themselves.  Mr. Logan made an unkind remark to Mr. Kells about Mr. Halloran.  He apologized soon thereafter to Mr. Halloran in writing and additionally has done so on the record.  When I became aware that Mr. Logan may have called Mr. Halloran an ass, I decided to speak with him about his conduct.  I likely was going to suggest to him that he apologize to Mr. Halloran.  Before I had an opportunity to speak to Mr. Logan, he copied me with written correspondence, showing me that he had apologized to Mr. Halloran.  He has done so subsequently in the record.

## HIDE THE BALL

If Teck was not being properly served electronically with pleadings, this was an oversight.  If Teck wants copies of any pleadings, or missing any, or not getting any, all they have to do is contact us and we will send them.

## "SEAT TIME" RECORDS

In the litigation, plaintiff attempted obtain "Seat Time" records for employees in operating positions.  "Seat Time" is the vernacular for operational hours and specific pieces of equipment.  "Seat Time" in and of itself may not be a sole arbiter of qualifications for a position

of promotion but, it is one indicator that someone might look at in evaluating somebody for promotion. Whether or not Teck claims it considered such information in making promotions really does not matter. Such information is both relevant and would be of strong interest to a jury. Why defendant would resist production of such innocuous records seems inexplicable unless they were damning to defendant's postion. Counsel's recollection is that he was willing to sign whatever confidentiality stipulations that were requested of him and did so.

The multiple requests for discovery that were made were in reaction to uncooperative actions on the part of Teck. Counsel would note that Teck's Exhibit 2 to its **Motion For Attorney's Fees** offers to make the records available <u>at the Red Dog Mine</u>! (Exhibit 2, page 2-3 "Access to records <u>at Red Dog Mine</u> can be arranged through counsel for Teck.") If there were multiple requests for the same records, they were done in a large part because of objections that may have revealed name discrepancies or other attempts at defendant to resist discovery. The repeated requests altered the language to meet the objections. The defense had already refused to comply with the prior request.

Defense counsel thinks that plaintiff's counsel is interested in wasting time. Wasting time is of no benefit to plaintiff's counsel. It is clear that defendant has way more time, effort and money available to it than plaintiff ever will and Conitz cannot win a game of wear them down. However, the opposite potentially might be true.

<u>PLACE OF VENUE</u>

The District of Alaska is one district and an action can be filed in any district court in the State of Alaska. People that live in Anchorage tend to be somewhat Anchoragecentric and think everything should be filed there. There is nothing improper about filing an action in Fairbanks. Fairbanks is physically closer to Kotzebue and the Teck Cominco Mine than Anchorage is.

Teck's **Motion For Attorney's Fees** cannot be taken very seriously. It in no way will be able to convince the court that plaintiff's claim is frivolous. Furthermore, there is no attempt on Teck Cominco's part to ascertain what portion of its attorney's fees might be attributable to what it views as any vexacious, unreasonable or harassing behavior. Certainly, it is not the whole $78,000 it claims it incurred. Without any ascribement of value, no award can rationally be made.[11]

## MAKE BOOK

It is not undersigned counsel's habit to make book on opposing counsel. I would rather spend my time, effort and energy in attempting to reach and decide the legal issues in a case. Being forced to practice law defensively in such a manner is a waste of judicial resources.

## CONCLUSION

The motion and opposition are cumbersome due to the nature of the initial motion. But the court's mission here is pretty simple. The first question the court needs to ask is was Conitz's action frivolous. The answer is clearly not. This is based on the court's statements in the May 15th, 2008, transcript and Status Hearing, where the court essentially says, we'll see what the Ninth Circuit is going to do with this. Further, it is based on the case law cited, including EEOC v. Bruno's Restaurant, Malabad v. North Slope Borough, Bonilla v. Oakland Scavenger Co., and Doe v. Kamehameha Schools/Bernice Pauahi.

The second stage of analysis is to decide whether or not there was vexacious conduct here. It ought to be obvious and apparent to the court that plaintiff's goal has always been to get the court to rule on the legal issue in the matter. In order to do so, plaintiff had to develop the case to a degree, including obtaining the 1982 agreement, which was only obtained after filing a motion to compel. Furthermore, counsel then found that the "hiring file" was missing as well.

---

[11] Just as it fails to ascribe time to its proposed Rule 82 claim for time spent on the invasion of privacy claim.

Further delay ensued when Teck wanted to have its opposition to the motion at Docket 64, **Motion For Order Of Rule Of Law,** delayed until after the Kells deposition was completed and then note use materials from the Kells deposition in its opposition. (At that time counsel asked the court to rule on this motion. See, **Attorney's Request For Hearing** at Docket 125)

The Rule 82 attorney's fees should not be awarded as plaintiff was precluded from continuing discovery in regard to the invasion of privacy issue, and told to file a pleading on the legal issue in the case. Even if the court were inclined to grant any Rule 82 attorney's fees, it would have to be allocated per issue. It would seem that it would be an insubstantial amount of time and further, no allocation has made by defendant Teck concerning such attorney's fees. They surely don't suggest that their whole $82,000 was attributable to that issue.

For the above foregoing reasons, defendant Teck's motion for attorney's fees should be denied.

Respectfully submitted this 5th day of September, 2008 at Fairbanks, Alaska.

LAW OFFICES OF KENNETH L. COVELL
Attorney for Plaintiff, Gregg Conitz

s/Kenneth L. Covell
712 8th Ave.
Fairbanks, AK 99701
Phone: 907.452.4377
Fax: 907.451.7802
E-mail: kcovell@gci.net
Attorney Bar #: 8611103

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been
Served electronically, via ECF to the following attorney(s):

**Sean Halloran**
**Thomas M. Daniel – TDaniel@perkinscoie.com**

Dated: 09/05/2008
By: /s/ Wendy Blakeman
    Wendy Blakeman for Kenneth L. Covell