KENNETH L. COVELL
Kenneth L. Covell
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska 99701
Phone: 907.452.4377
Fax: 907.451.7802
kcovell@gci.net

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| GREGG CONITZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 4:06-CV-00015 RRB |
| ) | |
| TECK COMINCO ALASKA, INC., ) | |
| ) | |
| Defendant, ) | |
| ) | |
| vs. ) | |
| ) | |
| NANA REGIONAL CORPORATION ) | |
| ) | |
| Intervenor. ) | |

DECLARATION OF KENNETH L. COVELL IN SUPPORT OF OPPOSITION FOR

MOTION OF ATTORNEY'S FEES

1. There had been a number of times when I had attempted to arrange the deposition of Mr. Scott. Early on defendant had suggested he would make Mr. Scott available in Anchorage, but after defendant insisted that he would only be available for depositions in Vancouver, British Columbia. I offered to take the deposition perhaps in Seattle at the boardroom at the airport and this offer was refused as well. At one point, while trying to arrange for depositions, and the defendant insisting that they be done in Vancouver, British Columbia, I became aware that in fact Mr. Scott in fact been

in Alaska and at the Teck Cominco Mine. No mention of this was ever made to me by Teck's counsel.

2. In any event, Teck offered to arrange deposition for Mr. Scott for a very limited number of days. The dates and times in April that were offered were simply unworkable, particularly since they were in Vancouver, British Columbia. When I asked Mr. Halloran if it were possible to do the depositions in early May, he responded in an email in a rather forceful manner using words to the effect of WHAT PART OF NO DON'T YOU UNDERSTAND. He further indicated he would not be available to depositions until November, some seven months away.

3. In my twenty-two years of law practice, I have never had anybody tell me before that they couldn't do a deposition for seven months. Mr. Halloran alluded to no set of facts that substitute counsel might be found or some other arrangement might be made for taking the deposition, or perhaps bringing the witness to us in order to accommodate his (Mr. Halloran's) scheduling problems.

4. Taking John Kells' deposition was necessary. It supports Mr. Conitz's case. Mr. Kells was a management employee with the company, but is no longer in their employ. He would be considered to be the most critical witness in the case. Whether or not he provided an affidavit for defendant Teck, he would have been deposed before such motion was answered. Kells' deposition was scheduled in Healy at Mr. Kells' request. Mr. Kells works at the Usibelli Coal Mine in Healy. It is 120 miles from Fairbanks to Healy. He worked a shift of 4 - 10's or something similar. At the time the deposition was to be scheduled, the holidays were approaching, his daughter was getting married, he had no time in Fairbanks during the regular weekday, and in order for him to be deposed in Fairbanks he would have had to take two days off work. He could however be deposed in Healy with little interruption of his work schedule. Undersigned counsel went to great lengths to attempt to accommodate Mr. Halloran in arranging

*Conitz v. Tack Cominco, Case No. 4:06-CV-00015 RRB*
*Declaration of Kenneth L. Covell In Support Of Opposition For Motion Of Attorney's Fees*
*Page 2 of 4*

this matter. We agreed to have the deposition later in the day, so that counsel could fly to Fairbanks, rent a car and drive to Healy. He would then have the option of either driving back to Fairbanks and flying to Anchorage, or, if more sensible depending on when the deposition wrapped up, he could continue with the rental car to Anchorage and turn the car in there. It appeared to me that Mr. Halloran tried to make the Healy deposition absolutely the most difficult project as possible for himself. It is unfortunate in Alaska that sometimes we have to travel for depositions. I had to travel to Anchorage to take depositions from Mr. Zirgarlick, Mr. Sommers and Mr. Conitz in August of 2007. It took a significant amount of time and was inconvenient to do so, however, it was done because it was necessary. I had hoped to have done the deposition of Mr. Kells myself, however, due to scheduling issues I had here in attempting to keep the deposition happening in a reasonably short period of time, I had Mr. Logan go do the deposition for me while I listened to it telephonically from Fairbanks.

5. The deposition notice indicated it would continue from day to day until complete. Mr. Halloran indicated that he was unwilling to work late and he was unwilling to work the next day. Mr. Halloran's consternation over the Kells' deposition seems to me to be of his own making. I frankly don't believe I have ever put in so much effort and had such drama over arranging a deposition, wherever it may have been in Alaska.

6. It is not undersigned counsel's habit to make book on opposing counsel. I would rather spend my time, efforts and energy in attempting to reach and decide the legal issues in a case. Being forced to practice law defensively in such a manner is a waste of judicial resources.

7. The email dated March 26, 2008, entitled Scott Deposition from Sean Halloran and the preceding email correspondences are accurate and correct to the best of my knowledge and ability and are a printout of the electronic record thereof. Some snippets of the correspondence are available through

various records, included is the email exchange concerning attempting to schedule the Scott deposition.

8. I searched on the web for Teck Cominco's official website and it indicates that the operating profit for 2007 was $819 Million, and for 2006 was $1.79 Billion. It appears that this is solely the profits from the Red Dog Mine.

9. I searched Teck Cominco's official website and Teck admits net earnings of $1.6 Billion in 2007.

10. I searched for the official website of NANA's Regional Corporation and looked at its most recent published report, which is for the year 2006. It indicated gross revenues of $806 million and a net income of $16 million.

11. Attached to Opposition To NANA's Motion For Attorney's Fees is an article from Alaska Business Monthly, April 2007, p 56. The pages therein are true and accurate copies of the pages within the magazine itself and what they purport to be.

Declaration

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

    Executed on the 5th day of September, 2008.

 

                                                                            Kenneth L. Covell

**ERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been
Served electronically, via ECF to the following attorney(s):

**Sean Halloran**
**Thomas M. Daniel – TDaniel@perkinscoie.com**

Dated: 09/05/2008
By: /s/ Wendy Blakeman
    Wendy Blakeman for Kenneth L. Covell