# John Kells

**From:** John Kells
**Sent:** Friday, August 25, 2006 10:49 PM
**To:** 'gkconitz'
**Subject:** RE: 8-8-06

Date: 11-28-07   Exhibit: 11-G
Witness: KELLS
Liz D'Amour, Court Reporter
Liz D'Amour & Associates, Inc.
(907) 452-3678

Hi Greg,

   Sorry it has taken so long to get back with you but it has been raining here and this place comes apart in the rain. I do understand your objectives and even though I don't have a stake in it, I would like to see an answer about the legality of the shareholder preference. Interestingly, I think getting rid of it would help Teckcominco and also the shareholders in general.

   I had told you that I have some daytimer notes from that time. I hadn't looked at them before I talked with Ken because I wasn't sure if I would be useful to your case. I have looked at them since talking with Ken. There isn't anything too interesting. I had hoped to clear up the chronology of the relevant events and meetings but it didn't. There were several meetings between Rob, Ted and me, not one as I had thought. There is a brief note about Robert Sheldon and Josie coming and talking with me about picking a shareholder. I also had noted one of the important reasons for not choosing Larry which I had forgotten to tell Ken (because I had forgotten it). Larry wasn't willing to take the vacant 4x2 rotation which meant that every 6 weeks there would be one week with 3 shifters on site and one week with only 1, hence the need for relief shifters. I didn't like the mismatch of schedules and I also thought it was a sign that Larry was going to pursue his own agenda regardless of how it affected the organization. I did tell Ken the other 2 reasons that I had.

   An interesting angle on this is that Teckcominco & NANA really can't defend themselves by saying they didn't discriminate against you without implying that they aren't allowed to discriminate. If their position is that the 'agreement' is legal, then that should be their defense. Otherwise the issue still isn't settled. It will be interesting to see how this turns out.

   Keep me posted,
   John

---

**From:** gkconitz [mailto:gkconitz@ak.net]
**Sent:** Wednesday, August 09, 2006 10:42 AM
**To:** John Kells
**Subject:** 8-8-06

Hello John,

Thank you very much for talking with my lawyer yesterday. If you are like me your free time is very valuable and more limited than you would like, especially in the summer so I really appreciate your taking the time. Unfortunately, this is probably just the beginning and we may need to bother you again, but hopefully we can at least keep it to a minimum.

You have asked me and Ken what we hope to get out of this and I'm not sure if you've gotten a good answer. I'm always more motivated to do something if I understand and agree with the reason for it, so I'll try to clarify that. From my point of view at this point as I told Butch Draper, I have two options at Red Dog. I can continue to work as an operator with no realistic hope of ever being able to advance beyond that position, or I can quit and find a job somewhere else and just say "oh well that didn't work out like I had hoped". The first option is not acceptable, partly because of my back and partly because I feel that I am capable of doing something better and need the mental challenge and personal satisfaction of advancing my career to something better than what I'm doing now, which could also lead to something that would be another step beyond that some day. If you can't make the first step, then you have no

chance of ever going beyond that. The second option is probably what I will end up doing because I am being forced into it by an unfair situation. I don't feel that I should just give up over sixteen years of hard work and dedication to the company without fighting back a little.

I would like an answer to the question of weather these decisions were based on race and if the NANA shareholder, and in my mind racial hiring preference at Red Dog is legal. Ken seems to have an interest in this issue and won a somewhat similar case in Barrow, and has his eye on some similar situations for future cases. He mentioned Alyeska Pipeline Co, as one. He also seems to like the professional challenge of what he sees as a more interesting case. I think that this could be at least part of an interesting precedent for what native corporations in the state can and can't do. This may not affect me personally in the future, and I'm not entirely sure that want to be the one to blaze that trail, but I guess that due to circumstances I am willing to stick my neck out on the principal of getting a determination as to whether this is right or not. One of my biggest reservations about doing this is that I really don't have any animosity towards the native people as a whole and do not want to see something taken away from them. I do feel that the whole issue needs to be questioned and looked at by the courts and maybe the legislature. I think that if there is a legal basis for a native hiring preference it needs to be done in a way that also protects the right of non-natives working on the same job, and at the very least there should be clear notification to all employees from the beginning as to what they are getting into. Maybe this case could help clarify the existing laws or even instigate the process of making some new law that could improve the whole situation for everyone involved.

Ken is doing the case on contingency and is not charging me as we go. I would not be doing this if I had to pay someone $200 an hour out of pocket! Of course Ken and I feel there should be some monetary compensation if we win. We have asked for legal fees and expenses, the difference between my current wage and what I would have received if promoted, and some kind of punitive damage as awarded by the court. I have no idea what that could end up being. We have not asked for any specific amount. I don't think that either Ken or I have any great expectation of making millions on this if we win, but I do think that it would need to be a pretty substantial amount to be any kind of punishment to the company. Of course the other possibility is that we lose and I have to sell everything I own and be in debt for the rest of my life to pay the legal bills. Ken seems to be pretty confident that will not happen. I hope he is right; I am putting a lot of trust in him!!

So in conclusion, maybe I could say I'm doing this mostly as a matter of principal, with the hope that it at least pays for itself. I don't know if that helps you any, but again I want to thank you for your time and honesty. Unfortunately for you, I think you are the best, maybe even the only person we have at this point to speak on my behalf. This will all probably drag on for quite awhile and take a lot of time, but I think it will be an interesting experience and I'm anxious to see where it goes. Thanks again! I'll be in touch.

Gregg

EXHIBIT 1
PAGE 2 OF 2

11/22/2007