Sean Halloran
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska 99501
Phone: (907) 276-1592
Fax: (907) 277-4352
mail@hartig.com

Attorneys for Teck Cominco Alaska Incorporated

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| Gregg Conitz, )<br> )<br> Plaintiff, )<br> )<br>vs. )<br> )<br>TECK COMINCO ALASKA, INC. and )<br>NANA REGIONAL CORPORATION, )<br> )<br> Defendants. )<br>_____ ) | Case: 4:06-CV-00015  RRB |

**REPLY TO OPPOSITION TO MOTION FOR FEES**

A. **Conitz Did Not Establish A Prima Facie Case.**

Mr. Conitz acknowledges that "The burden of establishing a prima facie case is not onerous". [Docket 173 at 7.] The fact remains, however, that even in the face of a summary judgment motion, he made absolutely no attempt to establish one beyond baldly asserting that he had done so. [See Docket 173-2 at 5 ("its our position we made out a prima facie case").] To the

extent that the court must now consider whether the plaintiff was able to establish a prima facie case in order to determine whether his claims were frivolous or without foundation, the court need look no farther than its determination at Docket 145 that, as to each of his claims, Mr. Conitz failed to establish a prima facie case.

**B.      Conitz's Assertions That The Court Prevented Him From Engaging In Discovery And Precluded Him From Presenting Facts Are Frivolous.**

This case was filed in June 2006. A year and a half later, Teck Cominco filed for summary judgment. In all the ensuing months, Mr. Conitz had taken only three depositions. Even when he knew that one or more summary judgment motions were being prepared by the defendants,[1] Mr. Conitz made no effort to conduct any discovery despite numerous offers to make potential witnesses available to him. [Halloran Affidavit at Docket 115-2.] Mr. Conitz then sought a lengthy extension to enable him to conduct discovery before responding. [Docket 112.] Although Mr. Conitz did not describe any particular discovery that he actually intended to seek; did not explain how that discovery would preclude the entry of summary judgment; and did

---

[1]     It was Mr. Conitz who first reported to the court that Teck Cominco intended to file its summary judgment motion as soon as the Kells deposition was completed. [Docket 147-4 at 20.]

not justify why his requested discovery had not been obtained earlier,[2] this court gave him all the time he requested. [Docket 121.]

Mr. Conitz now asserts that his failure "to produce evidence in response to the Summary Judgment Motion, at Docket 91" was not of his making, since "the court had precluded further discovery". [Docket 173 at 9.] Where Mr. Conitz refused to take advantage of the additional months allotted by the court for him to conduct discovery, there is absolutely no justification for blaming his failure to conduct discovery on the court.

Although Mr. Conitz previously reported to the court that "its our position we made out a prima facie case" [docket 173-2 at 5], he now asserts that he did not place relevant and available facts into evidence because the court ordered him to "only" brief the legal issue that he had presented in his motion at Docket 64. [Docket 173 at 9, see at 3-10.] This representation is yet another substantial deviation from the truth. As the transcript Mr. Conitz submitted in opposition to Teck Cominco's motion for fees makes clear, the court specifically instructed plaintiff's attorney that the court was unwilling to address this case on a piecemeal basis, was unwilling to consider the legal issue presented by Mr. Conitz's motion at Docket 64 in a vacuum, and wanted it addressed in the larger context of Teck Cominco's motion at Docket 91. [Docket 173-2 at 4-5.] Lest there be any confusion, the court followed up by issuing an order specifically directing that "Plaintiff's response to Defendant's Motion at Docket 91 is due" on June 9. [Docket 140.]

---

[2] See Tatum v. City of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006); Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987); Continental Maritime v. Pacific Coast Metal Trades District Council, 817 F.2d 1391, 1395 (9th Cir. 1987); Trask v. Franco, 446 F.3d 1036, 1042 (10th Cir. 2006); Adorno v. Crowley Towing & Transporation Co., 443 F.3d 122, 128 (1st Cir. 2006); Exigent Tech., Inc.v. Atrana Solutions, Inc., 442 F.3d 1301, 1310 (Fed. Cir. 2006); Baker v. American Airlines Inc., 430 F.3d 750, 756 (5th Cir. 2005).

Although the court did suggest at one point that it was open to addressing the legal issues presented in Teck Cominco's Docket 91 motion prior to some of the factual issues if Mr. Conitz would specify in an opposition to Teck Cominco's motion that he wanted to hold off on responding to the factual issues until after a ruling on the legal issues, Mr. Conitz never responded to that invitation, and chose to not even respond to Teck Cominco's motion, filing instead an improper "supplemental pleading" addressing his own, previously denied, motion. [See Docket 173-3 at 3-4; Docket 141; Docket 173-2 at 4; Local Civil Rule 7.1(h).]

Building on his plainly false claims that the court "precluded" him from conducting discovery and denied him "the opportunity to refute" facts presented in Teck Cominco's motion, Mr. Conitz goes on to assert that the court's determination on summary judgment that he failed to establish a prima facie case was "nothing more than dicta" because the issues presented in Teck Cominco's summary judgment motion were "not joined" and therefore merely "gratuitously discussed" by the court. [Docket 173 at 9, 10.] In its entirety, Mr. Conitz's argument serves only to illustrate the frivolous approach that he has taken in prosecuting this litigation.

C.  **Conitz Mischaracterizes The Motion At Bar So As To Assert Frivolous Arguments.**

Mr. Conitz asserts that Teck Cominco "takes the position that an employee who is not granted a promotion has not been damaged". [Docket 173 at 10.] As he well knows, however, Teck Cominco has never asserted anything even remotely like that. Rather, what Teck Cominco has asserted is that it was frivolous for Mr. Conitz to seek back pay related to his failure to obtain the trainer position, since the operator position that he retained paid more than he would have received if he had become a trainer. [Docket 156 at 5, n2.] Mr. Conitz tries to justify his pursuit

of back pay by asserting that Mr. Baker, who was rehired into a position in which he had substantial experience, was eligible for a higher pay grade as a trainer than Mr. Conitz (who had absolutely no experience as a trainer) could have qualified for. [Docket 173 at 10.] He reveals his argument to be frivolous when he makes clear that it is founded upon the assertion that Mr. Baker was entitled to receive a higher salary "even though [he] had less experience". [Id.] As this court has already recognized, "the evidence shows that" Mr. Baker was "more qualified than both Plaintiff and all other applicants". [Docket 145 at 3.]

### D.  Conitz's Post-Judgment Attempts To Establish A Prima Facie Case Fail.

Without any specific citations to suggest their relevance, Mr. Conitz files several deposition transcripts with the assertion that they reveal his prima facie case. [Docket 173 at 9.] In fact, however, relevant portions of each of the deposition transcripts he now files were before the court at Docket 91, and helped to make clear that Mr. Conitz could not make out a prima facie case with respect to any of his claims. Mr. Conitz goes on to specifically assert that he is now making out a prima facie case with respect to his national origin claims by submitting a declaration that asserts that all Natives look alike. [Id. at 11.] He is wrong. Although he now claims that his national origin is not the U.S. (where he was born to U.S. parents), but is irish-norwegian-dutch-german, he offers nothing to establish that Teck Cominco discriminates against irish-norwegian-dutch-germans in favor of those with a U.S. national origin. To the contrary, he merely asserts that some NANA shareholders are of a different racial background than he is, and that a NANA shareholder hire preference is therefore about race. [Id.] Without regard for his

claim of racial discrimination, his claim of discrimination on the basis of national origin was and is frivolous.

It is worth noting that Mr. Conitz's declaration at Docket 173-11 further underscores the lack of merit in his claims. That declaration identifies 13 individual employees or former employees of Teck Cominco that he asserts are NANA shareholders (Jim McCutcheon, Darold Sun, Marv Jackson, Tommy Sheldon, Rex Lewis, Larry Lewis, James Adams, Jeff Ramoth, Jeff Adams, Tommy Adams, Jimmy Jackson, Jim Baldwin, and Charles Barger) and makes clear that two of them (Jim McCutcheon and Larry Lewis) are not Alaska Natives. Thus, fully 15% of the NANA shareholders that Mr. Conitz considers to be some sort of relevant group are not Alaska Natives. This declaration makes plain the unreasonableness of Mr. Conitz's continued refusal in this case to deal with the many facts showing that the NANA shareholder hiring preference was and is not about race.

### F.    Conitz's Delaying Tactics Do Not Amount To Muckraking By Teck Cominco.

The plaintiff asserts that Teck Cominco is engaging in "muckraking" with respect to "the Rob Scott deposition".[3] In fact, however, Mr. Scott is a prime example of the numerous individuals that Mr. Conitz continually refused to depose despite their being repeatedly made available to him for that purpose. Mr. Conitz's discussion of the efforts to depose Mr. Scott also

---

[3] Teck Cominco's motion for attorney fees does not anywhere mention Mr. Scott. The potential of taking his deposition, however, is the subject of the e-mail exchange constituting Exhibit 5 to the instant motion (Docket 156-6).

serve as a prime example of the lack of candor that permeates the prosecution of the plaintiff's case in this litigation.

In the unsigned "declaration" of Kenneth Covell at docket 173-13, and in Mr. Conitz's opposition at docket 173, it is asserted that "Teck offered to arrange deposition for Mr. Scott for a very limited number of days" and further asserted that "Early on defendant had suggested he would make Mr. Scott available in Anchorage, but after defendant insisted that he would only be available for depositions in Vancouver, British Columbia". These statements are untrue.

Mr. Scott is a former employee of Teck Cominco who now serves as a vice president of the corporation. [Docket 100.] On March 15, 2007, fifteen months before the deadline by which Mr. Conitz ultimately was to respond to Teck Cominco's summary judgment motion, and in response to a request that Mr. Scott be deposed in May of that year, plaintiff's counsel was notified that:

> With respect to deposing Mr. Scott, he lives and works in Vancouver, BC, and can be made available for a deposition there. Mr. Scott reports that he currently can make himself available on any Monday or Tuesday in May with the exception of May 21st, which is a holiday. Please have your staff phone Lisa in my office to schedule the deposition. Also, please be aware that we must insist that you provide us with initial disclosures in advance of conducting any depositions.

[Exhibit 13.] Fully five months elapsed from that time with no effort by plaintiff's counsel to actually schedule his deposition. [Docket 115-2.] Teck Cominco was then asked if an October deposition was possible. [Exhibit 14.] Although Teck Cominco responded that "As for scheduling a deposition of Mr. Scott, if you will propose specific dates, we will check his availability", no dates were ever proposed in response. [Exhibit 15.] In November 2007, when the Kells deposition was scheduled to be taken in Healy, plaintiff's attorney Ken Covell offered

to move it to Fairbanks if Teck Cominco would arrange for Mr. Scott to be deposed either in Seattle or Anchorage on the 13th or 15th of December. [See Exhibit 16.] At Teck Cominco's urging, Mr. Scott agreed that he would travel to Seattle for a deposition, but was unwilling to do so except in exchange for Mr. Conitz agreeing to make the Kells deposition less inconvenient for the defendants. [Id.] When informed of this, plaintiff's counsel denied that he had ever made such an offer, and announced that he was not willing to take Mr. Scott's deposition on the proposed date in any event. [Id.] On January 29, Mr. Conitz asserted that he wanted to depose Teck Cominco's attorney, Mr. Scott, and eight other individuals. [Docket 156-5.] He asserted that the best time to do so was the week of April 7. [Id.] Although Teck Cominco arranged for Mr. Scott to be available at that time, and more than once informed plaintiffs' counsel of his availability, Mr. Conitz made no effort to take his deposition in time to respond to the summary judgment by the (then) May 9 deadline. When Teck Cominco reminded Mr. Conitz that Mr. Scott was available during the week of April 7, and further informed him of Ms. Outwater's availability around that time, Mr. Conitz made clear that he was unwilling to take their depositions until after May 14, despite the pending May 9 deadline for responding to summary judgment and despite knowing that Teck Cominco's counsel was scheduled to be in a lengthy trial (in which both Teck Cominco and NANA were defendants). [Docket 156-6.]

When Mr. Conitz asserted through counsel that the April dates that he earlier had suggested were no longer acceptable, and requested dates after May 14, the undersigned responded as follows: "As Mr. Covell has repeatedly been informed, I cannot possibly be available on the May dates you suggest, and I cannot be available on any later date until October at the very earliest, and more likely November or December." [Id.] Amazingly, the response

from plaintiff's counsel was to "clarify" that May 16, May 26, and the week of May 19-23 were dates upon which Mr. Scott could be deposed. [Id.] It was in response to that "clarification", and referencing the exact language that the "clarification" responded to, that Mr. Covell's staff was told:

> If there is some part of "cannot possibly be available" that is unclear, please let me know. As Mr. Covell has repeatedly been informed, I will be in trial starting in mid May that will last for months. As Mr. Covell has repeatedly been informed, I and other attorneys participating in the case are under court order to not schedule any conflicting appointments until October at the earliest. Consequently, most of my time in October and November is already booked. December is not far behind in terms of how busy my schedule is becoming. We offered on numerous occasions over the past year and a half to arrange to make Mr. Scott available for a deposition in the Conitz case if Mr. Covell and/or other attorneys working with him on this case wanted to depose him, and we repeatedly provided your firm with information regarding Mr. Scott's availability. Mr. Covell (and presumably Mr. Logan) chose to not ever follow up. The fact that you suddenly want to depose Mr. Scott, and the fact that you now want to do so in May of this year does not alter the fact that I cannot possibly be available.

[Id.]

As articulated in that e-mail with respect to Mr. Scott, Mr. Conitz had ample opportunity to conduct any discovery that was needed. His representation that delays in conducting discovery in this case "would have been on account of Mr. Halloran, defendant Teck's counsel's unavailability" [docket 173 at 15] is just one more in a long string of egregious misrepresentations made to this court by plaintiff's counsel.[4] As Mr. Conitz concedes, it was his

---

[4] Mr. Conitz further asserts that it was Teck Cominco and not the plaintiff who delayed the proceedings in this case, because the parties stipulated that no response to Mr. Conitz's summary judgment motion would be due until after Mr. Kells' deposition was complete. [Docket 173 at 14.] Citing to Docket 104, Mr. Conitz then asserts that "None of Kells' deposition was ever used in Teck'sOpposition to" Mr. Conitz's summary judgment motion.

"Counsel's intention of having the Motion for Order of Rule of Law in the case settled before discovery was complete". [Docket 173 at 15.] It was his intention to delay and frustrate the timely prosecution of this case in the hope that he could obtain his goal of eliminating shareholder hire at Red Dog Mine without ever having to reveal to the court that the claims he brought as a vehicle for accomplishing that goal were frivolous. The conduct of this case is inexcusable, and fees should be awarded jointly and severally against the plaintiff and his attorneys.

### G. The Motion At Docket 125 Was Frivolous.

Teck Cominco illustrated the bad faith with which this case was prosecuted by pointing to the frivolous motion at Docket 125, in which the plaintiff sought to sanction Teck Cominco for losing a single sheet of paper long before this case was filed that could not possibly have had any impact whatsoever on outcome of this litigation. The plaintiff still does not suggest that there was any information relevant to this case that was ever lost, and does not explain why he attempted to hide the relevant facts from the court when filing his motion. In this regard, he merely asserts that since judgment has already been issued, "Plaintiff's counsel should not be required to 'write that brief'". [Docket 173 at 18.] However, he does assert that Teck Cominco was incorrect when it pointed out that there was no legal requirement that it maintain the file

---

[Id.] This is yet another example of Mr. Conitz's failure to be truthful with this court. The plain fact is that Teck Cominco filed excerpts of the Kells deposition at Docket 91-5. It then incorporated by reference all the factual evidence that it filed at Docket 91, including the Kells deposition, into its response at Docket 104 to Mr. Conitz's summary judgment motion. [Docket 104 at 2.]

containing only a single sheet of paper on which were written the names of five job applicants whose identities are otherwise well known and not at issue in this case. In this regard, Mr. Conitz asserts that 29 CFR 1602.7 requires Teck Cominco to save copies of the most recent EEO-1 survey form that the company may have filed with the EEOC. [Docket 173 at 17.] His assertion is frivolous in light of the fact that his sanction motion had absolutely nothing to do with any EEO-1 survey forms. [See Dockets 125, 130-131.]

Mr. Conitz further asserts that 29 CFR 1602.14 required Teck Cominco to preserve, and not lose, the single sheet of paper that was at issue in his motion. [Docket 173 at 17-18.] As Teck Cominco established at Docket 130, however, this argument too is frivolous:

> As to records it chose to create and keep, the requirement for maintaining them expired one year after Mr. Hanna was promoted. [29 CFR § 1602.14.] Mr. Hanna was promoted effective April 1, 2005. [Docket 58 at ¶ 17.] In accordance with the above provisions, Teck Cominco had no continuing obligation after April 1, 2006 to retain relevant records unless, prior to that date, someone filed a claim with the EEOC or a court asserting that the specific hiring decision at issue violated Title VII. [29 CFR § 1602.14.] No claim has ever been brought under Title VII relative to the decision to promote Mr. Hanna instead of Mr. Conitz. [See Docket 57.] Although Teck Cominco believed at one time that Mr. Conitz had initiated an untimely claim with the EEOC, Mr. Conitz, through counsel, formally clarified that Teck Cominco was mistaken. [Exhibit B; Halloran Affidavit.] It was not until July 3, 2006 that Teck Cominco was first notified that Mr. Conitz was asserting claims relative to the decision to promote Mr. Hanna, and even then, only state law claims have been asserted with respect to that decision. [Halloran Affidavit; see Docket 1, 57.] As of April 1, 2006, any duty that Teck Cominco had to safeguard or preserve any records under 42 USC § 2000e - 8(c) had expired. Where there is no requirement to create any records, Teck Cominco cannot properly be sanctioned for failing to create any of the unspecified records that Mr. Conitz may intend to reference. Where Teck Cominco's duty to preserve the records it did create expired on April 1, 2006, such that there was no duty under 42 USC § 2000e - 8(c) to preserve records by the time that this litigation was commenced, it cannot be sanctioned for failing to retain records in or after April 2006.

[Docket 130 at 4-5.]

The plaintiff's motion at docket 125 was nothing less than a gross misrepresentation in a long line of deceit perpetrated by plaintiff's counsel with the intent of wasting defense counsel's and the court's time. It was frivolous, and further demonstrates Teck Cominco's and NANA's entitlement to be reimbursed for their attorney fees in this action.

### H.    Conitz Has Further Shown That The Kells Deposition Exemplifies Bad Faith.

With respect to the Kells deposition, Mr. Conitz asserts that his "counsel went to great lengths to attempt to accommodate Mr. Halloran in arranging this matter." [Docket 173 at 19.] That assertion is untrue. Contrary to plaintiff's counsel's representation, for example, it is false that the deposition was scheduled or rescheduled at any time requested by Teck Cominco. [See Id.] To the contrary, as the documentation submitted by Mr. Conitz makes clear, on November 7, the deposition was scheduled on behalf of Mr. Conitz by attorney Logan. [Docket 173-12 at 3.] On November 15, Mr. Covell announced that he preferred "to keep the depo. as set". [Docket 173-12 at 6.]

Mr. Logan commented in one e-mail that "As long as the ass has to travel to Healy again, I will be quite happy". [Exhibit filed in open court 12-21-07; Docket 147-4 at 17.] Mr. Conitz has now revealed that this was "a remark to Mr. Kells". [Docket 173 at 20.] His admission makes clear that Mr. Conitz's numerous assertions to the effect that his attorneys had nothing to do with the decision to hold the deposition in Healy instead of Fairbanks, and that Mr. Kells independently insisted upon that location [e.g. docket 173 at 20], are merely additional misrepresentations to this court and to the defendants. They exemplify the bad faith that

permeated the prosecution of claims in this litigation. Fees should be taxed against the plaintiff and his attorneys accordingly.

At Docket 153, Mr. Beatty has asserted that there was an arms length relationship between himself and plaintiff's counsel with respect to his representation of Mr. Kells. [See also Docket 147-4 at 13.] Mr. Logan made a similar representation in open court. [Docket 147-4 at 16.] In its motion for attorney fees, Teck Cominco pointed out that it was highly improper for plaintiff's counsel to attempt to limit Teck Cominco's access to Mr. Kells in the manner they did. [Docket 156 at 13.] Despite Mr. Beatty's statement under oath that "I do not work for Mr. Covell", however, Mr. Conitz now acknowledges that Mr. Beatty does, in fact, work for Mr. Covell.[5] [Docket 173 at 20.] Viewed in this light, it was and is highly improper for the plaintiff to now insist that "The fees between Mr. Beatty and Mr. Kells are a matter only between themselves" [docket 173 at 20] when Teck Cominco was required to reimburse Mr. Kells based upon the misrepresentations of Mr. Logan and Mr. Beatty as to the nature of the relationship between them and Mr. Beatty's misrepresentation as to the amount of the fee that was actually charged to Mr. Kells.

I. **Conitz's Failure To Serve Copies Of Court Filings Constitutes Bad Faith.**

Mr. Conitz asserts that his failure to serve Teck Cominco with papers filed in this case is irrelevant, because Teck Cominco did not notify him that it was unaware of his filings. His

---

[5] Teck Cominco further points the court's attention to the certificates of service filed in this case, and notes that Mr. Beatty uses Mr. Covell's staff to prepare and file his documents. [Compare Docket 153 with Docket 173 (Beatty and Covell certificates of service both by Wendy Blakeman).]

argument completely ignores the fact that the court notified him. [Clerk's Notice of 6-12-07.] Although the clerk specifically reminded him to comply with all the relevant rules regarding service [Id.], Mr. Conitz never did file any certificates of service as the Rules require, and never did serve Teck Cominco as is also mandated by the Rules. Once notified by the court of the need to provide service, his continued failure to serve Teck Cominco cannot reasonably be seen as anything other than bad faith.

J.  **Conitz's Argument RE: "Seat Time" Records Exemplifies His Lack Of Candor, His Bad Faith, And His Efforts To Improperly Multiply The Proceedings.**

The plaintiff pretends that the many instances where he submitted duplicate requests for records are limited to what he references as "seat time" records, and queries "Why defendant would resist production of such innocuous records seems inexplicable unless they were damning to defendant's postion". [Docket 173 at 21.] Of course, the bulk of duplicate requests had nothing to do with what Mr. Conitz references as "seat time" records. Moreover, his suggestion that Teck Cominco resisted their production is wholly unfounded, and simply one more in a long string of egregious misrepresentations -- Teck Cominco produced all such records for everyone who was remotely related to this case. [Exhibit 17.] Where Mr. Conitz asserts that it was necessary to make multiple requests because Teck Cominco "had already refused to comply with the prior request", like his assertion that Teck Cominco insisted Mr. Conitz's attorney had to travel to Red Dog Mine to obtain documents, is patently false and a knowing misrepresentation designed to mislead this court.

Teck Cominco produced numerous documents that Mr. Conitz references as "seat time" records. [Exhibit 17.] They did not include such records referencing Mr. Thomas, who was deceased, entirely irrelevant to this litigation, and whose records had not by then been requested. When Mr. Conitz subsequently asked for all records pertaining to Mr. Thomas, including what the plaintiff calls "seat time" records and all other records of any type relating to him (including records that had already been produced), Teck Cominco agreed to produce them all despite its objections. [Docket 156-3 .] Plaintiff's counsel then lied to the court and asserted that Teck Cominco had refused to produce them. [Docket 147-4 at 28.] Defense counsel explained in open court that they were available to the plaintiff conditioned only upon plaintiff's counsel agreeing to extend an existing confidentiality agreement to encompass them. [Id. at 28-29.] Defense counsel further explained that Teck Cominco would not require plaintiff's counsel to travel to Red Dog to obtain them, but that Teck Cominco would have them copied and sent to Mr. Conitz's attorneys upon their agreement to reimburse the nominal cost of copying the irrelevant documents. [Id.] Plaintiff's counsel did not follow through and attempt to make any arrangement to receive the documents, but instead only sent three more discovery requests that exactly duplicated the requests that Mr. Conitz had already made. [Docket 156-4 at 3-7.] (With respect to the RFP's seeking Mr. Thomas's safety record, moreover, the court should understand that such records for all Teck Cominco employees, including Mr. Thomas and everyone else, had been delivered to Mr. Covell as part of Teck Cominco's initial disclosures.)

As with so much of the plaintiff's conduct with respect to discovery, his efforts to continually request the same documents regarding the entirely irrelevant Leo Thomas, while simultaneously avoiding every opportunity to actually receive them constitutes bad faith.

Especially where the plaintiff refused to present any factual evidence concerning his claims to the court, his conduct of discovery is revealed to be nothing more than an effort to harass the defendants and vexatiously multiply the proceedings in this case. He and his attorneys should be required to pay the defendants' attorney fees accordingly.

K.     Conitz's Choice Of A Fairbanks As The Trial Venue Was Inappropriate.

Mr. Conitz suggests that filing this case in Fairbanks created no added inconvenience for the parties and witnesses (who with a single exception, all live, work or must travel through Anchorage to attend a Fairbanks trial) because "Fairbanks is physically closer to Kotzebue and the Teck Cominco Mine than Anchorage is". [Docket 173 at 21.] If in fact the plaintiff was attempting to create a trial venue in the closest federal court to Red Dog, however, he would have filed in Nome, which is more than 200 miles closer to Red Dog than Fairbanks.[6] Moreover, Mr. Conitz's assertion ignores the fact that there is no ability to directly access Red Dog from Fairbanks, while two different airlines have regular scheduled service between Red Dog and Anchorage. Accordingly, one must travel at least 869 miles to get from the mine to Fairbanks, changing planes in Anchorage along the way.

It remains undisputed that Mr. Conitz lives in Anchorage. It remains undisputed that Teck Cominco is headquartered in Anchorage. All of the witnesses to the claims arising from

---

[6]     This court may take judicial notice of the fact that Nome is 257 miles from Red Dog Mine as the crow flies, while Fairbanks is 474 miles. The distance from Red Dog to Anchorage is 134 miles further than Fairbanks (608 miles), while the distance from Red Dog to Fairbanks by way of Anchorage is 869 miles. These distances are widely published and readily available, as, for example, in the "distance calculator" found on the internet at www.infoplease.com.

allegedly open mail live and/or work in Anchorage. With only the exception of Mr. Kells, all other potential witnesses in this case either live in Anchorage or must travel through Anchorage to attend a trial in Fairbanks. Fairbanks is entirely unconnected with any of the facts at issue in this litigation. In light of the many other ways in which the plaintiff sought to inconvenience the defendants, the court should recognize that his choice of trial venue was similarly serve no other purpose than imposing a burden upon the parties and witnesses in this case.

L. **Conitz Vexatiously Protracts This Litigation By Relitigating In Another Forum.**

Mr. Conitz has submitted a declaration in which he asserts that the claims in his newest EEOC complaint are not claims that he asserted in this court. [Docket 173-9.] His assertion is false. In this litigation, he asserted that Teck Cominco's decision in 2006 to not allow Mr. Conitz to serve as an acting supervisor constituted retaliation. [Docket 57 at ¶¶ 25-28 and 57-60.] His newest EEOC complaint asserts the identical claim. [Exhibit 18.] In this litigation, he asserted that the selection of a NANA shareholder for any given employment position is a proxy for race and/or constitutes racial discrimination. He makes the same claim now to the EEOC. [Id.] The fact is that Mr. Conitz continues to vexatiously multiply the proceedings to the extent he is able.

M. **Conitz Refuses To Acknowledge The Defendant's Identity To Mislead The Court.**

Throughout this litigation, Mr. Conitz has consistently refused to acknowledge that the defendant is Teck Cominco Alaska Incorporated and not any other company that incorporates Teck Cominco in its name. In opposition to this motion, for example, his attorney's unsigned

"declaration" purports to attest that he visited "Teck Cominco's official website" even though he knows full well that the web site he references does not belong to, is not maintained by, and is not an "official" or even unofficial website of any party to this litigation. [Docket 173-13.] Similarly, he fails to notify the court that the dollar amounts he references are not US dollars, or notify the court that the documents he provides as exhibits do not reveal Teck Cominco Alaska Incorporated's share of the total profits generated by the Red Dog Project. [See Docket 174-2, 174-3; see also Docket 175-2 at 5 (concerning non-party NANA Development Corporation).] It has become clear that Mr. Conitz's refusal to distinguish between the defendant and similarly named companies stems from his unwillingness to discover the degree to which the 1982 agreement between Teck Cominco America and NANA does or does not have any bearing upon defendant Teck Cominco Alaska. Even now, when it has been established -- as even Mr. Conitz testified -- that Teck Cominco Alaska does not have in place a system of hiring preferences in accordance with that agreement despite the fact that NANA has a right to enforce that provision against Teck Cominco Alaska, he continues to falsely assert that that agreement had some relevance to his case. [See Docket 173 at 13.] Moreover, he continues to misrepresent to the court that Teck Cominco did not produce it, when in fact it voluntarily produced to him all portions of that agreement relating in any way to employment practices at the outset of the case even though it was not required to do so under the civil rules.[7] [Id. at 13 and 22.] Everything about the plaintiff's prosecution of this case has been designed to harass Teck Cominco and

---

[7] Although the court after an in camera inspection requested by Teck Cominco ruled that Teck Cominco should disclose a couple of paragraphs more than it had volunteered, Mr. Conitz never even enquired as to whether those additional paragraphs were applicable to or enforceable against the defendant.

NANA, and cause them to waste time and resources. The plaintiff and his attorneys should be made jointly and severally liable for the defendants' attorney fees as a consequence.

Dated this 15th day of September, 2008.

                              Hartig Rhodes Hoge & Lekisch, PC
                              attorneys for Teck Cominco Alaska Incorporated

by: _____
     Sean Halloran

CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of Septemer, 2008
a true and correct copy of the foregoing was served
on Kenneth Covell & Thomas Daniel by electronic
means through the ECF system as indicated on
the Notice of Electronic Filing.

Becky Nelson
Hartig Rhodes Hoge & Lekisch PC